Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue
Berkeley, California 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
Email:  shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012
Email: rob@hbsslaw.com
          michellak@hbsslaw.com

*Attorneys for Plaintiffs*
*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICKY MALDONADO AND JUSTIN CARTER, individually and on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>APPLE INC., APPLECARE SERVICE COMPANY, INC., AND APPLE CSC, INC.,<br><br>                              Defendants. | No. 3:16-cv-04067-WHO<br><br>Related Case:<br>*English v. Apple Inc. et al.*<br>Case No. 3:14-cv-01619-WHO<br><br>**FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    PARTIES .....................................................................................................2

III.   JURSIDICTION AND VENUE ....................................................................2

IV.   CHOICE OF LAW ......................................................................................3

V.     FACTS .........................................................................................................3

       A.     Apple Products .................................................................................3

       B.     Apple's Limited Warranty ...............................................................5

       C.     AppleCare Promises to Replace with New or Equivalent to New Devices ................5

       B.     Replacement Devices .......................................................................9

       C.     Refurbished, Remanufactured, or Used Parts Are Not New or Equivalent to New in Performance and Reliability ....................................10

       D.     Plaintiffs ........................................................................................10

VI.   CLASS ACTION ALLEGATIONS ...........................................................13

VII.   COUNTS .....................................................................................................16

COUNT I  BREACH OF CONTRACT (Against Defendant AppleCare Services) ........................16

COUNT II  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301, *et seq.* (Against Defendant AppleCare Services) ....................................17

COUNT III  VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT CAL. CIV. CODE § 1790, *et seq.* (Against Defendant AppleCare Services) ...........................19

COUNT IV  VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CLRA) CAL. CIV. CODE § 1750, *ET SEQ.* (Against All Defendants)..............................21

COUNT V  VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE § 17500, *et seq.* (Against All Defendants)....................................23

COUNT VI  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW  CAL. BUS. & PROF. CODE § 17200, *et seq.* (Against All Defendants) ................................24

PRAYER FOR RELIEF .................................................................................25

DEMAND FOR JURY TRIAL ......................................................................26

# I.   INTRODUCTION

1.     When a company promises something, it must deliver it.

2.     Defendants, in their written contracts, promised three distinct levels of warranty care.  First, in basic warranty situations, Defendants promised to repair or replace electronic devices with new or "serviceable used" parts or devices.  Second, with optional extended warranties Defendants promised to use new or "refurbished" parts when repairing covered devices. Third, in their optional extended warranties, Defendants promised an even higher level of care: parts or devices that were new or "equivalent to new in performance and reliability" would be used to repair or replace covered devices.

3.     In Apple's limited warranty it promises to replace electronic devices with "new or previously used parts."  In their AppleCare Protection Plan, Defendants promised to exchange unrepairable products with replacement devices that are "new or equivalent to new in performance and reliability."  Consumers pay an additional fee for this protection.  For AppleCare+, for which consumers pay even more, Defendants also provide they will replace or repair products with devices or parts that are "new or equivalent to new in performance and reliability."

4.     In handling their warranty claims, however, Defendants do not honor these promises.  Notwithstanding the different contract language and greater price paid by customers, Defendants equate used, which includes refurbished and remanufactured, with "equivalent to new," and provide consumers with devices repaired with or replaced by devices made from previously used parts.

5.     When companies purposely choose different words to explain differences in treatment and charge customers a premium for enhanced benefits, the plain meaning of words— and differences between them—must control.  This is especially so where the contract was written by Defendants and offered on a "take it or leave it" basis.  Treating "equivalent to new," "reconditioned," "refurbished," and "used" as interchangeable ignores the plain meaning of the terms, the intent behind Defendants' word choices, and that the affected consumers are those who paid more for better coverage.

6.      The use of used or refurbished parts result in a material change in what consumers were promised as such parts are by definition in the field of electronics not equivalent to new parts and are not as reliable.  When a consumer pays for a device, such as an iPhone or an iPad, that can cost hundreds of dollars, and then pay for added protection, they do not expect to be shortchanged with used parts.

7.      As a result of the foregoing, Plaintiffs bring this as a class action on behalf of purchasers of AppleCare or AppleCare+ who had their device replaced with used parts, or who had their device repaired using used parts.  Plaintiffs claim on behalf of the Class that this conduct breached Plaintiffs and Class member's contracts and violated the Magnuson Moss Warranty Act, 15 U.S.C. 2301; the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*; the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; California's False Advertising Law; and Cal. Business & Professional Code § 17500.

## II.      PARTIES

8.      Plaintiff Vicky Maldonado is resident of Houston, Texas, who purchased AppleCare+.

9.      Plaintiff Justin Carter is a resident of Moultrie, Georgia, who purchased AppleCare+.

10.      Apple, Inc. ("Apple") is a California corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California, 95014.

11.      AppleCare Service Company, Inc., an Arizona corporation, is a subsidiary of Apple with principal place of business located at 1 Infinite Loop, Cupertino, California, 95014. AppleCare Service Company does business as Apple CSC Inc. in the state of Texas.

## III.      JURSIDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and upon information and belief, the aggregate amount in controversy exceeds $5,000,000.

13.     This Court has personal jurisdiction over Plaintiffs because they submit to this Court's jurisdiction.

14.     This Court has personal jurisdiction over Defendant Apple because it is a California corporation, its principal place of business is in California, and it has conducted and continues to conduct business in California.

15.     This Court has personal jurisdiction over AppleCare Service Company and its "dba" entity Apple CSC ("collectively "AppleCare Service") because their principal place of business is in California, and they have conducted and continue to conduct business in the State of California.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District.

17.     Defendants developed and determined the language and terms used in the service contracts and warranties that give rise to this action in California.

18.     All marketing decisions related to Defendants' warranties and service contracts were made in California.

19.     All policies and procedures related to Defendants' warranties and service contracts were made in California, including claims procedures and handling.

## IV.     CHOICE OF LAW

20.     California law governs the substantive legal issues in this matter.  AppleCare and AppleCare+ provide that "the laws of the State of California govern [AppleCare/AppleCare+] Plans purchased in the United States."

21.     The policies and practices underlying the wrongful conduct alleged herein were developed and implemented in California.

## V.     FACTS

### A.     Apple Products

22.     Apple designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, accessories, networking solutions, and third-party digital content and applications.  Apple's products and services include iPhone®, iPad®, Mac®, iPod®, Apple Watch®,

1    Apple TV®, a portfolio of consumer and professional software applications, iOS, OS X® and

2    watchOS™ operating systems, iCloud®, Apple Pay® and a variety of accessory, service and support

3    offerings.

4              23.    iPhone is Apple's line of smartphones based on its iOS operating system.  The

5    iPhone was first released in 2007.  iPhone includes Siri®, a voice-activated intelligent assistant, and

6    Apple Pay, Touch ID™, and 3D Touch on qualifying devices.  In September 2016, Apple

7    introduced iPhone 7 and 7 Plus, featuring an improved camera, longer battery life, and a water and

8    dust resistant design.  iPhone works with the iTunes Store, App Store, and iBooks Store for

9    purchasing, organizing and playing digital content and apps.  iPhone is compatible with both Mac

10   and Windows personal computers and Apple's iCloud services, which provide synchronization

11   across users' devices.

12             24.    iPad is Apple's line of multi-purpose tablets based on Apple's iOS operating

13   system, which includes iPad Air® and iPad mini™.  iPad includes Siri and also includes Touch ID

14   on qualifying devices.  In September 2015, Apple released the iPad Pro™, featuring a 12.9-inch

15   Retina® display.  iPad works with the iTunes Store, App Store and iBooks Store for purchasing,

16   organizing and playing digital content and apps, iPad is compatible with both Mac and Windows

17   personal computers and Apple's iCloud services.

18             25.    iPod is Apple's line of portable media players, which Apple first released on

19   October 23, 2001. Since the initial launch, Apple had released multiple versions of the iPod,

20   including the iPod touch, which was released on September 5, 2007.  The iPod touch looks similar

21   to an iPhone and shares many of the same capabilities, but without cellular capabilities.   Apple

22   sells the iPad touch, nano, and shuffle and previously sold the classic.  25. AppleCare® offers a

23   range of support options for Apple's customers.  These include assistance that is built into software

24   products, printed and electronic product manuals, online support including comprehensive product

25   information as well as technical assistance, the AppleCare Protection Plan ("AppleCare"), and the

26   AppleCare+ Protection Plan ("AppleCare+").  AppleCare is a fee-based service that typically

27   extends the service coverage of phone support, hardware repairs and dedicated web-based support

28   resources for Apple devices.  Apple Care+ is a fee-based service offering additional coverage

under some circumstances for instances of accidental damage in addition to the services offered by AppleCare.

26.     From 2009 to the present, Apple, though its subsidiary AppleCare Service, has sold AppleCare and AppleCare+ (the "Apple Contracts"), which can be purchased with the Device, or within a set time period after purchase,

27.     AppleCare+ can also be purchased as part of Apple's "iPhone Upgrade Program," which allows a user to pay a monthly fee to receive annual iPhone upgrades and AppleCare+.

**B.     Apple's Limited Warranty**

28.     Apple iPhones, iPods, and iPads ("Devices") come with a one-year limited warranty (the "Limited Warranty"), covering "defects in materials and workmanship."

29.     The Limited Warranty states that when submitting a claim under the warranty, "Apple will, at its option:

(i)     repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability,

(ii)    replace the Apple Product with the same model (or with your consent a product that has similar functionality) formed from new and/or previously used parts that are equivalent to new in performance and reliability, or

(iii)   exchange the Apple Product for a refund of your purchase price.

30.     The Limited Warranty specifies that that when repairing or replacing a Device, Apple may use "used parts."

31.     Apple has referenced "used parts" in its Limited Warranty since at least 2009.

32.     The Limited Warranty is not at issue in this litigation, but the precision of its language regarding a promise of used parts is.

**C.     AppleCare Promises to Replace with New or Equivalent to New Devices**

33.     AppleCare is a two-year warranty or service contract that covers hardware, specifically defects in "materials and workmanship" and technical support, including software support.

34.     From 2009 to 2011, AppleCare could be purchased to cover iPhones, iPads, and iPods.

35.     From 2012 to 2013, AppleCare could be purchased for iPods, but not iPhones or iPads, and in 2014 AppleCare could no longer be purchased for iPods.

36.     AppleCare could be purchased within the first year of owning the Device.

37.     In purchasing AppleCare, a consumer enters a service contract with Apple's wholly owned subsidiary, AppleCare Service, with Apple as the contract administrator.

38.     When submitting a claim under the AppleCare, the 2013 version of the contract provides that "Apple will either (a) repair the defect at no charge, using new or refurbished parts that are equivalent to new in performance and reliability, or (b) exchange the [Device] with a replacement product that is new or equivalent to new in performance and reliability."

39.     AppleCare specifically states that if a Device is *repaired* under the contract Defendants may use *refurbished* parts.

40.     Conversely, AppleCare promises to provide new or "equivalent to new in performance and reliability" if a Device is replaced

41.     So a consumer pays more for AppleCare and is promised more than what is contained in Apple's Limited Warranty, which allows Apple to repair with or provide a replacement device containing "used parts."

42.     When replacing the Device, "new or equivalent to new in performance and reliability" cannot mean refurbished because Apple specifically agreed that repairs would use refurbished parts but left the word refurbished out of its replacement provision.

43.     Although the language of the AppleCare contract has varied slightly from 2009 to 2013, since 2009 AppleCare has promised to replace Devices with products that are "new or equivalent to new in performance and reliability."

44.     Similarly, since 2009 AppleCare has stated that repairs may be made with "refurbished" or "serviceable used parts."

45.     Defendants charged these prices for AppleCare: $69 for iPhones, $99 for iPads, $59 for the iPod touch and classic, and $39 for the iPod nano and shuffle.

**A.      AppleCare+ Promises to Replace or Repair with New or Equivalent to New Devices**

46.      Apple unveiled AppleCare+ in October 2011.

47.      From 2012 to the present, AppleCare+ is the only service contract Apple sells to cover iPhones and iPads, adding coverage for iPods in late 2013.

48.      AppleCare+ can be purchased with the Device or within sixty days of the original purchase.  Earlier iterations of AppleCare+ had to be purchased within thirty days of the original purchase date.

49.      AppleCare+ is a two-year warranty or service contract that covers both hardware and accidental damage.

50.      In purchasing AppleCare+, a consumer enters a service contract with Apple's wholly owned subsidiary, AppleCare Service, with Apple as the contract administrator.

51.      From the time it was unveiled until September 10, 2013, AppleCare+ provided coverage exclusively for iPhones and iPads.

52.      Under that coverage, if the iPhone or iPad had a "defect in material or workmanship," Defendants promised to "repair the defect at no charge, using new or refurbished parts that are equivalent to new in performance and reliability" or "exchange the Covered [iPhone/iPad] with a replacement product that is new or equivalent to new in performance and reliability, and is at least functionally equivalent to the original product."

53.      If the iPhone or iPad suffered accidental damage, Defendants promised to "repair the defect using new or refurbished parts that are equivalent to new in performance and reliability" or "exchange the Covered [iPhone/iPad] with a replacement product that is new or equivalent to new in performance and reliability, and is at least functionally equivalent to the original product."

54.      If consumers were making a claim under the accidental damage provision, they had to pay a $49 "service fee" to receive a replacement device or repair.

55.

56.      Before September 10, 2013, Defendants specifically stated that if they repair a Device protected by AppleCare+, they may use refurbished parts.

57.     Conversely, Defendants promised to replace iPhones and iPads with products that are "new and equivalent to new in performance and reliability."

58.     When replacing the iPhone or iPad, "new or equivalent to new in performance and reliability" cannot mean refurbished because Defendants specifically agreed that repairs would use refurbished parts but left the word refurbished out of its replacement provision.

59.     Starting on September 10, 2013, Defendants expanded AppleCare+ to include iPods and other products.

60.     Defendants also changed the terms of AppleCare+ on September 10, 2013.

61.     Defendants continued to represent that they would repair accidental damage "using new or refurbished parts that are equivalent to new in performance and reliability."

62.     Defendants also continued to promise they would exchange Devices under both its hardware and accidental damage coverage with "with a replacement product that is new or equivalent to new in performance and reliability."

63.     But, Defendants changed its AppleCare+ warranty for hardware repairs, removing any reference to refurbished parts and promising to "repair the defect at no charge, using new parts or parts that are equivalent to new in performance and reliability."

64.     If consumers are making a claim under the accidental damage provision, they must pay a "service fee," ranging from $29 to $79, to receive a replacement device or repair.[1]

65.     While AppleCare+ has had different iterations since September 10, 2013, the repair and replacement terms have remained the same.

66.     Defendants have had three price points for AppleCare+: $129 for current iPhones, excluding the iPhone SE; $99 for all other iPhones and all iPads; and $59 for all iPods, which includes the iPod Classic and Touch.  AppleCare+ is also included in the price of the iPhone Upgrade Program.

---

[1] Defendants also specify that they will charge $29 to replace a damaged screen.

**B.      Replacement Devices**

67.      While Defendants represent that they will replace the covered Devices with product that is new or equivalent to new, Defendants do not always honor this promise.

68.      When a Device covered by the Apple Contracts cannot be repaired, Defendants will replace the Device with one they represent to be new or equivalent to new in performance and reliability.

69.      The Device will not come in the original packaging, but rather will come in a plain box with a label identifying the product name, storage capacity, and color.  The label will say, for example, "iPhone 5, GSM, 16GB, White."

70.      While some Devices will be new, upon information and belief the majority of replacement Devices will contain used parts, which includes remanufactured or refurbished parts.

71.      Because the Devices come in a plain boxes that do not state whether the Device is new, refurbished, remanufactured, or used, consumers have no way of knowing whether the Device they receive is actually new or contains used parts, which includes refurbished or remanufactured parts.

72.      When replacing a Device using the accidental damage coverage in AppleCare+, consumers will also pay a "service charge" to receive one of these "plain box" Devices.

73.      Defendants do not disclose in the Apple Contracts that replacement Devices will contain refurbished, remanufactured, or used parts, but instead represent that the parts are new or equivalent to new in performance and reliability.

74.      By comparison, the Apple Contracts state that certain repairs may use refurbished parts, indicating that "new or equivalent to new in performance and reliability" cannot mean "refurbished."

75.      Defendants promised customers that purchased AppleCare+ on or after September 10, 2013, that hardware repairs would also use parts that were "new or equivalent to new in performance and reliability."

76.     While Defendants used new parts for some repairs, upon information and belief the majority of AppleCare+ hardware repairs were made using used parts, including refurbished or remanufactured parts.

77.     Despite Defendants' use of used parts, they represent that the parts are new or equivalent to new in performance and reliability.

**C.     Refurbished, Remanufactured, or Used Parts Are Not New or Equivalent to New in Performance and Reliability**

78.     Used parts, including refurbished or remanufactured parts, can never be equivalent to new parts in performance and reliability.

79.     As a matter of basic engineering principles, as soon as an electronic part or product is put into use, it degrades.

80.     Once an electronic part or product is put in use it is subject to load conditions, which includes operation of the device, humidity, dust, and shock (such as from dropping).

81.     These load conditions cause degradation.

82.     Every used, refurbished, or remanufactured electronic part or product has been subject to load conditions.

83.     Because of these load conditions, used, refurbished, or remanufactured parts can never be "equivalent to new in performance and reliability."

84.     Defendants have no way of knowing the load conditions a particular Device or part has been subjected to and therefore cannot know whether used parts, including refurbished and remanufactured parts, are "equivalent to new in performance and reliability."

**D.     Plaintiffs**

85.     Plaintiff Maldonado purchased a fourth generation iPad on September 8, 2013, for $829 (serial number DMPKN0FZF18G) from the Apple Store in First Colony Mall, in Sugarland, Texas.

86.     Along with the iPad, Maldonado purchased AppleCare+ for $99.

87.     On May 22, 2015, Maldonado took her iPad back to the First Colony Apple store because it was constantly restarting and having hundreds of panics each day.

88.     The Apple employee who assisted her suggested replacing the iPad under her AppleCare+ hardware warranty.

89.     The Apple employee took her original iPad and gave her a replacement iPad.

90.

91.     Upon information and belief, the iPad Maldonado received was not new or equivalent to new in performance and reliability, but refurbished, remanufactured, or contained used parts.

92.     Maldonado continued to have issues with the replacement iPad, as it would restart several times a day.

93.     Within a week, Maldonado took her replacement iPad to the First Colony Apple Store.

94.     An Apple employee again suggested the replacing the iPad under her AppleCare+ hardware warranty.

95.     The Apple employee took her replacement iPad and gave her a second replacement iPad.

96.     Upon information and belief, the iPad Maldonado received was not new or equivalent to new in performance and reliability, but refurbished, remanufactured, or contained used parts.

97.     Maldonado believed she was receiving iPads that were new or equivalent to new in performance and reliability, based on the representations in her AppleCare+ contract.

98.     Maldonado relied on Defendants' representations that she would receive a new or equivalent to new Device when purchasing AppleCare+.

99.     Had Maldonado known she would receive a refurbished, remanufactured, or used replacement Device, she would not have purchased AppleCare+ or not have purchased it for the contract price.

100.    Plaintiff Carter purchased an iPhone6+, Gold 64GB (serial number FK1NW29QG5QL) from the St. Johns Apple Store in Jacksonville, Florida on April 16, 2015 for $849.00.

101.    Along with his iPhone, Carter purchased AppleCare+ for $99.00. In all, Carter paid $1,014.36 for his iPhone6+ and AppleCare+ Warranty.

102.    Sometime in January or February of 2016, Carter began to have issues with the iPhone's battery. In July, he called AppleCare+ to report the continued battery issues and they sent him a replacement iPhone6+ via Federal Express on July 11, 2016.

103.    After using his first replacement device for a few months, Carter began experiencing the same battery issues with his iPhone. In October 2016, he called AppleCare+, explained the battery issues, and was told he would be getting a replacement device.

104.    Carter received a second replacement iPhone6+ (serial number F9CSC0TNG5QL) on October 28, 2016 via U.S. mail.

105.    Upon information and belief, Carter's second replacement iPhone6+ is not new or equivalent to new but refurbished, remanufactured, or used.

106.    Before even opening the second iPhone6+, Carter had the phone professionally inspected.

107.    The second replacement iPhone6+ was bent out of the box.

108.    The second replacement iPhone6+ also has dented and scratched internal parts and components, including a dented loud speaker.

109.    The rear camera on the second replacement iPhone6+ appears to have been removed for inspection and/or service.

110.    The rear camera flex cable had a hand engraved marking on it, resembling a "1."

111.    The charging dock flex cable and headphone jack on second replacement iPhone6+ appear to have been replaced and/or serviced.

112.    Carter briefly used this iPhone but continued to have battery issues.

113.    Carter again called Apple and reported he was having ongoing battery issues with his replacement device.

114.    Carter received a third replacement iPhone6+ (serial number DTRSG0D5G5QL) on November 4, 2016 via U.S. mail.

115.    Upon information and belief, Carter's third replacement iPhone6+ is not new or equivalent to new but refurbished, remanufactured, or used.

116.    Carter once again had the iPhone6+ professionally inspected before opening the box.

117.    The third iPhone 6+ had similar issues to the second iPhone6+, in that it was slightly bent out of the box and had a few small scratches on the interior of the device.

118.    Because the third replacement iPhone6+ appeared to be refurbished or remanufactured as well, he returned it to Apple.

119.    Carter believed he was receiving iPhones that were new or equivalent to new in performance and reliability, based on the representations in his AppleCare+ contracts.

120.    Carter, when purchasing AppleCare+, understood from Defendants' representations that he would receive a device that was new or equivalent to new in performance and reliability.

121.    Had Carter known he would receive refurbished, remanufactured, or used replacement Devices, he would not have purchased AppleCare+ or not have purchased it for the contract price.

## VI.    CLASS ACTION ALLEGATIONS

122.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) individually and for this Class of similarly situated individuals:

> All individuals who purchased AppleCare or AppleCare+ (either directly or through the iPhone Upgrade Program) on or after January 1, 2009, and received a replacement Device that contained used parts, including refurbished or remanufactured parts, or who purchased AppleCare+ on or after September 10, 2013, and had their Device repaired under the hardware provision with used parts, including refurbished or remanufactured parts.

123.    Excluded from the Class are Apple, AppleCare Services, their co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within

the third degree of relationship to any such persons.  The class is ascertainable by objective criteria and can be established (and notice accomplished) through Defendants' business records.

124.   **Numerosity**.  The Class is so numerous that joinder of all members is unfeasible and not practical.  Apple sells millions of Devices each year. In July 2016, Apple announced that, since its debut, it had sold a billion iPhones alone.  One website projected that Apple purchasers spent $7.3 million on AppleCare and AppleCare+ in 2015 alone.[2]  Although the precise number of Apple owners who purchased the Apple Contracts is unknown, a reasonable estimate based on these projected sales figures indicates the number is at least in the hundreds of thousands.  The exact size of the Class is easily ascertainable, as each class member can by identified by using Defendants' records. Plaintiffs are informed and believe that there are millions of Class members.

125.   **Commonality and Predominance**.  Questions of law and fact common to all Class members exist and predominate over questions affecting only individual Class members, including, *inter alia*:

a.   Whether Defendants promised to replace the Class members' Devices with Devices that did not contain used parts, including remanufactured or refurbished parts;

b.   Whether Defendants replaced the Class members' Devices with used, remanufactured, or refurbished Devices;

c.   Whether Defendants' promise to replace the Class members' Devices with ones that were "equivalent to new" means that Defendants cannot use used parts, including refurbished or remanufactured parts;

d.   Whether Defendants satisfied their obligation to provide Class members' with Devices or parts that were equivalent to new in performance and reliability;

e.   Whether used, refurbished, or remanufactured parts can be equivalent to new in performance and reliability;

f.   Whether the word "refurbished" in the Apple Contracts means something other than "equivalent to new in performance and reliability";

g.   Whether Defendants breached their contracts with the Class members;

_____

[2] Warranty Week, Apple's Warranty and AppleCare Programs, available at http://www.warrantyweek.com/archive/ww20151210.html.

h.   Whether Defendants violated Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

i.   Whether Defendants violated the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*;

j.   Whether Defendants violated the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

k.   Whether Defendants violated California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; and

l.   Whether Defendants violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

126.   **Typicality**.  Plaintiff's claims are typical of the claims of the Class, as they arise out of the same conduct of Defendants, involve the same legal theories, and challenge the same practices of Defendants.  Plaintiffs and all Class members have been subjected to the same practices and hold the same rights, are all entitled to the same legal and equitable relief, and have suffered the same impact and injury, and sustained similar damage by paying an amount for service contracts that they would not have paid or greater than that which they would have paid had the use of used parts been disclosed.

127.   **Adequacy**.  Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members.  Plaintiffs have no interests antagonistic to, or in conflict with, the interests of the other Class members, and they will zealously pursue their claims.  Plaintiffs' lawyers are highly experienced in the prosecution of consumer class actions and complex commercial litigation, capable of providing the financial resources needed to litigate this matter to conclusion, and have litigated other consumer rights matters in a class context.

128.   **Superiority**.  A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiffs and the Class members.  Plaintiffs and the Class members—many of whom are unaware of their rights—have been harmed by Defendants' misrepresentations.  Litigating this case as a class action reduces the possibility of repetitious litigation relating to Defendants' wrongful actions and provides an efficient mechanism for adjudication for Class members, whose claims are too small to warrant individual litigation.

129.    **Injunctive and Declaratory Relief**.  Apple has acted or refused to act on grounds that apply generally to the Class and final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## VII.   COUNTS

## COUNT I

### BREACH OF CONTRACT
### (Against Defendant AppleCare Services)

130.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

131.    When consumers purchased Apple Contracts, they entered into a contractual relationship with AppleCare Services, and agreed to be bound by the Apple Contracts.

132.    AppleCare Services likewise agreed to be bound by and follow the terms of the Apple Contracts

133.    AppleCare Services promised to replace covered Devices with products that are new or equivalent to new, but instead replaced them with Devices containing used parts, including refurbished or remanufactured parts.

134.    Beginning on September 10, 2013, AppleCare Services promised purchasers of AppleCare+ that it would perform hardware repairs "using new parts or parts that are equivalent to new in performance and reliability."  Despite this representation, AppleCare Services utilized used parts, including refurbished or remanufactured parts, when making hardware repairs.

135.    The Apple Contracts specifically represent when refurbished parts will be used: when repairing a Device under AppleCare, when repairing a Device under AppleCare+ for accidental damage, and when repairing a Device under AppleCare+'s hardware provision for individuals who purchased AppleCare+ before September 10, 2013.

136.    AppleCare Services breached its contractual duties when it replaced covered Devices with Devices that contained used, refurbished, or remanufactured parts.

137.    AppleCare Services further breached its contractual duties when it used refurbished, remanufactured, or used parts when making a hardware repair for Plaintiffs and Class members who purchased AppleCare+ on or after September 10, 2013.

138.    Plaintiffs and the Class have suffered injury in fact, including monetary damages, and will continue to be injured and incur damages because of AppleCare Services' breach of contract.

139.    Plaintiffs and the Class may recover all damages associated with this breach in an amount to be proven at trial, including attorneys' fees and costs.

**COUNT II**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(Against Defendant AppleCare Services)**

140.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

141.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), as persons entitled to enforce against the warrantor the obligations of its implied warranties.

142.    Apple is a "supplier" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4), because it is "engaged in the business of making a consumer product directly or indirectly available to consumers."

143.    AppleCare Services is a "warrantor" and service contractor within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(5), because it offered a written warranty and service contract.

144.    The Apple Contracts are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), because they each constitute an "undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking."

145.   The Apple Contracts are "service contracts" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(8), because they are each a "contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."

146.   The Magnuson-Moss Warranty Act sets forth rules governing warranties "to improve the adequacy of information available to consumers" and to "prevent deception."  15 U.S.C. § 2302(a).

147.   As written warranties, the Apple Contracts must provide "[t]he elements of the warranty in words or phrases which would not mislead a reasonable, average consumer as to the nature or scope of the warranty."  15 U.S.C. § 2302(a)(13).

148.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer damaged by the failure of a warrantor or service contractor to comply with a warranty or service contract.

149.   AppleCare Services promised to replace the covered Devices with products that are new or equivalent to new in performance and reliability but instead replaced them with Devices containing used parts, including refurbished or remanufactured parts.

150.   AppleCare Services specifically disclosed that it would use refurbished parts when repairing the Devices, which would lead a reasonable consumer to believe that replacements would not use refurbished, used, or remanufactured parts.

151.   Apple Care Services' representation, that it would use refurbished parts in repairs but not replacements, was deceptive.

152.   For AppleCare+ contracts purchased starting September 10, 2013, AppleCare Services promised to perform hardware repairs "using new parts or parts that are equivalent to new in performance and reliability."  Despite this representation, AppleCare Services utilized used parts, including refurbished or remanufactured parts, when making hardware repairs.

153.   AppleCare Services specifically disclosed they would use refurbished parts in making accidental damages repairs, which would lead a reasonable consumer to believe that warranty repairs would not use refurbished, used, or remanufactured parts.

154.     Apple Care Services' representation, that it would use refurbished parts in accidental damage repairs but not hardware repairs, was deceptive.

155.     AppleCare Services breached its warranties and service contracts, as described in more detail above, and is therefore liable to Plaintiffs and the Class under 15 U.S.C. § 2310(d)(1).

156.     Under 15 U.S.C. § 2310(e), Plaintiffs may bring this class action and need not give AppleCare Services notice or an opportunity to cure until the Court determines the representative capacity of Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure.

157.     The amount in controversy of Plaintiffs' individual claims meets or exceeds $25. The amount in controversy exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined.  Plaintiffs, individually and on behalf of the Class members, seek all damages permitted by law, including the difference between the value of the Device they received and the value of a new Device, in an amount to be proven.  In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members may recover the aggregate costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in the prosecution of this action.

158.     Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).  Based on AppleCare Services continuing practice of replacing and repairing Devices with used, refurbished, or remanufactured Devices and parts, instead of new or equivalent to new Devices and parts, Plaintiffs seek a declaration that AppleCare Services cannot replace or repair Devices under the Apple Contracts using used, refurbished, or remanufactured parts when the Apple Contracts require new or equivalent to new Devices or parts.

## COUNT III

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIV. CODE § 1790, *et seq.***
**(Against Defendant AppleCare Services)**

159.     Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

160.     AppleCare Services is a "person" under Cal. Civ. Code § 1791(b).

161.     Plaintiffs are "buyers" or "retail buyers" under Cal. Civ. Code § 1791(b), because they are individuals who bought consumer goods.

162.     The Devices are "consumer goods" under Cal. Civ. Code § 1791(a), because they are products used or bought primarily for personal, family, or household purposes.

163.     The Apple Contracts are "service contracts" under Cal. Civ. Code § 1791(o), because they are written contracts to perform services relating to the maintenance or repair of a consumer product.

164.     As service contracts, the Apple Contracts must explain the steps AppleCare Services will take to carry out its obligations under the contract.  Cal. Civ. Code § 1794.4(c)(6).

165.     AppleCare Services represented that it would replace covered Devices with new or equivalent to new Devices, and for AppleCare+ purchased starting September 10, 2013, repair hardware defects with new or equivalent to new parts.

166.     AppleCare Services instead gave Plaintiffs and the Class replacement Devices with refurbished, remanufactured, and used parts. AppleCare Services also repaired Devices covered by AppleCare+ starting September 10, 2013, with refurbished, remanufactured, and used parts.

167.     AppleCare Services failed to comply with its obligations under the Apple Contracts. Cal. Civ. Code § 1794(a).

168.     As a direct and proximate result of AppleCare Services' failure to comply with the Apple Contracts, Plaintiffs and the other Class members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class members.  Plaintiffs and the other Class members have been damaged because of the diminished value of their Devices, the products' malfunctioning, and the nonuse of their Devices.

169.     Under Cal. Civ. Code § 1794(a) and (b), Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the right to replacement of their Devices, reimbursement for the cost of their Devices, or the cost to repair their Devices.

170.    Upon information and belief, AppleCare Services acted willfully in not setting forth the requirement of the service contract, entitling Plaintiffs and the Class to a civil penalty of two times actual damages under Cal. Civ. Code § 1794(c).

**COUNT IV**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CLRA) CAL. CIV. CODE § 1750, *ET SEQ.***
**(Against All Defendants)**

171.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

172.    Defendants are "persons" under Cal. Civ. Code § 1761(c).

173.    Plaintiffs are "consumers" under Cal. Civ. Code § 1761(d), who purchased one of the Apple Contracts.

174.    The Devices are "goods" under Cal. Civ. Code § 1761(a).

175.    The Apple Contracts are "transactions" under Cal. Civ. Code § 1761(e).

176.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

177.    Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1770(a), as described herein, by:

   a.    Concealing that Plaintiffs' would receive a Device containing, or hardware repair using, refurbished, remanufactured, or used parts;

   b.    Representing that the replacement Devices are original or new when instead they are altered, reconditioned, reclaimed, used, or secondhand, and the hardware repairs use original or new parts when instead they use parts that are altered, reconditioned, reclaimed, used, or secondhand;

   c.    Representing that the replacement Devices and hardware repair parts have characteristics, uses, benefits, and qualities which they do not have; and

   d.    Representing that the replacement Devices and hardware repair parts are of a particular standard, quality, and grade when they are not.

178.    Defendants' actions occurred in the sale of goods to a consumer.

179.    The use of refurbished, remanufactured, or refurbished parts in Plaintiffs' Devices was material to Plaintiffs, as was Defendants' concealment of this conduct.

180.    Had Plaintiffs and the other Class members known they would not receive new or equivalent to new Devices and parts, they would not have purchased the Apple Contracts and/or paid as much for them.

181.    Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose the use of refurbished, remanufactured, or refurbished parts in Plaintiffs' Devices.

182.    Under Cal. Civ. Code § 1780(a)(1), Plaintiffs, individually and on behalf of the other Class members, seek actual damages against Defendants for the harm caused by Defendants' violations of the CLRA as alleged.

183.    Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and restitution under Cal. Civ. Code § 1780(a)(2), (3).

184.    Plaintiffs, individually and on behalf of the other Class members, seek punitive damages against Defendants under Cal. Civ. Code § 1780(a)(4) because they willfully and consciously disregarded of the rights of Plaintiffs and the Class.  Defendants intentionally and willfully concealed material facts that only they knew.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

185.    Plaintiffs, individually and on behalf of the other Class members, seek costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

186.    Plaintiff Maldonado, for herself and as a representative of the Class, including Plaintiff Carter, sent a notice and demand over thirty days before suing, as specified by Cal. Civ. Code § 1782(a), and Defendants have not offered a correction, repair, replacement, or remedy. Nonetheless, Plaintiff Carter will send notice as specified by Cal. Civ. Code § 1782(a) to Defendants.

**COUNT V**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE § 17500,** *et seq.*
**(Against All Defendants)**

187.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

188.    Cal. Bus. & Prof. Code § 17500 makes it unlawful for a company to induce the public to enter into an obligation related to personal property with a statement made in advertising, marketing, or publication it knows is untrue or misleading, or with the exercise of reasonable care should know is untrue or misleading.

189.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which, if exercising reasonable care, would have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

190.    Defendants have violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding whether a consumer would receive new or equivalent to new Devices, as set forth, were material and likely to deceive a reasonable consumer.

191.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, because of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing the Apple Contracts, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendants regarding the quality and source of the replacement Devices and AppleCare+ hardware repairs.  Defendants' representations turned out not to be true because the replacement Devices and AppleCare+ hardware repair parts were not new or equivalent to new, but refurbished, remanufactured, or used.  Had Plaintiffs and the other Class members known this, they would not have purchased the Apple Contracts and/or paid as much for them.  Plaintiffs and the other Class members overpaid for their Apple Contracts and did not receive the benefit of their bargain.

192.    All of the wrongful conduct alleged occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is ongoing, both in the state of California and nationwide.

193.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, or deceptive practices and to restore to Plaintiffs and the other Class members any money Defendants acquired by unfair competition, via restitution or disgorgement, and for any other just and proper relief.

**COUNT VI**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***
**(Against All Defendants)**

194.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

195.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

196.    Defendants' conduct violates the UCL.  Defendants' conduct violates the UCL in, at a minimum, these ways:

    a.    By concealing from Plaintiffs and the Class members that the replacement Devices and repair parts were refurbished, remanufactured, or used;

    b.    By marketing the Apple Contracts as providing new or equivalent to new replacement Devices or repairs;

    c.    By instituting a business practice where used Devices and parts, including refurbished and remanufactured Devices and parts, are given to consumers in lieu of new or equivalent to new Devices and parts; and

    d.    By violating other California laws, including California laws governing false or deceptive advertising and consumer protection.

197.    Defendants' misrepresentations and omissions caused Plaintiffs and the other Class members to purchase or pay more for the Apple Contracts.  Absent those misrepresentations and

omissions, Plaintiffs and the other Class members would not have purchased the Apple Contracts or would not have purchased the Apple Contracts at the prices they paid.

198.    Defendants have violated the UCL because the misrepresentations and omissions regarding promises of new or equivalent to new Devices were material and likely to deceive a reasonable consumer. Phone quality is important to consumers.[3]

199.    Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money and undesirable, defective merchandise, as a result of Defendants' misrepresentations and omissions.

200.    Plaintiffs seek to enjoin under Cal. Bus. & Prof. Code § 17203 further unlawful, unfair, and fraudulent acts or practices by Defendants.

201.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices; to restore to Plaintiffs and members of the Class to the equipment they are entitled to as a matter of law; to restore, via restitution or disgorgement, any monies Defendants acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and for members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel and Plaintiffs as class representatives;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint, and requiring Defendant to offer to replace, and, if accepted, replace at no cost, the Device of any class member who received a Device or repair with used parts, including refurbished or remanufactured

---

[3] Christopher Versace, *What Do Consumers Want In A New Smartphone?* Forbes (Aug. 21, 2013), http://www.forbes.com/sites/chrisversace/2013/08/21/what-do-consumers-want-in-a-new-smartphone/#32558f5d47b3.

1    parts, when entitled to a Device or parts that are new or equivalent to new in performance and

2    reliability;

3        C.     An order declaring that under the Apple Contracts, Defendants cannot repair or

4    replace Devices with parts or Devices that are used or contain used parts, including refurbished and

5    remanufactured parts or Devices, where the contractual obligation requires new or equivalent to

6    new in performance and reliability;

7        D.     Costs, restitution, damages, and/or disgorgement, each in an amount to be

8    determined;

9        E.     Punitive damages;

10        F.     A civil penalty of two times actual damages;

11        G.     Pre- and post-judgment interest on any amounts awarded;

12        H.     An award of costs and attorneys' fees where authorized by law; and

13        I.     Such other or further relief as may be appropriate.

14                      **DEMAND FOR JURY TRIAL**

15    Plaintiffs demand a trial by jury on all issues so triable.

1

2     DATED:  November 14, 2016              HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                       By */s/ Robert B. Carey*
Robert B. Carey (*Pro Hac Vice* )

5                                       Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP

6                                       11 West Jefferson, Suite 1000
Phoenix, Arizona 85003

7                                       Telephone: (602) 840-5900
Facsimile: (602) 840-3012

8                                       Email: rob@hbsslaw.com
michellak@hbsslaw.com

9                                       Shana E. Scarlett (SBN 217895)
715 Hearst Avenue

10                                     Berkeley, California 94710
Telephone: (510) 725-3000

11                                     Facsimile: (510) 725-3001
Email:  shanas@hbsslaw.com

12

13                                     Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP

14                                     1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

15                                     Telephone: (206) 623-7292
Facsimile: (206) 623-0594

16                                     Email:  steve@hbsslaw.com

17                                     Renee F. Kennedy (*Pro Hac Vice*)
1620 S. Friendswood Dr., Ste. Apple

18                                     Friendswood, TX  77546
Telephone: (832) 428-1552

19                                     Email: reneekennedy.esq@gmail.com

20                                     *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
Case No. 3:16-cv-04067-WHO

010637-11               901186 V1

1

## **CERTIFICATE OF SERVICE**

2

        The undersigned hereby certifies that a true and accurate copy of the foregoing was filed

3

electronically via the Court's ECF system, on November 14, 2016.  Notice of electronic filing

4

will be sent to all parties by operation of the Court's electronic filing system.

5

DATED:  November 14, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

6

7

                                    By:   _/s/ Robert B. Carey_____

8

                                    ROBERT B. CAREY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28