Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
michellak@hbsslaw.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICKY MALDONADO AND JUSTIN CARTER, individually and on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>APPLE INC., APPLECARE SERVICE COMPANY, INC., AND APPLE CSC, INC.<br><br>              Defendants. | No. 3:16-cv-04067-WHO<br><br>Related Case:<br>*English v. Apple Inc., et al.*<br>Case No. 3:14-cv-01619-WHO<br><br>PLAINTIFFS' NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing: May 15, 2019<br>Time: 2:00 p.m.<br>Judge: William H. Orrick<br>Courtroom: 2, 17th Floor |



1     **NOTICE OF MOTION AND AMENDED MOTION FOR CLASS CERTIFICATION**

2 **TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

3     PLEASE TAKE NOTICE THAT on May 15, 2019, at 2:00 p.m., or as soon thereafter as

4 the matter may be heard, in the United States District Court for the Northern District of California,

5 San Francisco Courthouse, 450 Golden Gate Avenue, 17th Floor, Courtroom 2, before the

6 Honorable William H. Orrick, Plaintiffs will, and hereby do, move the Court for an order under

7 Fed. R. Civ. P. 23(a) and (b)(3) certifying the following Class:

8    All individuals who purchased AppleCare or AppleCare+, either directly or
     through the iPhone Upgrade Program, on or after January 1, 2009, and received a
9    remanufactured replacement Device.

10    Plaintiffs move to appoint Vicky Maldonado and Justin Carter as class representatives.

11    Plaintiffs also move under Fed. R. Civ. P. 23(g) to appoint Steve Berman of Hagens

12 Berman Sobol Shapiro LLP as Lead Class Counsel for the proposed Class.

13    This Motion is based on this Notice of Motion and Amended Motion, the accompanying

14 Memorandum of Points and Authorities, and the Declaration of Steve W. Berman in Support of

15 Plaintiffs' Amended Motion for Class Certification and exhibits thereto.

16 DATED: February 28, 2019      Respectfully submitted by,

17              HAGENS BERMAN SOBOL SHAPIRO LLP

18

19              By: /s/ Steve W. Berman
               Steve W. Berman (*Pro Hac Vice*)
20             1301 Second Avenue, Suite 2000
               Seattle, WA 98101
21             Telephone: (206) 623-7292
               Facsimile: (206) 623-0594
22             Email: steve@hbsslaw.com

23             Shana E. Scarlett (SBN 217895)
               HAGENS BERMAN SOBOL SHAPIRO LLP
24             715 Hearst Avenue
               Berkeley, California 94710
25             Telephone: (510) 725-3000
               Facsimile: (510) 725-3001
26             Email: shanas@hbsslaw.com

27

28



Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
michellak@hbsslaw.com

Renee F. Kennedy *(Pro Hac Vice)*
P.O. Box 2222
Friendswood, TX 77549
Telephone: (832) 428-1552
Email: kennedyrk22@gmail.com

*Attorneys for Plaintiffs*



# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

II.  SUMMARY OF EVIDENCE COMMON TO EACH CLASS MEMBER ...........................2

    A.  Apple sells extended warranties. ..................................................................2

    B.  Apple's replacement devices are mainly remanufactured devices...............3

    C.  Apple maintains return rate and ▮▮▮▮▮ data. ...............................................5

    D.  Plaintiffs will use common evidence to prove Apple's remanufactured devices ▮▮▮▮▮▮▮▮ than new devices and therefore are not "new or equivalent to new." ..........................................................................7

    E.  Apple's testing only tests functional performance and does not test for ▮▮▮▮▮▮ ▮▮▮▮▮▮. ..................................................9

    F.  Apple gives Plaintiffs remanufactured devices. .......................................13

III.  THE PROPOSED CLASS MEETS THE RULE 23 CERTIFICATION REQUIREMENTS ................................................................................................15

    A.  The Class is identifiable. ............................................................................15

    B.  The Class meets the Rule 23(a) requirements. ..........................................16

        1.  The Class is sufficiently numerous..................................................16

        2.  Plaintiffs' and Class members' claims share common questions of fact and law, satisfying Rule 23(a)(2). ..........................................16

        3.  Plaintiffs' claims are typical of the Class's claims, satisfying Rule 23(a)(3). ..........................................................................17

        4.  Adequacy of representation is satisfied under Rule 23(a)(4). .......18

    C.  The Class meets the requirements of Rule 23(b)........................................19

        1.  Common questions of law and fact concerning liability predominate over questions affecting only individual Class members. ...........................19

            a.  Breach of contract claim...................................................20

            b.  Song-Beverly claim ..........................................................22

            c.  Magnuson-Moss Warranty Act claim ...............................22

            d.  UCL claims........................................................................23

            e.  Plaintiffs can establish a method for calculating damages for the Class. ..........................................................24

        2.  A class action is the superior method of adjudication. ...................25

IV.  CONCLUSION ..................................................................................................25



1

## TABLE OF AUTHORITIES

**Page(s)**

2

3

**Cases**

4

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...............................................................................................................19

5

6

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ...............................................................................................................15

7

*CDF Firefighters v. Maldonado*,
   70 Cal. Rptr. 3d 667 (2008)...................................................................................................20

8

9

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015)...................................................................................23

10

11

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...........................................................................................15, 18

12

*Farar v. Bayer AG*,
   No. 14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ................................15

13

14

*Frlekin v. Apple Inc.*,
   309 F.R.D. 518 (N.D. Cal. 2015) ...........................................................................................18

15

16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................................17, 19

17

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ...............................................................................................24

18

19

*Long v. Graco Children's Prod. Inc.*,
   No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ..............................22

20

21

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   119 Cal. Rptr. 2d 190 (Ct. App. 2002), *as modified on denial of reh'g* (May 29,
   2002).......................................................................................................................................23

22

23

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ...............................................................................................17

24

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013)...................................................................................23

25

26

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................................23

27

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...........................................................................................................19

28



*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...............................................................16, 17, 25

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011) .................................................................15, 16

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001), opinion amended on denial of reh'g,
   273 F.3d 1266 (9th Cir. 2001) ....................................................................15, 25

**Statutes**

15 U.S.C. § 2302(a)(13) .....................................................................................22

Cal. Civ. Code § 1791(o) ...................................................................................22

Cal. Civ. Code § 1794 .......................................................................................22

Cal. Civ. Code § 1794.4(c)(6) ............................................................................22

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................15

Fed. R. Civ. P. 23(a) .....................................................................................15, 16

Fed. R. Civ. P. 23(a)(1) ......................................................................................1

Fed. R. Civ. P. 23(a)(2) ...................................................................................1, 16

Fed. R. Civ. P. 23(a)(3) ...................................................................................1, 17

Fed. R. Civ. P. 23(a)(4) ...................................................................................1, 18

Fed. R. Civ. P. 23(b)(3) .................................................................................1, 2, 19

Fed. R. Civ. P. 23(b) .....................................................................................15, 19

Fed. R. Civ. P. 30(b)(6) .......................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28


HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This case involves Apple Inc.'s decision to breach its promises to all consumers who purchased AppleCare or AppleCare+ and who received a remanufactured device.[1] Apple sells extended warranties on its popular iPhones and iPads called AppleCare and AppleCare+. These programs promised all consumers that if their device is defective or becomes damaged, they would receive a replacement device that is "new or equivalent to new in performance and reliability." But Apple does not honor this promise to anyone who receives a replacement device because Apple provides replacement devices that are not equivalent to new in performance and reliability. ██████ ███████████████████████████████████████████ meaning they contain used parts. ████████████████████████████████████████████████████████ ██████████████████ And Apple has no reliable or sound basis to promise "new or equivalent to new" as its ████████████████████████████████████████████████████ ██████████████

Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3). Rule 23(a)(1)'s numerosity requirement is present because the Class has millions of readily identifiable members. Rule 23(a)(2) is satisfied as common questions of law and fact readily arise from Apple's uniform contract promise and breach of it, and from Apple's uniform misrepresentations of material fact. Under Rule 23(a)(3), Plaintiffs' claims are typical of the claims of all Class members, because each Plaintiff and member of the Class purchased AppleCare/AppleCare+ and were provided a replacement device that was not new or equivalent to new. And Rule 23(a)(4)'s adequacy of representation requirement is fulfilled, because the interests of Plaintiffs and the Class do not

---

[1] Plaintiffs will refer to Apple Inc. as "Apple" in this Motion. Plaintiffs' suit is against Apple, AppleCare Service Company, Inc., and Apple CSC Inc. In purchasing AppleCare/AppleCare+, a customer enters into a service contract with AppleCare Service Company (operating as Apple CSC in Texas), a wholly owned subsidiary of Apple, with Apple as the contract administrator. First Amended Complaint ("FAC") ¶¶ 11, 37, 50, Nov. 14, 2016, ECF No. 45; Apple's Answer to FAC ("Answer") ¶¶ 11, 37, 50, Apr. 5, 2017, ECF No. 69.

[2] Declaration of Robert Bardwell ("Bardwell Decl.") attaching Expert Report at Ex. A; Declaration of Michael Pecht ("Pecht Decl.") attaching Expert Report at Ex. A



1  conflict, and Plaintiffs are represented by well-qualified counsel who are diligently prosecuting the

2  Class claims.

3          Rule 23(b)(3) certification is warranted because common issues of law or fact predominate.

4  Plaintiffs will prove their case with common evidence that as to each class member: (1) Apple

5  promised "equivalent to new devices"; (2) their devices were made with used parts;

6  (3) ███████████████████████████████████████████████████████████████████████

7  ████████████████████ and (4) as a result, none of the remanufactured devices Class members

8  receive are new or equivalent to new. As to the superiority prong of Rule 23(b)(3), each Class

9  member has a claim too small to litigate individually.  No consumer can prove this case without the

10 pooling of resources offered by the class-action mechanism.

11         **II.     SUMMARY OF EVIDENCE COMMON TO EACH CLASS MEMBER**

12 **A.     Apple sells extended warranties.**

13         Apple is the manufacturer and seller of smartphones and tablets, known as iPhones and

14 iPads. Those devices come with a one-year Limited Warranty providing that when a device is

15 defective, Apple will replace the device with one "formed from new and/or previously used parts

16 that are equivalent to new in performance and reliability."[3] In 2009, Apple began selling an

17 extended warranty called "AppleCare." AppleCare is a two-year service contract that covers

18 hardware, specifically defects in "materials and workmanship."[4] Apple sold AppleCare to cover

19

20         [3] FAC ¶ 29; Declaration of Michella Kras ("Kras Decl.) attaching copies of the Limited
21 Warranties at Ex. A. Unless otherwise noted, all "Ex." numbers refer to Exhibits attached to the
   Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification, filed
22 herewith.

23         [4] FAC ¶ 33. AppleCare Terms and Conditions (APL-MLDNDO_00001158-66) § 3.1 (Ex. 1);
   AppleCare+ Terms and Conditions (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2). Apple has
24 issued multiple versions of AppleCare/AppleCare+ that apply to the Class. Plaintiffs are attaching
   exemplars of the AppleCare and AppleCare+ Terms and Conditions. Apple has agreed that that all
25 versions of AppleCare and AppleCare+ contain the following quoted language: If "a defect in
   materials and workmanship has arisen in the Covered [iPhone or iPad] . . . Apple will . . .
26 exchange the [iPhone or iPad] with a replacement product that is new or equivalent to new in
   performance and reliability." Apple has agreed that that all versions of AppleCare+ contain the
27 following quoted language: If an iPhone or iPad "has failed due to accidental damage from the
   handling . . . Apple will . . . exchange the Covered [iPhone or iPad] with a replacement product that

28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

iPhones from 2009 to 2011 and iPads from 2010 to 2011.[5] The AppleCare contract promises all Class members that if a device is defective, Apple will "exchange the [iPhone/iPad] with a replacement product that is new or equivalent to new in performance and reliability" at no cost.[6] In late 2011, Apple unveiled a second warranty program, AppleCare+.[7] AppleCare+ has the same two-year warranty for hardware defects as Apple uniformly promises all class members to "exchange the Covered [iPhone/iPad] with a replacement product that is new or equivalent to new in performance and reliability."[8] AppleCare+ also has an accidental damage provision and promises to "exchange the Covered [iPhone/iPad] with a replacement product that is new or equivalent to new in performance and reliability . . . ."[9] In contrast to its Limited Warranty, Apple omits any reference to "used parts" when describing replacement devices in AppleCare and AppleCare+.[10] Apple charged its customers between $69 and $199[11] for AppleCare/AppleCare+.[12]

**B.      Apple's replacement devices are ███████████████.**

While Apple promises to replace its iPhones and iPads with ones that are "new or equivalent to new in performance and reliability,"[13] it does not do so. Apple's replacement devices—███████████[14]—fall into one of three categories: new, reclaimed, or

_____

is new or equivalent to new in performance and reliability." Plaintiffs are able to produce all version of the AC/AC+ contracts if required by the Court.

[5] FAC ¶ 34; Answer ¶ 34.

[6] FAC ¶¶ 38, 43; AppleCare (APL-MLDNDO_00001158-66) § 3.1 (Ex. 1).

[7] FAC ¶ 46; Answer ¶ 46.

[8] FAC ¶¶ 52, 62; AppleCare+ (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2).

[9] FAC ¶¶ 53, 62; AppleCare+ (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2).

[10] AppleCare (APL-MLDNDO_00001158-66) § 3.1 (Ex. 1); AppleCare+ (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2).

[11] FAC ¶¶ 45, 66; Answer ¶¶ 45, 66; AppleCare+ current pricing on Apple's website at https://www.apple.com/search/Applecare?page=1&sel=accessories&src=serp (last visited Feb. 22, 2019).

[12] Plaintiffs will refer to AppleCare and AppleCare+ as "AC/AC+" in this Motion.

[13] The contractual promise at issue here is "equivalent to new in performance and reliability," but for the purposes of this Motion, Plaintiffs sometimes shorten this term to "equivalent to new."

[14] Plaintiffs use the term "replacement device" throughout this Motion, which has the same meaning as what Apple refers to as a ███████ Lanigan Dep. 31:25-32:8, Jan. 11, 2019 ("Lanigan Dep") (Ex. 3).



remanufactured.[15] The new replacement devices are built in Apple factories with all new parts and then packaged without accessories to be used as service stock.[16] The reclaimed replacement devices are brand new devices returned within fourteen days of purchase for a refund.[17] Remanufactured replacement devices are devices built in Apple factories using a mix of used and new parts.[18] Because of their ███████████████████████ and because Apple distributes millions of these devices to AC/AC+ purchasers, *remanufactured* iPhones and iPads are the focus of Plaintiffs' claims.

████████████████████████████████████████████

████████████████████████████████████████████

████████████ [20] ████████████████████████████

████████████████████████████████████████████

████████████████ [21]

████████████████████████████████████████████

████████████████████████████ The used parts Apple puts in

---

[15] Apple's Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. 15, July 28, 2017 (Ex. 4).

[16] Apple at times provides new devices as replacements, particularly after a device's introduction because there are no devices to remanufacture at that point. Those devices are not included in the Class. *Id.*

[17] *Id.* ████████████████████████████████████

████████ Apple's Highly Confidential and Restricted Access Suppl. Resps. and Objs. to Pls.' Non-Uniform Interrog. No. 7, Feb. 2, 2018 (Ex. 5).

[18] Apple's Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. 15, July 28, 2017 (Ex. 4).

[19] *Id.*; Apple's Highly Conf. Suppl. Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. No. 4, Feb. 2, 2018 (Ex. 6).

[20] Apple's Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. No. 4, July 28, 2017 (Ex. 4); Fu Dep. 18:24-19:8, 19:12-15, Jan. 8, 2019 ("Fu Dep.") (Ex. 7); Lanigan Dep. 41:21-24 (Ex. 3).

[21] ████████████████████████████████████████████ Lanigan Dep. 24:3-25:16 (Ex. 3).

[22] Apple's Highly Confidential Suppl. Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. Nos. 4, 15, Feb. 2, 2018 (Ex. 6).

MOTION FOR CLASS CERTIFICATION
Case No. 3:16-cv-04067-WHO
010637-11 1099643 V1

- 4 -

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    remanufactured devices ████████████████████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████▉█████████████████████████████████

4    ████████████████████▉█████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████▉█████████████████████████████████████████

7    ██████████████████████▉███████████████████████████████████████

8    ██████████████████████████████████████████████████████████

9    ███████████▉██████████████████████████████████

10   ███████████████████████████▉██████████████████████████████████

11   ██████████████████████████████████████████████████▉███████████

12   █████████████████████████████████████████████

13   **C.    Apple maintains** ████████ **and** ████████ **data.**

14        Apple tracks both ████████ and ████████ for its devices.  For *every* device Apple sells

15   or issues as a replacement, ████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17

18

19   ―――――――――――――――――――――

20   [23] *Id.* at Resp. to Interrog. 15; Fu Dep. 19:20-20:1 (Ex. 7); Lanigan Dep. 21:25-22:6 (Ex. 3).

21   [24] ████████████████████████████████████ Fu Dep. 44:3-5 (Ex. 7); Lanigan Dep. 66:20-22 (Ex. 3).

22   [25] Apple's Highly Confidential Suppl. Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at Resp. to Interrog. 6, Feb. 2, 2018 (Ex. 6).

23   [26] Fu Dep. 42:8-43:4 (Ex. 7); Lanigan Dep. 24:17-25, 33:3-20 (Ex. 3).

     [27] Fu Dep. 43:5-14 (Ex. 7); Lanigan Dep. 71:23-72:4, 73:2-16 (Ex. 3).

24   [28] Fu Dep. 42:20-43:4 (Ex. 7); Lanigan Dep. 33:3-20 (Ex. 3).

25   [29] Apple's Highly Confidential Suppl. Resps. and Objections to Plaintiffs' First Set of Non-Uniform Interrogatories at Resp. to Interrog. 6, Feb. 2, 2018 (Ex. 6); Fu Dep. 29:25-30:8, 96:6-14, 97:5-8 (Ex. 7); Lanigan Dep. 55:11-17, 56:9-16 (Ex. 3).

26

27   [30] Apple's Highly Confidential Suppl. Resps. and Objections to Plaintiffs' First Set of Non-Uniform Interrogatories at Resp. to Interrog. 9, Feb. 2, 2018 (Ex. 6); Lanigan Dep. 62:9-19, 63:3-15, 65:4-66:8 (Ex. 3).

28



1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ███████████████████████████████████████████████████

4 ███████████████████████████████████████████████████

5 ████████████████████████████████

6 ██████████████████████████████████████████████

7 ███████████████████████████████████████████████████

8 ███████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████████████████████

17 ███████████████████████████████████████████████████

---

[31] Deposition of Avijit Sen 36:6-16, 37:24-39:3, 44:10-46:15, 68:6-22, 80:15-22, Oct. 9, 2018 ("Sen Dep.") (Ex. 8); Lanigan Dep. 38:2-9.

[32] Sen Dep. 36:6-16, 80:15-22 (Ex. 8).

[33] *Id.* 80:15-22, 88:14-19; Lanigan Dep. 91:18-24 (Ex. 3).

[34] Fu Dep. 164:23-165:4, 165:18-166:5, 166:15-17 (Ex. 7); Lanigan Dep. 103:17-104:20, 123:11-18 (Ex. 3).

[35] Lanigan Dep. 36:11-18 (Ex. 3). ████████████████████████████ *Id.* at 38:2-9, 39:12-21.

[36] Lanigan Dep. at 90:15-91:24, 97:7-11; Lanigan Dep. Ex. 56 (APL-MLDNDO_00013487-530) (Ex. 9).

[37] Lanigan Dep. Ex. 56, at 13497 (APL-MLDNDO_00013487-530) (Ex. 9).

[38] *Id.* ████████████████████████████████████████████ Lanigan Dep. 108:6-109:8 (Ex. 3).

[39] Lanigan Dep. 91:3-6 (Ex. 3); Lanigan Dep. Ex. 56, at 13497 (APL-MLDNDO_00013487-530) (Ex. 9).

---



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12   **D.**     **Plaintiffs will use common evidence to prove Apple's remanufactured devices**

13

14        Plaintiffs will use Apple's ▓▓▓▓▓▓▓ show on a classwide basis that Apple's

15   remanufactured devices ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

16   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17

18

19

20

21   [40] *Id.* at 101:4-12 (Ex. 3).

22   [41] *Id.* at 106:13-16 (Ex. 3).

     [42] Lanigan Dep. Ex. 56, at 13497 (APL-MLDNDO_00013487-530) (Ex. 9).

23   [43] Sen Dep. 36:6-16, 45:5-21 (Ex. 8); Lanigan Dep. 102:1-103:9 (Ex. 3).

24   [44] Lanigan Dep. 109:20-110:2, 141:15-25 (Ex. 3).

     [45] *Id.* at 109:20-110:2, 118:24-119:8 (Ex. 3).

25   [46] Fu Dep. 36:8-23, 115:15-17 (Ex. 7); Lanigan Dep. 139:1-18 (Ex. 3).

26   [47] Lanigan Dep. 139:19-141:25 (Ex. 3). Apple has not produced its ▓▓▓▓▓▓▓▓▓▓ to

27   Plaintiffs, but if the class is certified, they will ask Apple to produce that data to analyze whether it
     establishes, on a classwide basis, a significant difference between new and remanufactured devices.

28   [48] Lanigan Dep. Ex. 56, at 13497 (APL-MLDNDO_00013487-530) (Ex. 9).



1  Dr. Robert Bardwell, a statistical expert with a PhD in mathematics, ███████



7  ██████████████, Dr. Bardwell determined:

8  • ████████████████████

11 • ██████████████████

14 ████████████████████████

15 ████████████████ the ████████ for new devices that were sold with AC/AC+.

---

[49] Declaration of Robert Bardwell ("Bardwell Decl.") attaching Expert Report at Ex. A. ████████████████████████ *Id.* Ex. A, at 16-18.

[50] The data Apple provided is essentially a subset of Apple's ████████.

[51] APL-MLDNDO-00005561 (Ex. 10); APL-MLDNDO-00005565 (Ex. 11). Apple also produced the ████████████ for new devices that were sold with AC/AC+.

[52] APL-MLDNDO-00005561 (Ex. 10); APL-MLDNDO-00005565 (Ex. 11).

[53] Dr. Bardwell's analysis focuses on ████████████████ to correct for two censoring issues he describes in his report. Bardwell Decl. Ex. A, at 13-14.

[54] *Id.* Ex. A, at 8-9. ████████████████████

[55] *Id.* Ex. A, at 9.

[56] *Id.* Ex. A, at 10-11 Tables 1 and 2.

[57] *Id.* Ex. A, at 12.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   ███████████████████████████████████████████████████████████████████

2   ███████████████████████████

3          Dr. Bardwell was limited in his analysis because of the way the data was produced by

4   Apple.[59] By providing data ████████████   Dr. Bardwell could not apply additional statistical

5   techniques to address all censoring issues as described in his report.[60] With Apple's ██████████

6   ████████████████████████████████████████████, Dr. Bardwell will be able to provide a

7   ████████████████ for the Class and correct for censored (missing) data.[61] But even using Dr.

8   Bardwell's initial approach, Plaintiffs can show that across the Class, █████████████████

9   █████████████████████████

10  **E.**   ████████████████████████████████████████████████

11         To prove contract compliance with its promises, Apple relies on its belief that its

12  remanufactured devices are equivalent to new because they pass the same qualification and testing

13  standards as new devices.[62]  Apple admits that its uniform testing procedures ██████████████

14  ████████████████████████████████████████[63]  Apple's performance tests

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████, which could

17

18

19

20  _____

21  [58] *Id.* Ex. A, at 12.

    [59] The parties agreed to limited data production in anticipation of mediation. Kras Decl. ¶ 5.

22  [60] Bardwell Decl. Ex. A, at 14-15.

23  [61] *Id.* Ex. A, at 16-18.

24  [62] Apple's Highly Conf. and Restricted Access Suppl. Resps. and Objs. to Pls.' First Set of
    Non-Uniform Interrogs. at Resp. to Interrog. No. 7, Feb. 2, 2018 (Ex. 5); Apple's Highly

25  Confidential and Supplemental Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. at
    Resp. to Interrog. 4, Feb. 2, 2018 (Ex. 6); Fu Dep. 21:20-24, 22:24-23:4, 24:12-15, 90:25-91:13

26  (Ex. 7); Lanigan Dep. 126:17-22 (Ex. 3).

27  [63] ██████████████████████████████████████████████ Fu Dep. 23:5-11 (Ex. 7); Lanigan Dep.
    40:16-41:24, 128:8-12 (Ex. 3).

28



1  affect the performance of the device.[64]  Apple admits it does not ████████████
2  ████████████████████████████████████████████████████████ .[65]
3     ████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████
10  ████████████████████████████████████████████████████████
11  ████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████
16  ████████████████████████████████████████████████

17

18     [64] Apple admits its performance testing ████████████████████
19  ████████████████████ Fu Dep. 22:18-23:4, 35:23-36:7
   (Ex. 7); Lanigan Dep. 40:16-41:24, 130:12-23 (Ex. 3); Declaration of Michael Pecht ("Pecht
20  Decl.") attaching Expert Report at Ex. A.
       [65] Lanigan Dep. 133:9-22 (Ex. 3).
21     [66] Fu Dep. 25:17-26:1, 34:3-6 (Ex. 7); Lanigan Dep. 49:12-50:15, 53:8-15 (Ex. 3); Pecht  Decl.
22  Ex. A.
       [67] ████████████████████████████████████████████████████ Fu Dep.
23  24:18-25:6, 160:8-162:23 (Ex. 7); Lanigan Dep. 46:6-47:23 (Ex. 3).
       [68] Fu Dep. 25:17-26:1, 34:3-6 (Ex. 7); Lanigan Dep. 49:12-50:15, 53:8-15 (Ex. 3).
24     [69] Lanigan Dep. 129:23-130:23, 133:9-22, 134:16-19 (Ex. 3).
25     [70] Fu Dep. 25:21-26:1 (Ex. 7); Lanigan Dep. 46:6-47:23, 49:12-50:15 (Ex. 3).
26     [71] Fu Dep. 27:5-15, 30:17-31:6, 31:19-32:17 (Ex. 7); Lanigan Dep. 55:11-17, 56:9-16 (Ex. 3).
27     [72] Fu Dep. 27:5-15, 30:17-31:6, 31:19-32:17 (Ex. 7).
28     [73] Id. at 27:5-15, 30:17-31:6, 31:19-32:17 (Ex. 7); Lanigan Dep. 55:11-17, 56:9-16 (Ex. 3).



1    Dr. Bardwell will show that Apple's ████████████████████████
2    ████████████████████████████████████████████████████████████
3    ████████████████████████████████████████████████████████████
4    ████████████████████████████████████████████████████
5    ████████████████████████████████████████████████████████████
6    ████████████████████████████████████████████████
7    ████████████████████████████████████████████████
8    ████████████████████████████████████████████████
9    ████████████████████████████████████████ [76]

10   Plaintiff's expert, Dr. Michael Pecht, who holds a Ph.D. in engineering mechanics,

11   reviewed Apple's testing protocols and procedures and determined Apple cannot represent that

12   remanufactured devices equal new in performance and reliability.[77] Dr. Pecht determined:

13   - Devices containing salvaged (used) components can never be as reliable as devices

14     containing new components because they were subject to load conditions, meaning

15     remanufactured devices can never be equivalent to new in reliability. The load

16     conditions are also likely to diminish the performance of the device.[78]

17   - Apple's testing is insufficient for Apple to represent that remanufactured devices are

18     equivalent to new devices in reliability.[79]

19   Reliability is the probability that a product will properly perform its intended functions over

20   time.[80] Electronic parts and products wear out over time.[81] An electronic part begins to degrade

21

22   _____

23   [74] Bardwell Decl. Ex. A, at 18.

     [75] *Id.*

24   [76] *Id.* Ex. A, at 19.

25   [77] Pecht Decl. Ex. A, at 10-13.

26   [78] *Id.* Ex. A, at 13.

     [79] *Id.*

27   [80] *Id.* Ex. A, at 10.

28   [81] *Id.*



once it is manufactured.[82] Load or stress conditions, such as operational wear and tear, thermal changes, humidity, dust, and shock (e.g., dropping), will cause degradation.[83] These load conditions can cause damage to parts and components, which may not be seen by the naked eye or by normal functional or performance testing, but it will reduce the life span of the product.[84]

Every iPhone or iPad used by a consumer was subjected to some load conditions.[85] These load conditions occur as the result of simply operating the device and will vary depending on numerous factors—how long the device was used, how much it was used, what were the temperature changes of the device, how the device battery was charged/discharged, how often it was dropped, and how much dust or moisture was introduced into the device.[86] ███████

██████████████████████████████████████████████████[87]

The impact of these load conditions, ████████████████████████ is considerable. ███████████████████████████████

█████████████████████████████████[88] For example, ████████████████

███████████████████████████████████████████

███████████████████████████████████████[89] ███████

█████████████████████████████████████████[90]

Remanufactured devices containing these used components likewise will pass a functional test, but

---

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* Ex. A, at 11.

[86] *Id.*

[87] Fu Dep. 25:17-26:1, 34:3-6, 160:8-162:23 (Ex. 7); Lanigan Dep. 46:6-47:23, 49:12-50:15, 53:8-15 (Ex. 3).

[88] Pecht Decl. Ex. A, at 11.

[89] *Id.* Ex. A, at 11-12.

[90] *Id.*



1    are not as reliable and will have a shorter life span.[91] The load conditions are also likely to diminish

2    the performance of the device.[92]

3         Apple admits that repeated load conditions use up the life of a device, meaning they cannot

4    equal new in reliability. ██████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████[95] Yet every remanufactured device will have

7    components subjected to some level of these same load conditions.[96] ████████████████████

8    ████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████[98] Yet,

11   despite this known degradation of reclaimed components in its remanufactured devices, ████████

12   ████████████████████

13   **F.      Apple gives Plaintiffs remanufactured devices.**

14        Plaintiff Justin Carter purchased an iPhone 6+ on April 16, 2015, for $849.00 and

15   AppleCare+ for $99.00.[99] In July 2016, he called Apple to report the battery issues and it sent him

16   a replacement iPhone 6+ under his AppleCare+ warranty. After using his first replacement device

17   for a few months, Carter continued to have battery issues with his replacement iPhone, which he

18   reported to Apple. Apple sent Carter a second replacement iPhone 6+ on October 28, 2016, under

19   his AppleCare+ warranty. Before using his second replacement iPhone, Carter had the phone

---

[91] *Id.*

[92] *Id.* Ex. A, at 13.

[93] *Id.* Ex. A, at 12.

[94] Fu Dep. 25:17-26:1, 34:3-6, 160:8-162:23 (Ex. 7); Lanigan Dep. 46:6-47:23, 49:12-50:15, 53:8-15 (Ex. 3).

[95] Fu Dep. 25:17-26:1, 34:3-6, 160:8-162:23 (Ex. 7); Lanigan Dep. 46:6-47:23, 49:12-50:15, 53:8-15 (Ex. 3).

[96] Pecht Decl. Ex. A, at 11-12.

[97] Lanigan Dep. 67:6-18, 68:10-69:4 (Ex. 3).

[98] Pecht Decl. Ex. A, at 12.

[99] Carter's facts are set forth in the FAC at ¶¶ 100-121, ECF No. 45.



professionally inspected. Carter's second replacement iPhone6+ was bent, had dented and scratched internal parts and components, including a dented loud speaker. The rear camera on the second replacement iPhone6+ appeared to have been removed for inspection and/or service. The rear camera flex cable had a hand engraved marking on it, resembling a "1." The charging dock flex cable and headphone jack on Carter's second replacement iPhone6+ looked like they had been replaced and/or serviced. Carter briefly used this iPhone but continued to have battery issues. Carter again called Apple and reported he was having ongoing battery issues with his replacement device. Apple sent Carter a third replacement iPhone6+ on November 4, 2016, under his AppleCare+ warranty. Carter once again had the iPhone6+ professionally inspected before opening the box. The third iPhone 6+ had similar issues to the second iPhone6+, in that it was slightly bent and had a few small scratches on the interior of the device. Because the third replacement iPhone6+ did not appear to be new, he returned it to Apple without using it.[100] Carter's first two replacement iPhones were remanufactured.[101]

Plaintiff Vicky Maldonado purchased a fourth generation iPad on September 8, 2013, for $829 and AppleCare+ for $99.[102] On May 8, 2015, Maldonado took her iPad to an Apple store because it was constantly restarting. An Apple employee suggested replacing the iPad under AppleCare+, giving her a replacement iPad. Maldonado continued to have issues with the replacement iPad, as it would restart several times a day. On May 22, 2015, Maldonado took her replacement iPad back to the Apple store. An Apple employee again suggested the replacing the iPad under her AppleCare+, giving her a second replacement iPad. Both of Maldonado's replacement iPads were remanufactured.[103]

---

[100] Apple has since determined that Carter's third replacement iPhone was new. Letter from Purvi Patel, Mar. 22, 2017 (Ex. 12).

[101] *Id.*

[102] Maldonado's facts are set forth in the FAC at ¶¶ 85-99, ECF No. 45.

[103] Letter from Purvi Patel, Mar. 22, 2017 (Ex. 12).

MOTION FOR CLASS CERTIFICATION
Case No. 3:16-cv-04067-WHO
010637-11 1099643 V1
- 14 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. THE PROPOSED CLASS MEETS THE RULE 23 CERTIFICATION REQUIREMENTS

Plaintiffs must demonstrate that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). "Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

Although the Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of plaintiff's underlying claim,' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). So "[m]erits questions may be considered to the extent–but only to the extent– that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (it is inappropriate to "determine whether class members could actually prevail on the merits of their claims").

### A. The Class is identifiable.

The proposed Class definition provides "objective criteria" to identify its members. *See Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *13 (N.D. Cal. Nov. 15, 2017). "While ascertainability may factor into evaluation of a proposed definition of a class, the Ninth Circuit has never adopted an ascertainability requirement." *Id.* (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017)).

The Class is defined as,

> All individuals who purchased AppleCare or AppleCare+, either directly or through the iPhone Upgrade Program, on or after January 1, 2009, and received a remanufactured replacement Device.

This definition is straightforward, requiring only that a consumer purchased AC/AC+ and received a replacement device with used parts, which would be limited to remanufactured devices. Class members are readily ascertainable through Apple's records. █████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████[105]

**B.      The Class meets the Rule 23(a) requirements.**

      **1.      The Class is sufficiently numerous.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████[107]████████████████████████

████████████████████████ Plaintiffs can establish numerosity. *See Wolph*, 272

F.R.D. at 483 (finding one million class members meets numerosity).

      **2.      Plaintiffs' and Class members' claims share common questions of fact and law, satisfying Rule 23(a)(2).**

      Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

"Commonality exists where class members' 'situations share a common issue of law or fact, and

are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v.*

*Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "That

common contention, moreover, must be of such a nature that it is capable of classwide resolution—

which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Rule 23(a)(2) has been

construed permissively. All questions of fact and law need not be common to satisfy the rule. The

existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

---

[104] Apple's Highly Confidential Suppl. Resps., and Objs. to Interrog. Nos. 16-18, at Resp. to Interrog. 16-17, Jan. 30, 2018 (Ex. 13); Apple's Highly Confidential and Restricted Access Suppl. Resps. and Objs. to Interrog. Nos. 19-20, Jan. 30, 2018 (Ex. 14).

[105] Lanigan Dep. 61:10-13 (Ex. 3).

[106] Apple's Highly Confidential Supplemental Resps. and Objs. to Pls.' First Set of Non-Uniform Interrogs. Nos. 16-18 at Resp. to Interrog. 16, Jan. 30, 2018, (Ex. 13). ████████████
████████████████████████████████████████████████

[107] *Id.* at Resp. to Interrog. 18.



1    of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*,

2    150 F.3d 1011, 1019 (9th Cir. 1998).

3           Commonality is satisfied here. Plaintiffs and all Class members purchased AC/AC+ for

4    their iPhones and iPads, Apple promised them all replacement devices "new or equivalent to new

5    in performance and reliability", and they all received remanufactured devices that Plaintiffs claim

6    are not equivalent to new. The common question across all of Plaintiffs' claims is whether Apple's

7    remanufactured devices are equivalent to new in performance or reliability. On the breach of

8    contract claim, common questions include whether remanufactured devices' ███████████████

9    █████████████ establishes those devices are not equivalent to new; whether Apple must

10   employ ███████████████ to assess whether remanufactured devices are equivalent to new; and

11   whether passing Apple's ███████████████████ proves that remanufactured devices are

12   equivalent to new. Plaintiffs' warranty and UCL claims likewise present common questions,

13   including whether Apple's promise to provide equivalent to new devices was a misrepresentation;

14   whether a reasonable consumer would have been deceived by Apple's misrepresentations; and

15   whether Apple's conduct constitutes an unfair or unlawful business practice. The controlling law is

16   also common to the Class because AC/AC+ contracts dictate that "the laws of the State of

17   California govern [AC/AC+] Plans purchased in the United States."[108]

18         **3.      Plaintiffs' claims are typical of the Class's claims, satisfying Rule 23(a)(3).**

19          "'The purpose of the typicality requirement is to assure that the interest of the named

20   representative aligns with the interests of the class.'" *Wolin*, 617 F.3d at 1175 (citation omitted).

21   Plaintiffs' claims "are 'typical' if they are reasonably co-extensive with those of absent class

22   members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*,

23   707 F.3d 1036, 1042 (9th Cir. 2012) (citation omitted). Typicality is readily satisfied in cases like

24

25

26          [108] FAC ¶ 20, ECF No. 45; AppleCare Terms and Conditions (APL-MLDNDO_00001158-66)
       § 11(xii) (Ex. 1); AppleCare+ Terms and Conditions § 11(xiv) (APL-MLDNDO_00000055-65)
27     (Ex. 2). Apple has agreed that, pending a full review of its AC/AC+ contracts, it will not dispute
       the cited language is in all of the AC/AC+ contracts. Plaintiff can produce all copies of AC/AC+ if
28     required by the Court.



1   this one, where all Class members have suffered a "similar injury . . . and that injury is due to the

2   same conduct" of the defendant. *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 522 (N.D. Cal. 2015).

3       Plaintiffs have no individual claims that differ from the Class's claims. Plaintiffs both

4   purchased an AppleCare+ warranty that promises to provide them replacement devices equivalent

5   to new in performance and reliability. Plaintiffs both received remanufactured devices. To prove

6   their devices were not equivalent to new, Plaintiffs will show that Apple uses common,

7   standardized testing procedures and those procedures are insufficient to warrant that

8   remanufactured devices are equivalent to new. Plaintiffs will use ██████████████ to prove

9   their claims, which will show that remanufactured devices ████████████████████████████

10  ██████. Plaintiffs will show that Apple refuses to consider these ████████████████████

11  ████████████████ to ensure their devices are equivalent to new. A reasonable jury could

12  conclude, based on this evidence, that remanufactured devices are not equivalent to new. Like

13  Plaintiffs, all Class members purchased AC/AC+, so they all were made the same promise,

14  received the same legal rights, and are entitled to the same performance under the contract.  They

15  all received the same type of remanufactured device from Apple, which produces those devices to

16  exacting specifications, each designed to be built and tested to meet the same specifications as any

17  other.  Plaintiffs will use the common evidence to prove their claims and the Class's claims.

18  Plaintiffs meet the typicality requirement.

19          **4.      Adequacy of representation is satisfied under Rule 23(a)(4).**

20      Plaintiffs and their counsel meet the adequacy requirements. "To determine whether named

21  plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named

22  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

23  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*,

24  657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). Adequacy depends on an "absence of

25  antagonism" and a "sharing of interest" between class representatives and absentee class members.

26  *Id.* The Plaintiffs' interests, as proposed Class representatives, are aligned with those of the Class,

27  and there are no conflicts or antagonism—they have suffered the same economic loss when they

28  purchased AC/AC+ and were given the same remanufactured replacement devices. Plaintiffs have

MOTION FOR CLASS CERTIFICATION
Case No. 3:16-cv-04067-WHO
010637-11  1099643 V1

- 18 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    also fulfilled their duties to the Class and will continue to fulfill their duties. Both Carter and

2    Maldonado responded to Apple's discovery requests, sat for depositions, and have no interests

3    adverse to the Class. Plaintiffs have adequately prosecuted their cases.

4            Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens Berman has extensive

5    experience in complex and class-action litigation, including consumer-protection class actions,

6    which stem from a full range of deceptive, unfair, and fraudulent business practices.[109]

7    **C.    The Class meets the requirements of Rule 23(b).**

8            **1.    Common questions of law and fact concerning liability predominate
                     over questions affecting only individual Class members.**

9
10   Certification is warranted under Rule 23(b)(3) because "the questions of law or fact

11   common to members of the class predominate over any questions affecting only individual

12   members," and "a class action is superior to other available methods for the fair and efficient"

13   settlement of the controversy. Plaintiffs can meet both factors.

14           "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

15   cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591,

16   623 (1997). Predominance assumes Plaintiffs established commonality and "focuses on the

17   relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

18           "An individual question is one where 'members of a proposed class will need to present

19   evidence that varies from member to member,' while a common question is one where 'the same

20   evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible

21   to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)

22   (citation omitted). "When 'one or more of the central issues in the action are common to the class

23   and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even

24   though other important matters will have to be tried separately, such as damages or some

25   affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted). Common

26   issues predominate here.

27
     _____
28           [109] Firm Resume (Ex. 15).



1

### a.     Breach of contract claim

2         Plaintiffs can prove on a classwide basis that Apple breached its contracts with consumers.

3   "A cause of action for breach of contract requires proof of the following elements: (1) existence of

4   the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and

5   (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d

6   667, 679 (2008), as modified on denial of reh'g (Feb. 5, 2008). Plaintiffs can use common proof to

7   meet all four elements.

8         AC/AC+ warranties constitute contracts between Apple and its customers. Plaintiffs and the

9   Class performed their obligations under the contract by paying Apple for AC/AC+. Apple

10   promised Plaintiffs, and other customers who purchased AC/AC+, that it would provide them with

11   replacement devices that were new or equivalent to new in performance and reliability. Apple

12   breached its contracts by failing to deliver new or equivalent to new replacement devices,

13   specifically by delivering remanufactured devices. Both Carter and Maldonado received

14   remanufactured devices.

15         Plaintiffs will use common evidence to prove Apple breached its contracts by providing

16   remanufactured devices that are not equivalent to new. Using Apple's ▮▮▮▮▮▮ Plaintiffs

17   will prove that Apple's remanufactured iPhones ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮ and remanufactured iPads ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮ [110] Because every class member received a remanufactured device, their device is

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And remanufactured devices can never be

21   equivalent to new because they contain used parts that have been subject to load conditions. [111]

22   Regardless of what Apple claims it does to test these remanufactured devices, they are not

23   equivalent to new. Equivalent is defined as "corresponding or virtually identical especially in effect

24   or function." [112] The ▮▮▮▮▮▮ will show that remanufactured devices are not virtually

25

26         [110] Bardwell Decl. Ex. A, at 8-9.

27         [111] Pecht Decl. Ex. A, at 10-13.

28         [112] Meriam Webster, equivalent, https://www.merriam-webster.com/dictionary/equivalent (last
visited February 25, 2019).

MOTION FOR CLASS CERTIFICATION
Case No. 3:16-cv-04067-WHO
010637-11  1099643 V1                                      - 20 -

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

identical and do not function the same as new devices. These ████████ will establish a beach of

Apple's obligation to provide its customers with devices equivalent to new.

Plaintiffs will also show that, on a classwide basis, Apple did not evaluate whether the

replacement devices they provide to consumers are equivalent to new. Apple does not ████████

████████████████████████████████████████████████████ to ensure

remanufactured devices are equivalent to new.[113] Remanufactured devices must meet only a

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████.[114] Plaintiffs will show that Apple's failure to evaluate the reliability and

performance of their replacement devices is a breach of their AC/AC+ contracts with the Class.

As further common evidence of Apple's breach, Plaintiffs will show that Apple, in

describing AC/AC+ replacement devices, used broader language than that in its Limited Warranty.

In its Limited Warranty, Apple states it will replace a device with one "formed from new and/or

previously used parts that are equivalent to new in performance and reliability."[115] Conversely, in

describing replacements under AC/AC+, Apple promises those devices are "new or equivalent to

new in performance and reliability," omitting any reference to used or refurbished parts, indicating

that AC/AC+ customers would be receiving a superior product, certainly something superior to a

replacement device that would be made of "used" parts.[116] ████████████████████

████████████████████████████████████████████████████

████████████████████[117] A reasonably jury could find that Apple's conduct injured Plaintiffs and

the Class because they did not receive what they were promised under the contract.

---

[113] Fu Dep. 68:2-9, 68:19-70:3, 71:18-23, 71:24-72:16, 93:19-94:2, 106:18-107:14, 110:2-7, 111:1-24, 112:2-25, 164:23-165:4, 165:18-166:5, 166:15-17 (Ex. 7); Lanigan Dep. 109:20-110:2, 119:1-8, 123:11-18, 129:23-130:23, 133:9-22, 134:16-19 (Ex. 3); Pecht Decl. Ex. A.

[114] Fu Dep. 25:17-26:1, 34:3-6, 160:8-162:23 (Ex. 7); Lanigan Dep. 126:7-127:5, 128:8-12, 129:23-130:23, 133:9-25, 134:16-19 (Ex. 3).

[115] FAC ¶ 29; Kras Decl. Ex. A (Apple Limited Warranties).

[116] FAC ¶¶ 38, 52-53; AppleCare Terms and Conditions (APL-MLDNDO_00001158-66) § 3.1 (Ex. 1); AppleCare+ Terms and Conditions (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2).

[117] Lanigan Dep. 24:3-25:16 (Ex. 3).



**b.      Song-Beverly claim**

Plaintiffs will prove on a classwide basis that Apple violated its obligations in the AC/AC+ service contracts as required by the Song-Beverly Consumer Warranty Act. Under the Song-Beverly Act, AC/AC+ are "service contracts," Cal. Civ. Code § 1791(o). As service contracts, AC/AC+ must explain the steps Apple will take to carry out its obligations under the contract. Cal. Civ. Code § 1794.4(c)(6). AC/AC+ sets forth Apple's obligations in promising Plaintiffs and the Class it would replace their devices with ones that are new or equivalent to new in performance and reliability. Plaintiffs and the class were "damaged by [Apple's] failure to comply with any obligation under . . . [the] service contract . . ." Cal. Civ. Code § 1794. By giving Plaintiffs and the Class remanufactured devices, Apple did not comply with the promised obligation.

Plaintiffs will present common evidence—the contracts—to show Apple established specific obligations and failed to comply with those promises. Nowhere in AC/AC+ did Apple explain the steps they would take to ensure that replacement devices were equivalent to new, that the replacement devices would be remanufactured or contain used parts, that ███████████ ███████████████████ and that Apple ███████████████████████████████ [118] Plaintiffs can use common evidence to show Apple did not comply with the terms of AC/AC+.

**c.      Magnuson-Moss Warranty Act claim**

The Magnuson-Moss Warranty Act provides a cause of action for any consumer damaged by the failure of a warrantor or service contractor to comply with a warranty or service contract. 15 U.S.C. § 2302(a)(13). "The substantive elements are the same under the Song-Beverly Act and Magnuson-Moss Act." *Long v. Graco Children's Prod. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *13 (N.D. Cal. Aug. 26, 2013) (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir.2009)) "[D]isposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Id.* (quoting *Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1022

---

[118] AppleCare Terms and Conditions (APL-MLDNDO_00001158-66) § 3.1 (Ex. 1); AppleCare+ Terms and Conditions (APL-MLDNDO_00000055-65) §§ 3.1, 3.2 (Ex. 2).



1    (9th Cir.2008)). Because Plaintiffs have common evidence to prove their Song-Beverly claim, they

2    can establish a violation of the Magnuson-Moss Warranty Act.

3                    **d.      UCL claims**

4          The UCL prohibits "practices which are unlawful, unfair or fraudulent." *Ehret v. Uber*

5    *Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) (quoting *In re Tobacco II Cases*, 207 P.3d

6    20, 29 (Cal. 2009)). "UCL plaintiffs must point to a misrepresentation with particularity and plead

7    that the misrepresentation 'was an immediate cause of the injury-producing conduct, but not

8    necessarily the sole or even the predominant or decisive factor.'" *Pirozzi v. Apple, Inc.*, 966 F.

9    Supp. 2d 909, 920 (N.D. Cal. 2013) (quoting *In re Tobacco II Cases*, 207 P.3d at 39). A UCL

10   violation is shown if "'members of the public are likely to be deceived'" by the misrepresentation.

11   *Ehret,* 148 F. Supp. 3d at 895 (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979,

12   985 (9th Cir. 2015)). "California courts have repeatedly held that relief under the UCL is available

13   without individualized proof of deception, reliance and injury." *Mass. Mut. Life Ins. Co. v. Super.*

14   *Ct.*, 119 Cal. Rptr. 2d 190, 193 (Ct. App. 2002), *as modified on denial of reh'g* (May 29, 2002).

15         If Plaintiffs present evidence that remanufactured devices are not equivalent to new,

16   Apple's promise, made to every Class member, to provide equivalent to new devices is a

17   misrepresentation under the UCL.

18         Plaintiffs can prove, on a classwide basis, a violation of the unfairness prong of the UCL.

19   "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any

20   countervailing benefit to consumers or to competition, and is not an injury the consumers

21   themselves could reasonably have avoided." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D.

22   Cal. 2010) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 118, 129 (Ct. App.2006)).

23   The Court found that Plaintiffs could establish a violation by showing Apple's "challenged

24   business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to

25   consumers[.]'" Order on Motion to Dismiss at 12, ECF. No. 64 (quoting *Herskowitz v. Apple Inc.*,

26   12-cv-02131-LHK, 940 F. Supp. 2d 1131, 1146 (N.D. Cal. 2013) (citations omitted)). Here,

27   Plaintiffs can establish, with classwide evidence, that remanufactured devices are not equivalent to

28   new in performance and reliability. Every class member who received a remanufactured device did

MOTION FOR CLASS CERTIFICATION
Case No. 3:16-cv-04067-WHO
010637-11  1099643 V1

- 23 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    not receive the benefit of the bargain with Apple, which this Court has already determined would

2    constitute substantial harm.[119]

3         Plaintiffs will prove, on a classwide basis, Apple violated the unlawful prong of the UCL as

4    well, with their Magnuson-Moss and Song-Beverly claims. Because Plaintiffs can prove their

5    Magnuson-Moss claims and Song-Beverly claims on a classwide basis, as established above, they

6    can similarly establish their UCL claim under the unlawful prong. Plaintiffs can show that Apple's

7    conduct was unlawful, entitling them to recovery under the UCL.

8              **e.    Plaintiffs can establish a method for calculating damages for the Class.**

9         At the class-certification stage, Plaintiffs need only show that "damages can be determined

10   without excessive difficulty and attributed to their theory of liability . . . ." *Just Film, Inc. v. Buono*,

11   847 F.3d 1108, 1121 (9th Cir. 2017). Plaintiffs have retained Dr. Lance Kaufman, an economist

12   with a Ph.D. in economics, to determine the methodology he would use to calculate classwide

13   damages. Dr. Kaufman could use one of two approaches to calculate damages. Dr. Kaufman, using

14   Apple's own sales data or publicly available data, can calculate the difference between the market

15   values of new devices and remanufactured devices.[120] ███████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████[121] Based on Apple's current pricing, certified refurbished devices sell for fifteen to

18   thirty-three percent discount to new products.[122] Using pricing data for these devices, Dr. Kaufman

19   can calculate the difference between the cost of a new device and a remanufactured device on a

20   classwide basis.[123] Because the retail price difference may vary over time, Dr. Kaufman would

21   calculate the price difference at the time each replacement device was received for all replacement

22   devices received.[124] In support of this methodology, independent research shows that consumers

23

24   ―――――――――――――――
     [119] Order on Motion to Dismiss at 12, March 2, 2017, ECF No. 64.

25   [120] Declaration of Lance Kaufman ("Kaufman Decl.") attaching Expert Report at Ex. A.

26   [121] Lanigan Dep. 23:12-24:7, 24:17-25, 25:9-26:3 (Ex. 3).
     [122] Kaufman Decl. Ex. A, at 6-9.

27   [123] *Id.* Ex. A, at 6.

28   [124] *Id.* Ex. A, at 7.



value remanufactured devices less than new devices, because of their lower perceived reliability.[125]

Dr. Kaufman could also calculate rescission damages—return of the cost of AC/AC+.[126] With more granular data from Apple, including the exact number of AC/AC+ plans sold where a consumer received a remanufactured replacement device, and the model of the covered device, or the cost of each plan, Dr. Kaufman can determine each Class member's actual damages and aggregate damages for the Class.[127]

### 2. A class action is the superior method of adjudication.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). The cost of AC/AC+ is too low to incentivize many class members to litigate their claims individually and supports concentrating the claims in a single forum. This is especially true here given the high cost of marshaling the evidence (expert and otherwise) necessary to litigate the claims at issue, and the disparity in resources between the typical class member and a well-funded, litigation-savvy defendant like Apple. Certification conserves both individual and judicial resources. The extent and nature of any similar litigation—also favors class certification. This is the only class action involving these specific issues. Manageability focuses on whether "the complexities of class action treatment outweigh the benefits of considering common issues in one trial…." *Zinser*, 253 F.3d at 1192 (citation omitted).

Here, Plaintiffs foresee no serious manageability problems and none that, assuming class members could uncover their harm, make millions of individual actions a better alternative. Plaintiffs have satisfied the superiority requirement.

## IV.   CONCLUSION

Plaintiffs respectfully request this Court certify the proposed Class, appoint the named Plaintiffs as class representatives, and appoint their counsel as Class Counsel.

---

[125] *Id.* Ex. A, at 5.

[126] *Id.* Ex. A, at 8-9.

[127] *Id.*



1    DATED:  February 28, 2019           Respectfully submitted by,

2                                                HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                      By:  /s/ Steve W. Berman
                                     Steve W. Berman (*Pro Hac Vice*)

5                                      1301 Second Avenue, Suite 2000
                                     Seattle, WA 98101

6                                      Telephone:  (206) 623-7292
                                     Facsimile:  (206) 623-0594

7                                      Email:  steve@hbsslaw.com

8                                      Shana E. Scarlett (SBN 217895)
                                     HAGENS BERMAN SOBOL SHAPIRO LLP

9                                      715 Hearst Avenue
                                     Berkeley, California 94710

10                                    Telephone:  (510) 725-3000
                                   Facsimile:  (510) 725-3001

11                                    Email:  shanas@hbsslaw.com

12                                    Robert B. Carey (*Pro Hac Vice*)
                                   Michella A. Kras (*Pro Hac Vice*)

13                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                   11 West Jefferson, Suite 1000

14                                    Phoenix, Arizona 85003
                                   Telephone:  (602) 840-5900

15                                    Facsimile:  (602) 840-3012
                                   Email: rob@hbsslaw.com

16                                    michellak@hbsslaw.com

17                                    Renee F. Kennedy *(Pro Hac Vice)*
                                   P.O. Box 2222

18                                    Friendswood, TX 77549
                                   Telephone: (832) 428-1552

19                                    Email: kennedyrk22@gmail.com

20                                    *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

