UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKY MALDONADO, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>APPLE, INC, et al.,<br><br>  Defendants. | Case No. 3:16-cv-04067-WHO<br><br>**ORDER ON CLASS DEFINITION; MOTION TO SEAL**<br><br>Re: Dkt. Nos. 225, 227 |

## INTRODUCTION

The plaintiffs in this class action allege that defendant Apple, Inc., breached its AppleCare and AppleCare+ ("AC/AC+") agreements. Those agreements require that, when Apple provides a consumer with a replacement device, it be new or "equivalent to new." According to the plaintiffs, however, Apple's "remanufactured" or "refurbished" devices are not equivalent to new. I certified a class consisting of those who purchased an AC/AC+ plan within the class period and received a remanufactured replacement device. Class notice is set to go out. When Apple handed over class members' contact information to the claims administrator, it revealed that there is a mismatch in the data. For 1.33 million remanufactured devices (of roughly four million) issued under AC/AC+ plans, the person who received the device cannot be matched to the person who purchased the AC/AC+ plan.

The plaintiffs now move to "clarify" that the purchasers of the AC/AC+ plans associated with these devices are included in the class or, in the alternative, to modify the class definition to reflect that fact. The motion is denied. This clarification or modification cuts against the arguments the plaintiffs made at class certification about why their damages theory was viable. That said, class notice will still be sent to the contact information associated with these 1.33

million devices. As I explain in greater detail, at least some of the owners of the devices are likely to be class members under the unaltered definition because they both purchased an AC/AC+ plan and received a device under it.

## BACKGROUND

The history of this suit is surveyed in several previous orders, including my order granting the plaintiffs' motion for class certification. Order Certifying Class ("Cert. Order") [Dkt. No. 160]. In brief, the plaintiffs allege that Apple breached its AC/AC+ agreements that provide extended warranties and technical support for Apple products beyond the standard warranty and support available. *Id.* 1–2. Under AC/AC+, "when a consumer submits a claim for hardware issues, Apple will either repair the device or replace it with a device that is 'new or equivalent to new in performance and reliability and is functionally equivalent to the original product.'" *Id.* 2 (quoting AC+ Plan). When Apple replaces the device, it provides either a new or a "remanufactured" device. *Id.* The former uses only parts that come directly from vendors while the latter uses "a small quantity of components or parts recovered from the field-returned units." *Id.* (internal citations and quotation marks omitted). In other words, remanufactured devices include parts recovered from other devices. *Id.* 2–3. According to the plaintiffs, these remanufactured devices are not "equivalent to new in performance and reliability."

On September 17, 2019, I granted the plaintiffs' motion to certify a class over Apple's objection. Except for narrowing the class period, I adopted the plaintiffs' proposed class definition as,

> All individuals who purchased AppleCare or AppleCare+, either directly or through the iPhone Upgrade Program, on or after July 20, 2012, and received a remanufactured replacement Device."

*Id.* 24.

Since then, the case has proceeded and I approved a class notice plan on July 7, 2020. *See* Dkt. No. 217. Under that plan, Apple is required to provide contact data for class members in its possession to the claims administrator. *Id.* In August 2020, Apple's counsel informed the plaintiffs' counsel that it had provided this data as part of a dataset for individuals who received approximately 3.96 million replacement devices. *See* Dkt. No. 225-2. But, Apple said, it believed

that, for approximately 1.33 million of those devices, "the unique identification information for the individual who activated the replacement device does not match unique identification information within Apple's database of individuals who purchased AppleCare contracts." *Id.* at 2. The parties have stipulated that class notice will not be sent until this dispute is resolved.

This mismatch arises from the way that Apple replaces devices under AC/AC+. According to Apple, when a customer brings in her device for an exchange, Apple determines whether there is an AC/AC+ contract associated with the *device*, not with the person—it says this is the result of a business decision to err on the side of providing a replacement device. Defendants' Response to Plaintiffs' Motion ("Oppo.") [Dkt. No. 228] 2–4. Consequently, it is possible for someone who did not purchase an AC/AC+ plan to receive and/or activate a device replaced under someone else's AC/AC+ contract. Customers are given "unique ID numbers" and, for these 1.33 million devices, the unique ID number of the AC/AC+ purchaser and the unique ID number of the person who received a replacement device under that contract are different. *Id*.

Apple points to various reasons this mismatch might occur, including if the AC/AC+ purchaser sold, gave away, or lost the device (without transferring the contract) or if the device was stolen. Oppo. 3. The plaintiffs highlight that it might occur for other reasons, including when a parent buys a device with AC/AC+ for a child. Apple also represents that, aside from this mismatch issue, sometimes it was not provided with the AC/AC+ purchaser's identity because the customer declined to give contact information or gave an incorrect email address, or because the AC/AC+ plan was sold through a third-party retailer. Oppo. 3. In those circumstances, Apple says that it cannot know "one way or the other" whether the AC/AC+ purchaser and replacement recipient are the same person. *Id.*

## LEGAL STANDARD

"Even after a [class] certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* FED. R. CIV. P. 23(c)(1)C). "District courts have broad discretion to modify class definitions." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (internal alteration and quotation marks omitted). Because the modified definition serves

3

the same purpose as the original one, the new class definition must meet the requirements of Federal Rule of Civil Procedure 23.

**DISCUSSION**

## I. MOTION TO CLARIFY OR MODIFY CLASS DEFINITION

The plaintiffs request that I "confirm that 'received' [in the class definition] refers to the receipt of a replacement device issued under the contract and pursuant to the contract rights of the contract holder, *regardless of the person to whom the device was delivered or who activated the device*." Plaintiffs' Motion to Clarify or Modify Class Definition [Dkt. No. 225] 2 (emphasis added). In the alternative, they request that I modify the class definition as shown below:

> All individuals who purchased AppleCare or AppleCare+, either directly or through the iPhone Upgrade Program, on or after July 20, 2012, and ~~received~~ **under which Apple provided** a remanufactured replacement Device.

*See Id.* 2–3. Apple maintains that those who "received" replacement devices but did not purchase AC/AC+ were never part of the class. In its view, only AC/AC+ purchasers who received replacement devices are in the class.

### A. The Class Definition Will Not Be Modified or "Clarified"

By its text, the current class definition requires that a class member (1) have purchased AC/AC+; (2) on or after July 20, 2012; and (3) have received a remanufactured replacement device. Removing for a moment the other portions of the definition, the class comprises "[a]ll individuals who purchased [AC/AC+] . . . and received a remanufactured replacement Device." Receipt is, accordingly, tied to the individual who purchased the AC/AC+ plan.

This understanding is consistent with the plaintiffs' motion for class certification. In defending their proposed definition (that, aside from the class period, I adopted), the plaintiffs said, "[t]his definition is straightforward, requiring only that a consumer purchased AC/AC+ *and* received a replacement device with used parts." Plaintiffs' Motion for Class Certification [Dkt. No. 103] 15 (emphasis added). In defending the commonality of their claims, the plaintiffs said all class members "purchased AC/AC+ for their iPhones and iPads, Apple promised them all replacement devices 'new or equivalent to new in performance and reliability', *and they all received remanufactured devices that Plaintiffs claim are not equivalent to new*." *Id.* 17

4

(emphasis added). In defending the typicality of the named plaintiffs' claims, they said, "Plaintiffs have no individual claims that differ from the Class's claims. Plaintiffs both purchased an AppleCare+ warranty that promises to *provide them replacement devices* equivalent to new in performance and reliability. *Plaintiffs both received remanufactured devices*." *Id.* 18 (emphasis added). They also said,

> Like Plaintiffs, all Class members purchased AC/AC+, so they all were made the same promise, received the same legal rights, and are entitled to the same performance under the contract. They all received the same type of remanufactured device from Apple, which produces those devices to exacting specifications, each designed to be built and tested to meet the same specifications as any other.

*Id.* 18. In defending the adequacy of the named plaintiffs, they said, "The Plaintiffs' interests, as proposed Class representatives, are aligned with those of the Class, and there are no conflicts or antagonism—they have suffered the same economic loss *when they purchased AC/AC+ and were given the same remanufactured replacement devices*." *Id.* 18 (emphasis added).

      The arguments that the plaintiffs made about damages at class certification—that Apple and the order certifying the class relied on—cut against the plaintiffs' argument here. The plaintiffs argued that they could sufficiently prove damages based on the difference between what they were owed under the contract and what they received. This modification would remove that requirement.

      The plaintiffs' damages expert argued that damages could be calculated using "the difference between the market values of new devices and remanufactured devices." *Id.* 24. To remedy the problem that market prices would vary over time, the expert calculated the price difference "at the time each replacement device was received for all replacement devices received." *Id.* (emphasis added). Apple attacked that damages methodology. It argued that the plaintiffs' theory of injury was "overpayment" but that measuring price differences as the plaintiffs urged was not tied to that theory. Opposition to the Plaintiffs' Motion for Class Certification [Dkt. No. 112-2] 20–22.

      The plaintiffs' Reply countered that their theory was not overpayment. They instead sought to measure the damages of the alleged breach by taking "the difference between the value

1  of the Device they received and the value of a new Device." Reply in Support of the Plaintiffs'
2  Motion for Class Certification [Dkt. No. 121-2] 12. In other words, the plaintiffs argued that
3  measuring damages based on market value would put them in "as good a position as if" a new or
4  equivalent to new device had been received. They reiterated that their "measure of damages [is]
5  the difference between what they received, a remanufactured device, and what they were
6  promised, a new or equivalent to new device." *Id.* 13. As a result of that, they claimed, this
7  damages measure would "put the Class in the same position if Apple performed as promised." *Id.*
8  They also critiqued Apple's argument and damages expert for attacking only the overpayment
9  theory and failing to address their "claims that they are entitled to a new device based on Apple's
10 promises or to damages equaling the difference between what they received and what they were
11 promised." *Id.*

12  The order on class certification approved this damages model over Apple's objections; the
13 order relied on plaintiffs' representations. For instance, I explained that, "[f]or those [AC/AC+]
14 purchasers who did require replacement devices, they were entitled under the contract to one that
15 met an equivalent-to-new standard." Cert. Order 23–24 (emphasis removed). I found that the
16 plaintiffs' damages model "appropriately measures *the difference* between the value of what
17 plaintiffs were promised—equivalent-to-new devices, as measured by the retail price of new
18 devices—*and what they received*—remanufactured devices, as measured by their retail value." *Id.*
19 (emphasis added).

20  In light of the plaintiffs' previous representations about how their theory of damages was
21 tied to their injury—and the reliance on them—the requirement of receipt cannot be written out of
22 the class definition, as the "clarification" and modification would effectively do.[1]

23  **B. Some Users of the 1.33 Million Devices Are Likely Class Members**

24  My denial of the plaintiffs' new definition does not mean, however, that the purchasers of
25 the AC/AC+ plans connected to these 1.33 million devices are all automatically excluded from the

---

[1] This is true with respect to all of the plaintiffs' arguments, including the new argument in their Reply that the contracting party can recover without receiving a device because the person who received the device was an incidental beneficiary of the contract.

class. The parties agree that those associated with these devices will be sent the class notice and will have the ability to submit claims, provided that they fall within the class definition.

Apple represents that some of the 1.33 million devices were "activated" by people other than the AC/AC+ purchaser. But it seems plausible that a separate person "activating" a device does not necessarily mean that the AC/AC+ purchaser never "received" the device. A parent who purchases an AC/AC+ plan and an iPhone for their child's use, for instance, may receive a replacement device under the plan and turn it over to the child to activate.

Also, Apple represents that some of the 1.33 million devices simply cannot be matched to an AC/AC+ purchaser. If a device recipient is the AC/AC+ purchaser but the data does not currently reflect that, she will be given notice and will just need to show she is an AC/AC+ purchaser and received the device under the plan, as any class member would.

Merely because a non-AC/AC+ purchaser ended up using a device does not mean that the AC/AC+ purchaser is not a class member. Because the class definition is unaltered, someone need only have purchased the plan within the class period and received the device. It is receipt, not subsequent use, that is encapsulated by the class definition.

## II. MOTION TO SEAL

Apple moves to redact information related to its internal AC/AC+ device replacement process. Dkt. No. 227. The motion is DENIED and Apple is ORDERED to file an unredacted version of its brief within 14 days.

Courts "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The public possesses a right to inspect public records, including judicial records. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Accordingly, when a party seeks to seal judicial records connected to motions—such as the one at issue here—that are "more than tangentially related to the underlying cause of action," it "must demonstrate that there are 'compelling reasons' to do so." *Id.* at 1096–99. "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records." *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). This

1  district's local rules require that requests to seal be "narrowly tailored to seek sealing only of
2  sealable material." CIV. L. R. 79-5(b).

3       Apple argues that the information it seeks to seal is "highly confidential" and that it "goes
4  to great lengths to keep this information confidential, including limiting access to those employees
5  who need to know such information, requiring all employees to sign confidentiality agreements,
6  and emphasizing the importance of maintaining confidentiality to all employees." *See* Dkt. No.
7  277; *see also* Declaration of Pami Vyas ("Vyas Decl.") [Dkt. No. 227-1] ¶¶ 7–8. Apple envisions
8  two types of harm that could come from disclosure of its internal AC/AC+ practices: competitive
9  harm and the threat of fraud by those who would take advantage of the way Apple . Vyas Decl. ¶¶
10 5–7.

11      While I understand Apple's desire to keep this information confidential, it is impossible to
12 understand the fundamentals of this Order—and by extension, the scope of the class—without
13 publicly revealing that information (which, in any event, is not particularly unique or surprising).
14 Although I and other courts often seal confidential business information on the basis of
15 competitive or similar harm, this information goes to the heart of this Order. At the very least,
16 potential class members would have difficulty determining whether they were in the class or not if
17 this information were not made public. Moreover, many of the details that Apple wishes to keep
18 confidential could be derived from the information it does reveal in its briefing.

## CONCLUSION

The motion to modify or clarify the class definition is DENIED. Those people associated with these 1.33 million devices will be sent the class notice. As laid out in this order, it is probable that some of them are class members under the class definition that has been approved.

**IT IS SO ORDERED.**

Dated: January 14, 2021

William H. Orrick
United States District Judge