Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
Email: michellak@hbsslaw.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICKY MALDONADO AND JUSTIN CARTER, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., APPLECARE SERVICE COMPANY, INC., AND APPLE CSC, INC.<br><br>Defendants. | No. 3:16-cv-04067-WHO<br><br>Related Case:<br>*English v. Apple Inc. et al.*<br>Case No. 3:14-cc-01619-WHO<br><br>PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT RUSSELL RHINEHART, PH.D.<br><br>Judge: Hon. William H. Orrick<br>Courtroom: 2, 17th Floor<br>Complaint Filed: July 20, 2016<br>Hearing Date: April 7, 2021 |

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

    A.    Dr. Rhinehart's Rebuttal Opinions to Dr. Pecht ......................................2

    B.    Dr. Rhinehart's Rebuttal Opinions to Dr. Bardwell .................................5

    C.    Dr. Rhinehart's Supporting Opinions to Dr. Briant .................................7

III.  ARGUMENT .......................................................................................................8

    A.    Dr. Rhinehart does not have the requisite knowledge, skill, experience, training, or education to offer a rebuttal opinion to Dr. Pecht about reliability and electrical engineering. ........................................................9

    B.    Dr. Rhinehart's opinions about testing are not based on sufficient facts or data, not based on reliable principles and methods, are speculative, and are not helpful to the trier of fact. ........................................................13

    C.    Dr. Rhinehart's opinions about Dr. Bardwell's first expert report are not relevant and should be excluded. ...................................................15

    D.    Dr. Rhinehart's remaining opinions rebutting Dr. Bardwell are not based on sufficient facts or data, not the product of reliable principles and methods reliably applied, and are speculative. ....................................16

    E.    Dr. Rhinehart's opinions to support Dr. Briant are inadmissible because Dr. Rhinehart did not actually review Dr. Briant's test results. .............................18

IV.   CONCLUSION ..................................................................................................18


1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ancho v. Pentek Corp.*,
157 F.3d 512 (7th Cir. 1998)........................................................................................12

*Avila v. Willits Envtl. Remediation Tr.*,
No. C 99-3941 SI, 2008 WL 360858 (N.D. Cal. Feb. 6, 2008), aff'd, 633 F.3d
828 (9th Cir. 2011) ........................................................................................................13

*Cooper Tire & Rubber Co. v. Mendez,*
204 S.W.3d 797 (Tex. 2006) ........................................................................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ............................................................................................8, 9, 17

*Emblaze Ltd. v. Apple Inc.*,
52 F. Supp. 3d 949 (N.D. Cal. 2014)........................................................................8, 13

*In re Ford Tailgate Litig.*,
No. 11-CV-02953-RS, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015)...............................9, 11

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ....................................................................................................17

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999) .........................................................................................12

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018).......................................................................9, 18

*Hynix Semiconductor Inc. v. Rambus Inc.*,
No. CV-00-20905 RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008) ......................................14

*Laux v. Mentor Worldwide*,
LLC, 295 F. Supp. 3d 1094 (C.D. Cal. 2017), aff'd, 786 F. App'x 84
(9th Cir. 2019) ...............................................................................................................11

*Lucido v. Nestle Purina Petcare Co.*,
217 F. Supp. 3d 1098 (N.D. Cal. 2016).......................................................................10

*Perez v. State Farm Mut. Auto. Ins. Co.*,
No. C 06-01962 JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) ........................................16

*Perry v. Brown*,
671 F.3d 1052 (9th Cir. 2012)......................................................................................13



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*Perry v. Schwarzenegger,*
704 F. Supp. 2d 921 (N.D. Cal. 2010)......................................................................................13

*Racies v. Quincy Bioscience, LLC,*
No. 15-CV-00292-HSG, 2016 WL 5725079 (N.D. Cal. Sept. 30, 2016) ...............................8

*In re REMEC Inc. Sec. Litig.,*
702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...............................................................................18

*Richter v. Hickman,*
578 F.3d 944 (9th Cir. 2009) .................................................................................................17

*Salinas v. Amteck of Kentucky, Inc.,*
682 F. Supp. 2d 1022 (N.D. Cal. 2010)..............................................................................9, 11

*Shreve v. Sears, Roebuck & Co.,*
166 F. Supp. 2d 378 (D. Md. 2001)........................................................................................10

*Trumps v. Toastmaster, Inc.,*
969 F. Supp. 247 (S.D.N.Y. 1997) .........................................................................................11

**OTHER AUTHORITIES**

Fed. R. Evid. 702 .........................................................................................................*passim*

Fed. R. Evid. 702(b)–(c)..............................................................................................................13

Federal Rule of Evidence 104 ....................................................................................................8

Rule 26.........................................................................................................................................15



## I.    INTRODUCTION

Plaintiffs move to exclude Defendants' ("Apple") expert Dr. R. Russell Rhinehart under Fed. R. Evid. 702. Apple identified Dr. Rhinehart to offer rebuttal opinions to Plaintiffs' experts, Drs. Michael Pecht and Robert Bardwell, and to bolster the opinions of Apple's expert, Dr. Paul Briant. Dr. Rhinehart, a chemical engineer, is purporting to offer opinion testimony in the very specific and specialized area of reliability engineering, and engineering statistics. Plaintiffs request the Court exclude Dr. Rhinehart's testimony in its entirety because he does not qualify under Federal Rules of Evidence 702. Most of Dr. Rhinehart's opinions are rebuttals to Dr. Pecht, who opines that remanufactured devices with used parts can never be equivalent to new devices in performance and reliability because they have been subject to load or stress conditions. Dr. Rhinehart's rebuttal opinion is that testing is required to prove Dr. Pecht's "theory." But Dr. Rhinehart, who has no training or experience in the relevant field of reliability or electrical engineering, with how load and stress conditions affect electronic devices, or on the testing of electronic devices, is not qualified under Rule 702 to offer expert opinions on the testing and reliability of electronic devices. Dr. Rhinehart's opinions rebutting Dr. Pecht also should be stricken because they do not identify any reliable methods to test the devices (including what those tests would be), nor does he test or review of the available data to form his opinions.

Dr. Rhinehart also offers rebuttal opinions to Dr. Bardwell, a statistician, criticizing how Dr. Bardwell analyzed Apple's return data. Dr. Bardwell opined, after a statistical analysis of Apple's return data, that remanufactured devices are returned at a higher rate than new devices, and those higher return rates are statistically significant. Dr. Rhinehart offers two opinions in rebuttal: (1) Dr. Bardwell has not shown the returns were caused by used parts; and (2) Dr. Bardwell's results are dependent on his choices of data rejection, group combining, and data censoring. But those opinions are irrelevant in part because they seek to rebut opinions Dr. Bardwell offered in his first report (using limited data) that he will not offer at trial and because Dr. Bardwell is only opining that there is a statistically significant correlation. Dr. Briant also admits that for Dr. Bardwell's current report, he did not look at Dr. Bardwell's data, does not understand what Dr. Bardwell did, and does not know if Dr. Bardwell's choices were improper or affected the results.

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1
- 1 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Those opinions are not based on sufficient facts and data, not based on reliably applied principles, and are highly speculative. Last Dr. Rhinehart's offers opinions to support Dr. Briant, specifically that testing a small sample size of devices can provide useful information. But because Dr. Rhinehart did not review Dr. Briant's testing or identify a test that would confirm his conclusions, those opinions are also speculative and not based on sufficient facts or data. Plaintiffs request that the Court exclude all of Dr. Rhinehart's opinions.

## II.    FACTUAL BACKGROUND

### A.    Dr. Rhinehart's Rebuttal Opinions to Dr. Pecht

First, Apple identified Dr. Rhinehart as a rebuttal to Dr. Pecht. Expert Rebuttal Report of R. Russell Rhinehart, Ph.D. ("Rhinehart Rep.") ¶¶ 23–24, 28–64, Mar. 13, 2020 (Ex. 1).[1] Dr. Pecht opines that devices containing used components can never be as reliable as devices containing all new components, because they have been subject to stress (load) conditions. Expert Report of Michael Pecht, Ph.D. ("Pecht Rep.") at 13, Feb. 25, 2019 (Ex. 2). Dr. Pecht explains that load or stress conditions use up the useful life of a part, thus a remanufactured device with used parts can never be equivalent in reliability to a new device. *Id.* at 12. Dr. Rhinehart calls Dr. Pecht's opinions the "load theory." Rhinehart Rep. ¶ 24 (Ex. 1).

Dr. Pecht has a Master's in electrical engineering, both a Master's and Doctorate in engineering mechanics, and is the founder and Director of CALCE Electronic Products and Systems Center at the University of Maryland. Pecht Rep. at 3 (Ex. 2). Dr. Pecht has taught classes on electronics materials, design, manufacture and testing, and reliability and safety for over twenty-five years. *Id.* Dr. Pecht has consulted with over eighty international electronics companies (such as Microsoft, Samsung, and Dell) on electronic design, manufacture and testing, and quality and reliability. *Id.* at 3–4. Dr. Pecht has conducted hundreds of tests and failure analysis of electronics, including cell phones and computers, and has written over 30 books and over 700 articles on subjects related to electronic product design, manufacturing, testing, and reliability.

---

[1] The Exhibit numbers referenced in this Motion refer to the Exhibits attached to the Declaration of Steve Berman in Support of Plaintiffs' Motion to Exclude Defendants' Expert R. Russell Rhinehart, Ph.D.

Pecht Rep. at 4. He has over thirty years of experience in electronics testing and reliability. *Id.* at 3. Dr. Pecht is a Fellow of the Institute of Electrical and Electronics Engineers, Inc. ("IEEE"), the International Microelectronics Packaging Society ("IMAPS"), and the American Society of Mechanical Engineers ("ASME"). *Id.* "These professional societies address electronic materials, components, assemblies and products; electronics design, manufacture and testing; and quality and reliability." *Id.* In making his opinions, Dr. Pecht relies on his education, training, and over thirty years of practical experience.

As a rebuttal to Dr. Pecht, Dr. Rhinehart offers the following opinion:

> [I]t is my opinion that Dr. Pecht's "load theory" requires empirical testing to determine whether it is true for specific devices. It would be difficult, if not impossible, to prove that recovered components are less reliable that new components without testing because of the complexity of the components and devices at issue here.

Rhinehart Rep. ¶ 24 (Ex. 1).

Dr. Rhinehart has a Masters in nuclear engineering and a Doctorate in chemical engineering. *Id.* ¶ 5. Dr. Rhinehart explained nuclear engineering as follows: "The power production of nuclear power plants is one of them. But all of the radiation devices, for instance, x-rays, they come from the nucleus of atoms. And so nuclear engineering would be shaping them, using them, protecting people from the radiation." Deposition of R. Russell Rhinehart ("Rhinehart Dep.") 11:13–18, Nov. 10, 2020 (Ex. 3). His nuclear engineering studies focused on "radiation-induced polymerization using radiation to cause polymers to -- molecules to join together to react together." *Id.* 11:21–25. Dr. Rhinehart described chemical engineering as follows:

> The chemical engineering starts – or encompasses the beginning of getting two molecules to react to make a third molecule, to react with others to make another molecule, purifying the molecules, extracting the molecules from natural sources, shaping the molecules into products. The -- primarily chemical engineering is the let or the gaseous processing of chemicals.

*Id* 10:25–11:7. He studied process control and coal gasification while getting his doctorate in chemical engineering. *Id.* 14:23–15:21. His dissertation "was on coal gasification." *Id.* 16:1–9. "It

HB  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

was on the kinetic mechanisms, the modeling of the gasifier reactor but also on the use of that model for control of the reactor." *Id.* 16:5–9.

Dr. Rhinehart's practical experience is limited to chemical engineering and process controls (using computers to model chemical processes). Dr. Rhinehart worked as an engineer for a company that made basic chemicals, polymers, fibers, and film, such as fibers used in diapers and cigarettes. *Id.* 12:24–14:17. He taught at two universities, teaching classes such as chemical engineering, processing, and computer programming. Rhinehart Rep. App'x. A at 21 (Ex. 1); Rhinehart Dep. 17:9–18 (Ex. 3). He did not teach classes on electrical engineering or reliability. *Id.* His research while teaching was using models for control of chemical processes. *Id.* 16:10–17:18. Dr. Rhinehart admits he is not an electrical engineer or an expert in electrical engineering. *Id.* 20:5–21:7. He has never written papers or performed studies on the performance, reliability, or testing of cell phones or their electrical components. *Id.* 24:11–25:18–20.  He has never been an expert witness. *Id.* 25:21–23. Dr. Rhinehart's current consulting work includes no work for a company that builds or tests cell phones or tablets. *Id.* 21:4–21, 22:22–23:15. Dr. Rhinehart claims his opinions about Dr. Pecht's "load theory" are based on his "experience working with industry leaders," but he admits that the experience he references are his work in "chemistry, . . . device manufacturing industry, [and] pharmaceutical industry." *Id.* 29:2–23. He also admits device manufacturing does not refer to manufacturing cell phones or tablets, but rather a single paper he wrote on the manufacturing of computer chips. *Id.* 23:23–24:10, 29:24–30:3. Dr. Rhinehart's report does not cite a single reliability engineering treatise, paper, or publication supporting his claim that testing is required to prove load theory, but instead cites statistical engineering or general engineering publications.[2] Rhinehart Rep. nn.5–6, 10–14, 17, 28 (Ex. 1). Dr. Rhinehart is unfamiliar with basic reliability standards used by electrical and reliability engineers. Rhinehart Dep. 46:16–24 (Ex. 3).

---

[2] Dr. Rhinehart cites one reliability-engineering book for the principle that root cause analysis is required to prove what caused a particular failure. Rhinehart Rep. n.9 (Ex. 1). But Dr. Pecht is not claiming to know the exact cause of each failure, but is offering an opinion on a how stress conditions affect electronic parts and whether those electronic parts will be as reliable as a new part.

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 4 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Dr. Rhinehart admits that statistical techniques do not disprove the load theory. *Id.* 30:8–19. Rather, Dr. Rhinehart is claiming testing must prove causation or statistical equivalence. Dr. Rhinehart admitted he "was not challenging the concept of load theory," only that load theory *caused* the returns of the remanufactured devices. *Id.* 31:5–11. He claims that testing, such as a designed experiment, retrospective study, or other form of empirical testing, must be done to prove cause and effect. *Id.*; Rhinehart Rep. ¶ 35. He also testified that "[e]quivalence is where you can't see a statistical difference." *Id.* 48:7–18.

Dr. Rhinehart claims Dr. Pecht should have used empirical testing or a retrospective study but could not say what empirical testing or retrospective study was required. *Id.* 31:5–32:23, 33:17–34:3, 62:22–64:11. He rejected the return data as sufficient empirical data to show causation, only correlation. *Id.* 31:5–32:23. But Dr. Rhinehart did not know "what the experimental design would be or what you would measure." *Id.* Dr. Rhinehart admitted that Dr. Bardwell's analysis was a retrospective study, but claimed it did not prove the load theory and admitted he did not know how a retrospective study should have been designed. *Id.* 63:19–64:11. Dr. Rhinehart has also never created a designed experiment for cell phones or smart tablets and does not propose any particular designed experiment for this case. *Id.* 47:3–24.

To support his main opinion about testing, Dr. Rhinehart offers additional opinions about reliability. Dr. Rhinehart claims the "[t]he life of any one component should be far greater than the life of the composite device." Rhinehart Rep. ¶ 40 (Ex. 1). Dr. Rhinehart then admitted he does not know the lifetime or average lifetime of any single part or any device. Rhinehart Dep. 80:17–10 (Ex. 3). He also relies on the bathtub curve to argue that a used part is more reliable than a new part because it eliminates infant mortalities. Rhinehart Rep. ¶¶ 55–60 (Ex. 1). But Dr. Rhinehart admitted he does not use the bathtub curve in chemical engineering or in his work with "reliability." Rhinehart Dep. 90:15–91:9 (Ex. 3). He further admitted he has never used the bathtub curve for electronics. *Id.* 91:24–92:1.

**B.     Dr. Rhinehart's Rebuttal Opinions to Dr. Bardwell**

Second, Dr. Rhinehart is offering rebuttal opinions to Dr. Bardwell. Rhinehart Rep. ¶¶ 25, 65-68 (Ex. 1). Dr. Bardwell provided a report on February 25, 2019, in support of Plaintiffs'

Motion for Class Certification. ECF No. 102-23. That report relied on limited return data from Apple, where Apple grouped its returns into thirteen-week bins. *Id.* Plaintiffs have not identified the opinions made in Dr. Bardwell's February 25, 2019 report as opinions he would offer at trial. Pls.' Expert Discl., Feb. 11, 2020 (Ex. 4). After the class was certified, Apple provided Plaintiffs full return data. Applying statistical modeling to that return data, Dr. Bardwell issued a supplemental report where he found "devices containing used parts have elevated failure rates and shorter lifespans than devices containing new parts." Supplemental Expert Report of Robert A. Bardwell ("Bardwell Suppl. Rep.") at 5–6, Feb. 11, 2020 (Ex. 5).

Dr. Rhinehart primarily offers opinions related to Dr. Bardwell's February 25, 2019 report. Dr. Rhinehart's report does not contain a single citation to Dr. Bardwell's Supplemental Report, only to Dr. Bardwell's original February 25, 2019 report.[3] Rhinehart Rep. nn.31, 45 (Ex. 1). In his Appendix B, he only cites the February 25, 2019 report. *Id.* App'x. B. Dr. Rhinehart criticizes Dr. Bardwell for claiming cause-and-effect between recovered parts and higher failures or lower reliability and opines Dr. Bardwell's "report seems strongly dependent on his choices of data rejection, group combining, and data censoring." *Id.* ¶¶ 65-66.

In his deposition, Dr. Rhinehart stated that he forgot to list Dr. Bardwell's February 11, 2020 supplemental report in his Appendix B, despite it not being cited anywhere else in his report. Rhinehart Dep. 27:11–18 (Ex. 3). When asked where Dr. Bardwell claimed that used parts caused the failure, Dr. Rhinehart cited page 8 of Dr. Bardwell's February 25, 2019 report. *Id.* 66:14–67:1. When asked about his criticism that Dr. Bardwell's "report seems strongly dependent on his choices of data rejection, group combining, and data censoring," he admitted that data rejection and data censoring were referring to Dr. Bardwell's February 25, 2019 report (where Dr. Bardwell had limited return data). *Id.* 115:19–16:21. His criticism about group combining (in both reports) was that Dr. Bardwell grouped models together, such as combining all iPhone 5c models in one

---

[3] Dr. Rhinehart's first citation in his report to Dr. Bardwell is in footnote 31, where he cites the February 25, 2019 report. Rhinehart Rep. ¶ 49 n.31 (Ex. 1). His subsequent citation is the short citation to that same report. Id. ¶ 67 n.45.

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1                                                    - 6 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

group, but he did not know if such a grouping was actually improper or affected Dr. Bardwell's results. *Id.*117:13–24.

After a break in the deposition, Dr. Rhinehart stated that he went back and looked at Dr. Bardwell's supplemental report and identified one instance each of alleged data rejection and data censoring. *Id.* 128:10–14. He claimed that Dr. Bardwell censored the data by treating devices that ██████████████████████████████████████████ *Id.* 128:10–129:8. When pressed on whether Dr. Bardwell treated these censored devices as failures,[4] he conceded that he did not understand what Dr. Bardwell did with this data as far as censoring and has no opinion on whether it affected Dr. Bardwell's results. *Id.* 128:17–130:23. Dr. Rhinehart also could not say how Dr. Bardwell should have treated this censored data differently. *Id.* Dr. Rinehart next identified one instance of data rejection, where Dr. Bardwell stated that he excluded some irregular data, ██████████████████████████████████ *Id.* 130:24–131:13. But again Dr. Rhinehart offers no opinions on what Dr. Bardwell should have done with that data, whether that data exclusion was improper, or if it affected Dr. Bardwell's results. *Id.* 131:14–132:18.

## C.    Dr. Rhinehart's Supporting Opinions to Dr. Briant

Third, Dr. Rhinehart offers opinions to bolster another Apple expert, Dr. Paul Briant, who Apple also identified as a rebuttal expert to Dr. Pecht. Rhinehart Rep. ¶¶ 67–70 (Ex. 1) .Dr. Rhinehart opines that a designed experiment with a small sample size can provide useful information. *Id.* ¶ 69. He states that Dr. Briant's testing of fourteen new and fourteen remanufactured iPhone SEs provides statistically significant results as it relates to performance, but not reliability, citing Dr. Philip Stark. *Id.* ¶ 70. He opines: "Statistical significance is only one indicator of the validity of an experiment. In my opinion, a reliably-done small sample size experiment, such as the reliability testing conducted by Dr. Briant, could provide useful insight into the relationship between two variables, especially in the absence of more robust testing." *Id.*

---

[4] Dr. Bardwell did not treat the censored devices as failures. Bardwell Suppl. Rep. at 7 (Ex. 5).

HB    HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

At his deposition, Dr. Rhinehart admitted that he does not know if Dr. Briant's experiment was properly constructed. Rhinehart Dep. 140:25–141:5 (Ex. 3). He also admitted he did not review the results of Dr. Briant's experiment, nor is he opining that Dr. Briant's sample size is sufficient to yield useful information. *Id.* 141:3–142:9. Dr. Rhinehart also stated that he was not offering any opinions on whether Dr. Briant's testing yielded statistically significant results. *Id.* 142:11–143:6.

### III.    ARGUMENT

To qualify as an expert under Fed. R. Evid. 702, the Court looks at "whether the in expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. "Under *Daubert*, courts consider (1) whether a theory or technique 'can be (and has been) tested;' (2) 'whether the theory or technique has been subjected to peer review and publication;' (3) "the known or potential rate of error;' and (4) whether there is 'general acceptance' of the methodology in the 'relevant scientific community.'" *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 953–54 (N.D. Cal. 2014) (quoting *Daubert*, 509 U.S. at 593–94). "A trial court thus must be sure that its review of expert testimony focuses 'solely on principles and methodology, not on the conclusions that they generate.'" *Id.* at 954 (quoting *Daubert*, 509 U.S. at 595).

"When evaluating qualifications, courts should consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise." *Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2016 WL 5725079, at *3 (N.D. Cal. Sept. 30, 2016) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)). "Because the question of whether a witness is qualified to testify is a preliminary question governed by Federal Rule of Evidence 104, '[i]t is the proponent of the expert who has the burden of proving admissibility' by a preponderance of the evidence." *Id.* at *4 (quoting *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)). "Even the most qualified expert cannot offer any

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 8 -

HB    HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

opinion on any subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, experience, training, or education.'" *In re Ford Tailgate Litig.*, No. 11-CV-02953-RS, 2015 WL 7571772, at *6 (N.D. Cal. Nov. 25, 2015) (quoting Fed. R. Evid. 702). "Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702 & 3 Weinstein & Berger ¶ 702). Testimony that is unhelpful or confusing for the jury should not be admitted. *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 993–94 (N.D. Cal. 2018).

**A. Dr. Rhinehart does not have the requisite knowledge, skill, experience, training, or education to offer a rebuttal opinion to Dr. Pecht about reliability and electrical engineering.**

Dr. Rhinehart is not qualified to offer expertise on the reliability of electronic devices, in this case iPhones and iPads, or whether testing is required to prove the load theory, specifically the opinions he offers in paragraphs 23–24 and 28–64 of his report. Dr. Rhinehart is offered as an expert to rebut the opinions of Dr. Pecht, who has education, training, knowledge, and over thirty years of experience in the field of electrical and reliability engineering. Dr. Rhinehart admits that Dr. Pecht is an expert on how stress or load conditions affect electronic components and devices, specifically how load or stress conditions degrade and reduce the reliability of electronic components. Dr. Rhinehart does not have the knowledge, experience, skill, education, or training to qualify as an expert in the field of electrical and reliability engineering or to discuss how stress or load conditions affect electronic components. *See Salinas v. Amteck of Kentucky, Inc.*, 682 F. Supp. 2d 1022, 1030 (N.D. Cal. 2010) (requiring "professional training or expert qualifications" to offer the expert opinion).

Dr. Rhinehart degrees are in chemical engineering and nuclear engineering and his studies or work in those fields do not relate to electrical or reliability engineering. *See supra* pp. 3–4. Dr. Rhinehart admits he is not an electrical engineer or an expert in electrical engineering. Rhinehart Dep. 20:9–21:3 (Ex. 3). His expert report specifically states he is an expert in engineering mathematical analysis, process control and automation techniques, process control applications,

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

process and product modeling and simulation, chemical process engineering fundamentals, and engineering education. Rhinehart Rep. App'x. A at 1 (Ex. 1). The reliability and testing of electronics is not part of his education and training. *See supra* p. 3. That he is a chemical engineer does not qualify him as an expert on electronics or the reliability of electronics. *See Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1107 (N.D. Cal. 2016) (veterinarian did not have specialized knowledge to offer opinions about the testing of dog food); *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) ("a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering"); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 806–07 (Tex. 2006) (chemical engineer who worked "in molecular biology and biochemistry, but has no specialized expertise in tire chemistry" was not qualified to offer opinion about tire chemistry and design).

Dr. Rhinehart claims that testing is required to prove the load theory, but he has no practical experience with the testing or reliability of electronics such as iPhones and iPads, or their individual components. Dr. Rhinehart's only industry experience was working at a company that manufactured basic chemicals, polymers, fibers, and film, including fibers used in diapers and cigarettes. *See supra* p. 4. He taught courses in chemical engineering and control processes, but none in reliability of electronics or electrical engineering. *Id.* He has also never written a paper on the performance or reliability of cell phones or on the testing of cell phones. *Id.* 24:11–18. He has never written a paper on the reliability of electronic components. *Id.* 24:19–25:2. He has performed no studies on the reliability of electronic components. *Id.* 25:18–20. He admitted that he was not familiar with load theory "the in the context of reliability science." *Id.* 35:14–24. Dr. Rhinehart also admits he has no experience in testing or conducting experiments on load theory. *Id.* 59:25–60:14.

On expertise relevant to this case, all he offers is a weak claim that he is familiar with concepts of reliability and had a chapter in his engineering statistics book on reliability. Rhinehart Dep. 24:19–25:16 (Ex. 3). But Dr. Rhinehart admits that he has performed no studies on the reliability of electronic components. *Id.* 25:18–20. Dr. Rhinehart's is not familiar with reliability standards used by electrical and reliability engineers, such as the JEDEC (Joint Electron Device

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 10 -

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Engineering Counsel) standards. *Id.* 46:16–24. As explained by Dr. Pecht: "JEDEC provides fundamental standards for the electronics reliability engineers. For example, JEDEC's JEP 122G Standard, titled Failure Mechanisms and Models for Semiconductor Devices, provides information on how loading conditions cause degradation to electronic components. JEDEC is widely used and accepted in the engineering and electronics manufacturing realms." Pecht Rep. at 6 n. 1 (Ex. 2). Dr. Rhinehart admitted than other than the mention in Dr. Pecht's report, he is not familiar with JEDEC, nor has he ever reviewed those standards. Rhinehart Dep. 46:16–24 (Ex. 3). Dr. Rhinehart also does not cite any other industry publications to support his "expert" opinion. Dr. Rhinehart is offering opinions outside of his expertise. *See In re Ford Tailgate Litig.*, No. 11-CV-02953-RS, 2015 WL 7571772, at *6 (N.D. Cal. Nov. 25, 2015) (finding a mechanical engineer with expertise on glass could not offer opinions on metal components); *Laux v. Mentor Worldwide*, LLC, 295 F. Supp. 3d 1094, 1100–01 (C.D. Cal. 2017), aff'd, 786 F. App'x 84 (9th Cir. 2019) (chemist whose only experience with microbiology was working alongside a microbiologist not qualified to offer opinions about microbiological organisms); *Salinas v. Amteck of Kentucky, Inc.*, 682 F. Supp. 2d 1022, 1030 (N.D. Cal. 2010) (finding a forensics or workplace safety expert was not qualified to offer expert opinions on warnings).

Apple is trying to pass Dr. Rhinehart as reliability expert when he has no expertise in the reliability of electronic devices. So, while Dr. Rhinehart's "opinions are unquestionably scientific in nature, the science involved [here] is electricity: that mysterious and miraculous force which Dr. Franklin introduced to mankind with his kite, leading to all of electricity's subsequent benefits and hazards to humanity. Scientists who specialize in electricity are called electrical engineers." *Trumps v. Toastmaster, Inc.*, 969 F. Supp. 247, 252 (S.D.N.Y. 1997). Like the proffered mechanical engineer in the *Trumps* case, Dr. Rhinehart's "work experience embraces only a limited involvement with electrical engineering; [] he belongs to no electrical engineering professional societies, has published no articles [] in that field, holds no electrical patents, and was unable to identify any authoritative texts or articles about electrical engineering." *Id.*

Although Dr. Rhinehart is not really opining on statistics, Dr. Rhinehart tries to couch his expertise as relying on "statistical engineering," claiming to apply general statistics principles,

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 11 -

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

while ignoring the underlying electrical and reliability engineering principles. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion"). Instead of addressing equivalence in performance or reliability, he focuses on statistical equivalence, in an effort to argue that testing is required without understanding the underlying science. Rhinehart Dep. 48:7–18 (Ex. 3). But Apple did not promise that replacement devices were "statistically equivalent." Apple promised that all replacement devices were new or equivalent to new in performance and reliability. And Dr. Pecht, who has thirty years of expertise in the reliability of electronics, has explained how stress and load conditions prevent equivalence. Dr. Rhinehart's opinion does not address, let alone undercut, Dr. Pecht. He admitted that he was not challenging the science underlying load theory and was not even familiar with the concept. *Id.* 30:8–19, 35:14–24.

He therefore, to rebut Dr. Pecht, cannot claim testing is required from a general statistical standpoint when he does not qualify as an expert on the facts underlying Dr. Pecht's opinions.

Dr. Rhinehart's opinions are separately excludable because he also goes well beyond statistics, offering opinions about lifespan and reliability of electronic components and devices. *See supra* p. 5. Dr. Rhinehart claims the life of any component should be longer than the life of the device, but admits he does not know the lifespan of either. *See supra* p. 5. He does not have the education, experience, or training that makes him an expert in the lifespan of electronic devices or components. *See supra* pp. 3–5. He relies on an idealized bathtub curve to claim that used parts are more reliable because infant mortalities are eliminated, but he does not know if Apple does anything to eliminate infant mortalities, such as burn-in, and he has never used the bathtub curve in chemical engineering, in his work with reliability, or for electronics. *See supra* p. 5. He does not have the knowledge, training or education to offer opinions on how the bathtub curve should be used in reliability of electronic devices. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 12 -

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

(7th Cir. 1998) (quoting *United States v. Benson*, 941 F.2d 598, 604 (7th Cir.1991)). While Dr. Rhinehart has a background in "science" or "engineering," he has no education, knowledge, training, or experience in reliability or electrical engineering, and more specifically the reliability and testing of electronic devices and components. His understanding of chemicals and statistical engineering are insufficient to offer expert testimony on how load or stress conditions affect electronics or the testing and reliability of iPhones and iPads. Plaintiffs request that the Court exclude Dr. Rhinehart's opinions rebutting Dr. Pecht.

**B.    Dr. Rhinehart's opinions about testing are not based on sufficient facts or data, not based on reliable principles and methods, are speculative, and are not helpful to the trier of fact.**

Dr. Rhinehart's opinions about testing are not admissible under Rule 702. Dr. Rinehart claims testing is required to prove the load theory but offers no principles or methods for the actual testing, cites no literature or publications requiring testing to show stress conditions degrade electronic parts, and cites nothing showing 'general acceptance' of his proposed methodology in the reliability engineering community. *Emblaze Ltd.*, 52 F. Supp. 3d at 953–54. He claims a designed test or retrospective study are appropriate but cannot identify or offer any opinions on what type of retrospective study or designed experiment are appropriate. *See supra* p. 5. He concedes that Dr. Bardwell's analysis was a retrospective study, claims it is insufficient, but then admits he did not look at the return data or even understand what Dr. Bardwell did. *Id.* He offers no reliable principles or methods for conducting a retrospective study with Apple's return data. *Id.* Dr. Rhinehart has never done a designed experiment on electronics and has no opinions on what type of tests would be required to prove the load theory. *Id.* This testimony is not based on sufficient facts and data, presents no reliable principles and methods for testing, and is highly speculative. *See* Fed. R. Evid. 702(b)–(c) (requiring expert testimony to rely on sufficient facts and data and be the product of reliable principles and methods); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 950 (N.D. Cal. 2010), aff'd sub nom. *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012) (expert opinions must be "supported by reliable evidence or methodology"); *Avila v. Willits Envtl. Remediation Tr.*, No. C 99-3941 SI, 2008 WL 360858, at *17–18 (N.D. Cal. Feb. 6, 2008), aff'd,

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 13 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

633 F.3d 828 (9th Cir. 2011) (finding expert opinion that was speculative and based on insufficient data inadmissible.

Dr. Rhinehart has not denied that stress conditions degrade electronic parts and conceded that they likely do, noting that reliability engineering is not his area of expertise. *See supra* pp. 4-5. Instead, he claims testing is required to show causation—that load conditions led to failures or returns. But this misstates Dr. Pecht's testimony. Dr. Pecht never claimed the returns were "caused" by load conditions,[5] only that the load conditions meant remanufactured devices could not be equivalent to new in reliability as Apple promises. Pecht Rep. at 13 (Ex. 2). Dr. Pecht does not have to show causation as long as his expertise "will help the trier of fact to understand the evidence ***or to determine a fact in issue***." Fed. R. Evid. 702 (emphasis added). It is the job of the fact finder to decide whether remanufactured devices are equivalent to new. The jury can look at Dr. Pecht's evidence, along with Dr. Bardwell's evidence showing a statistically significant correlation between used parts and returns, and decide whether Apple breached its contracts. It would not be helpful, and highly confusing, for the jury to be told that Dr. Pecht did not prove causation with testing when that is not the opinion he is offering. The jury can determine, after hearing Dr. Pecht's opinions about loads and Dr. Bardwell's analysis of the return rates, whether they believe the returns were higher for devices using used parts.

Dr. Rhinehart also admitted that his opinions depend on his interpretation of the word "equivalence" to mean statistical equivalence. Rhinehart Dep. 48:7–18 (Ex. 3). But the AppleCare contracts do not say statistical equivalence. Having an expert tell the jury that equivalence means statistical equivalence would inject an irrelevant standard into the case, confuse the jury, and prejudice the plaintiff. *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2008 WL 73689, at *13 (N.D. Cal. Jan. 5, 2008) (finding that testimony that conduct was anticompetitive was highly prejudicial, particular without any underlying foundation or analysis).

---

[5] When asked where Dr. Pecht claimed causation, Dr. Rhinehart referred to page 14 of Dr. Pecht's report, as cited in footnote 31 of his report. Rhinehart Dep. 66:14–67:11(Ex. 3); Rhinehart Rep. n.31 (Ex. 1). Page 14 of Dr. Pecht's report is the last page and it only lists references and previous testimony. Pecht Rep. at 14 (Ex. 2).

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 14 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Dr. Rhinehart is not an expert on electronic devices and he has no basis to offer an interpretation of Apple's contract language. His opinions on testing should be excluded.

**C.     Dr. Rhinehart's opinions about Dr. Bardwell's first expert report are not relevant and should be excluded.**

Dr. Rhinehart's opinions about Dr. Bardwell's initial report, which report was offered to support Plaintiffs class certification motion and based on limited return data, are not relevant and should be excluded. Rhinehart Rep. ¶¶ 25, 65-68 (Ex. 1). In Plaintiffs' February 11, 2020 Rule 26 Expert Disclosure Statement, Plaintiffs identified Dr. Bardwell and stated that he would be offering expert testimony as outlined in his February 11, 2020 report. Pls.' Expert Discl., Feb. 11, 2020 (Ex. 4). Dr. Bardwell will not be testifying about the analysis he did in the February 25, 2019 report, because it was based on incomplete data. Before the Class was certified in this case, Apple provided Plaintiffs with limited return data, and Dr. Bardwell analyzed the first thirteen-week interval. ECF No. 103-3. In his first report, Dr. Bardwell explained that he was limited in how he could analyze returns, because he did not have the actual return data for all devices in the Class. ECF No. *Id.* After the Class was certified, Apple produced the full return data and Dr. Bardwell conducted a new analysis on the full data.

Although Dr. Bardwell will not be testifying about the opinions he made or the analysis he performed in his first report, Dr. Rhinehart offers rebuttal opinions about that report. Dr. Rhinehart opines that Dr. Bardwell cannot show that used parts caused the returns or failures, but Dr. Bardwell never claimed used parts were the cause of the failures. Even in his first report, Dr. Bardwell only states that the return rates ███████████████████████████████████ ████████████████████████████████████████████████████████ ECF No. 103-23.[6] A jury can certainly conclude that when the only difference between the two populations are used parts, that used parts are the reason for the increased failures. And Dr. Rhinehart concedes that Dr. Bardwell's analysis shows a correlation. Rhinehart Rep. ¶ 51 (Ex. 1). Dr. Rhinehart also opines on how Dr. Bardwell treated the limited data in his first report, but again Dr. Bardwell will not be

---

[6] The Court previously ordered this material be sealed. ECF. No. 162.

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1                                          - 15 -

HB  HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

using that data or offering opinions about his analysis of that incomplete data. Dr. Rhinehart is seeking to rebut opinions that Dr. Bardwell will not offer at trial. Rebuttal testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *6 (N.D. Cal. Dec. 7, 2011) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). "Rebuttal testimony must be relevant in order to be admissible, meaning that it must assist the trier of fact in understanding or determining a fact in issue." *Id* (citing *Daubert*, 509 U.S. at 591). Here Dr. Rhinehart is trying to rebut something that has not been identified by Plaintiffs as a subject in this case, making it irrelevant. *Id.*

**D.     Dr. Rhinehart's remaining opinions rebutting Dr. Bardwell are not based on sufficient facts or data, not the product of reliable principles and methods reliably applied, and are speculative.**

Dr. Rhinehart's opinions about Dr. Bardwell's current report are not based on sufficient facts or data, nor are they the product of scientific principles and methods reliably applied. Rhinehart Rep. ¶¶ 25, 65-68 (Ex. 1). Those opinions appear to be an afterthought—he does not mention them in his rebuttal report, and he appears to have formed them during his deposition. Dr. Rhinehart does not analyze the data Dr. Bardwell reviewed, identifies no reliable principles or methods that he would have applied (or applied differently), does not understand what Dr. Bardwell did, and provides no analysis that Dr. Bardwell's choices affected his findings.

First, he claims Dr. Bardwell improperly grouped the devices, but then admits that he does not know if it was improper to group devices with the same name together and he has no understanding of whether the devices have any differences that would require separating them. *See supra* p. 6. As Dr. Rhinehart has no expertise on the underlying devices, he identifies no reliable principles that prevent such a grouping, and does not rely on any analysis of the data to determine whether Dr. Bardwell's choices were improper or affected his results.

Second, he claims Dr. Bardwell treated censored data (                                    ) as failing at the end of the contract date. *See supra* p. 7. This misstates what Dr. Bardwell did, as he did not treat these devices as failing at all. When questioned about whether he understood what Dr. Bardwell did with the censored data, he admitted he did not. He also admitted

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

he did not analyze whether Dr. Bardwell's choices affected his results, and he could not say how Dr. Bardwell should have treated this censored data differently. *Id.*

Third, Dr. Rhinehart claimed that Dr. Bardwell excluded some irregular data but offers no opinion on what Dr. Bardwell should have done with that data, whether that data exclusion was improper, or if it affected Dr. Bardwell's results. *Id.* Dr. Rhinehart also admitted that it can be proper to exclude data from a statistical analysis. Rhinehart Dep. 132:1–133:11 (Ex. 3). Dr. Rhinehart did not even review the return data Apple provided Dr. Bardwell and that Dr. Bardwell used for his analysis. Rhinehart Rep. Appx. B (Ex. 1); Rhinehart Dep. 27:11–21, 118:21–24 (Ex. 3).

He claims that Dr. Bardwell's results are "strongly dependent on his choices of data rejection, group combining, and data censoring"—three general areas of concern in a statistical analysis—but as shown above offers no opinions on whether those choices were improper or affected Dr. Bardwell's results. Dr. Rhinehart also did not base his opinions on a review of the data or Dr. Bardwell's analysis and he did not offer any alternative reliable principles or methods. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Rhinehart's identification of potential statistical issues, without underlying analysis, is too great of a gap.[7] His general understanding of possible issues related to statistical analysis does not overcome his lack of actual analysis. *See Richter v. Hickman*, 578 F.3d 944, 987 (9th Cir. 2009) (cannot base opinions on speculative or conjectural factors). Dr. Rhinehart's opinions are mere speculation, not based on facts and data, and are not reliably applying the principles he identified. They must be excluded.

---

[7] Dr. Rhinehart also states that failure to account for confounding variables defeats correlation. Rhinehart Rep. ¶¶ 67-68 (Ex. 1). But Dr. Rhinehart does not identify any errors in how Dr. Bardwell dealt with confounding variables, nor could he since he admitted he did not review the data or Dr. Bardwell's analysis.

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**E.      Dr. Rhinehart's opinions to support Dr. Briant are inadmissible because Dr. Rhinehart did not actually review Dr. Briant's test results.**

Dr. Rhinehart similarly offers opinions to bolster Dr. Briant's testing of twenty-eight iPhone SEs. Rhinehart Rep. ¶¶ 67-70 (Ex. 1). But those opinions are also not based on sufficient facts or data. Dr. Rhinehart admits he did not look at Dr. Briant's testing, does not know if it created statistically significant results, and does not know if the sample size was sufficient to yield any useful information. Any opinions Dr. Rhinehart has about what Dr. Briant did are not based on any facts or data in this case and are therefore improper. *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1219–20 (S.D. Cal. 2010) (striking testimony that testing was required when expert did not conduct any analysis that such testing was required). It would also be highly speculative, prejudicial, and not helpful to the jury to testify that a small test can offer useful information when he does not know whether the small sample here offered such information. *See id.* (striking opinion that "rests on his subjective belief or unsupported speculation"). Dr. Rhinehart's opinions are nothing more than an improper attempt to vouch for the validity of another expert. *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 993–94 (N.D. Cal. 2018) (striking testimony vouching for another expert because it would unhelpful and confusing to the jury). Dr. Rhinehart's opinions about Dr. Briant must be excluded.

## IV.      CONCLUSION

Plaintiffs request that the Court exclude all of Dr. Rhinehart's opinions.

DATED: January 22, 2021                    Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
     Steve W. Berman (*Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

PLAINTIFFS' MOTION TO EXCLUDE RHINEHART
No. 3:16-cv-04067-WHO
010637-11/1429724 V1

- 18 -

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email:  rob@hbsslaw.com
michellak@hbsslaw.com

Renee F. Kennedy *(Pro Hac Vice)*
P.O. Box 2222
Friendswood, TX 77549
Telephone: (832) 428-1552
Email: kennedyrk22@gmail.com

*Attorneys for Plaintiffs*