Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, AZ  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
Email: michellak@hbsslaw.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICKY MALDONADO AND JUSTIN CARTER, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>APPLE INC., APPLECARE SERVICE COMPANY, INC., AND APPLE CSC, INC.,<br><br>        Defendants. | No. 3:16-cv-04067-WHO<br><br>Related Case:<br>*English v. Apple Inc. et al.*<br>Case No. 3:14-cv-01619-WHO<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Judge:  Hon. William H. Orrick<br>Courtroom:  2, 17th Floor<br>Complaint Filed:  July 20, 2016 |



## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 20, 2021, at 2:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Judge William H. Orrick of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move the Court under Federal Rule of Civil Procedure 23 for an order:

> (1)    Preliminarily approving the proposed class action settlement with Defendants Apple Inc., AppleCare Service Company, Inc., and Apple CSC, Inc. ("Apple"); and
>
> (2)    Approving the manner and form of notice and proposed plan of allocation to Class members.

This Motion is based on this Notice of Motion and unopposed Motion for Preliminary Approval of Class Action Settlement with Apple and Dissemination of Class Notice, the following memorandum of points and authorities, the accompanying settlement agreement, and the pleadings and papers on file in this action.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    PROCEDURAL HISTORY ................................................................................ 1

     A.     Class Certification and Summary Judgment ............................................ 2

     B.     Fact and Expert Discovery ...................................................................... 4

     C.     *Daubert* Motions and Confirmation of Certification .............................. 5

     D.     Mediation ................................................................................................ 7

III.   SUMMARY OF SETTLEMENT TERMS ....................................................... 7

     A.     The Certified Class .................................................................................. 7

     B.     The Settlement Consideration and Release of Claims, Anticipated Class Recovery, and Potential Class Recovery ...................................... 8

     C.     Attorneys' Fees and Costs, Incentive Awards, and Administration Costs ........................................................................................................ 9

     D.     Notice and Implementation of Settlement .............................................. 10

     E.     Plan of Distribution ................................................................................ 12

IV.   ARGUMENT .................................................................................................... 13

     A.     The Standards and Procedure for Preliminary Approval of Class Settlement ............................................................................................... 13

          1.     The settlement with Apple was the result of arm's-length negotiations ................................................................................. 13

          2.     The settlement has no obvious deficiencies. ............................... 14

          3.     The settlement does not provide preferential treatment for segments of the Class or the Class Representatives. ................... 15

              a.     All Class Members will recover a *pro rata* share of the settlement. .................................................................. 16

              b.     The requested service awards for the Class Representatives reflects their efforts on behalf of the Class. ..................................................................... 16

          4.     The settlement with Apple easily falls within the range of possible approval. ..................................................................... 16

     B.     The Class Was Previously Certified Under Rule 23 ............................. 18

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

C.     The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e) .......................................................................... 18

D.     Proposed Schedule for Dissemination of Notice and Final Approval ................................................................................................ 21

V.    CONCLUSION ................................................................................................ 22

MOTION FOR PRELIM. APPROVAL OF SETTLEMENT
No. 3:16-cv-04067-WHO
010637-11/1665955 V1

- ii -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

5

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) .............................................................................................. 15

6

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ......................................................................................... 17

7

8

*In re Apple Inc. Device Performance Litig.,*
    No. 5:18-MD-02827-EJD, 2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) ........................... 17

9

*Bellows v. NCO Fin. Sys. Inc.,*
    No. 3:07-cv-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ......................... 14

10

11

*In re Bluetooth Headset Prods. Liability Litig.,*
    654 F.3d 935 (9th Cir. 2011) ......................................................................................... 14, 15

12

13

*Churchill Vill., LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .............................................................................................. 18

14

15

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ................................................................................................................ 4

16

*In re Ferrero Litig.,*
    583 F. App'x 665 (9th Cir. 2014) ........................................................................................ 14

17

18

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................... 17

19

20

*Gaudin v. Saxon Mortg. Servs., Inc.,*
    No. 11-CV-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ................................ 16

21

*In re Heritage Bond Litig.,*
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................... 14

22

23

*In re Lidoderm Antitrust Litig.,*
    No. 14-MD-02521-WHO, 2018 WL 11293766 (N.D. Cal. May 3, 2018) ............................ 13

24

*In re LinkedIn User Priv. Litig.,*
    309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................ 13

25

26

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .............................................................................................. 17

27

28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 14



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ................................................................ 14, 16

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................ 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................... 16

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .................................................................. 15

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 14

*Rollins v. Dignity Health*,
    336 F.R.D. 456 (N.D. Cal. 2020) ............................................................... 15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 13, 16

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
    No. 15-CV-0224-YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ............................ 13

*Villalpando v. Exel Direct Inc.*,
    No. 3:12-CV-04137-JCS, 2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) ........................ 10

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) .............. 9, 15

*Zepeda v. Paypal, Inc.*,
    No. C 10-1668 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ............................ 16

*In re Zynga Sec. Litig.*,
    No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................ 15

### STATUTES

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ............................................ 11

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................. *passim*

Fed. R. Civ. P. 30(b)(6) ......................................................................... 2, 4



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## I.     INTRODUCTION

Plaintiffs have reached a settlement with the Defendants Apple Inc., AppleCare Service Company, Inc., and Apple CSC, Inc. ("Apple") for $95 million. Decl. of Steve Berman in Support of Plaintiffs' Mot. for Prelim. Approval of Class Action Settlement ("Berman Decl.") ¶ 3 & Ex. A ("Settlement Agreement").

This settlement is the product of arm's length negotiations among experienced counsel well-versed in the facts and law relevant to this case and bears no obvious defects. The settlement constitutes an outstanding result for the Class. The total settlement fund constitutes approximately 13% to 25% of estimated damages according to Plaintiffs' experts[1]—a significant recovery by any measure and well within the range of possible approval. Berman Decl. ¶¶ 12–13.

Accordingly, Plaintiffs respectfully request an order: (1) preliminarily approving the proposed class action settlement with Apple; and (2) approving the manner and form of notice and proposed plan of allocation to Class members.

## II.     PROCEDURAL HISTORY

Apple is a manufacturer and retailer of iPhones and iPads ("devices"). Apple sells a two-year extended warranty called AppleCare or AppleCare+ ("AppleCare"). AppleCare provides that when a device is defective (or needs to be replaced for accidental damage), Apple will "exchange the [device] with a replacement product that is new or equivalent to new in performance and reliability." ECF No. 155 at 2. Replacement devices provided under AppleCare can be either new or remanufactured. *Id.* Remanufactured replacement devices are devices built with a mix of used and new parts. *Id.* at 2–3. The used parts are primarily sourced from devices returned to Apple. *Id.* at 2.

Plaintiffs are purchasers of AppleCare who were given remanufactured replacement devices. *Id.* at 5–6. They represent a class of individuals who similarly purchased AppleCare and received remanufactured replacement devices. *Id.* at 27. Plaintiffs filed an Amended Complaint on

---

[1] Apple maintains that Plaintiffs are not entitled to any damages and its experts would have testified that no damages were appropriate.

November 4, 2016, alleging that Apple breached its AppleCare contracts with Plaintiffs and the class by giving them remanufactured devices that were not "equivalent to new in performance and reliability." ECF No. 45 ¶¶ 130–39. Plaintiffs also allege causes of action for violations of the Song-Beverly Act, Magnusson-Moss, and California's Unfair Claims Practices Act. *Id.* ¶¶ 140–70, 194–201.[2] Apple denied all allegations in the Amended Complaint. ECF Nos. 69–70.

## A.    Class Certification and Summary Judgment

Before class certification, the parties engaged in significant discovery. Both parties issued interrogatories and document requests. Berman Decl. ¶ 6. Apple deposed both named Plaintiffs and Plaintiffs deposed three Apple Rule 30(b)(6) designees. *Id.* ¶ 5. Plaintiffs then moved for class certification on February 25, 2019. ECF No. 102. Plaintiffs presented evidence that they argued showed remanufactured devices are not equivalent to new in performance and reliability at the moment of delivery. *Id.* at 5–10. Plaintiffs' reliability and electrical engineering expert, Dr. Michael Pecht, opined that remanufactured devices can never be equivalent to new in reliability because they contain used parts. ECF No. 103-20 at 13. Dr. Pecht explained that reliability is performance over time. *Id.* at 10. According to Dr. Pecht, electronic parts and products wear out over time—an electronic part begins to degrade once it is manufactured. *Id.* at 10–11. Dr. Pecht opined that load or stress conditions, such as operational wear and tear, thermal changes, humidity, dust, and shock (e.g., dropping), will cause degradation. *Id.* According to Dr. Pecht, these load conditions can cause damage to parts and components, which may not be seen by the naked eye or by normal functional or performance testing, but they will reduce the life span of the product. *Id.*

Plaintiffs presented a second expert, Dr. Robert Bardwell, a statistician who reviewed Apple's grouped return data. ECF No. 103-23. He opined that he had determined in the first thirteen weeks that remanufactured replacement iPhones are 2.3 times more likely to fail than new replacement iPhones and remanufactured iPad replacements are 1.7 times more likely to fail than new iPhone replacements. *Id.* at 4. He opined that his results were statistically significant at an

---

[2] Defendants filed a motion to dismiss on December 19, 2016. ECF No. 50. The Court dismissed Plaintiffs' CLRA claim, False Advertising Claim, and the fraudulent prong of their UCL claim. ECF No. 64 at 9–11.



extreme level. *Id.* at 9. Dr. Bardwell stated he could do a more robust analysis with Apple's full return data. *Id.*at 16–17.

Plaintiffs also offered Dr. Lance Kaufman, an economist, as their damages expert. ECF No. 103-25. Dr. Kaufman stated he would measure the benefit of the bargain by calculating the difference between what was promised, a new device, and what was received, a remanufactured device. *Id.* at 6–7, 9. Apple sells certified refurbished devices, which are the same remanufactured replacement devices. ECF No. 102 at 4. Dr. Kaufman stated that he would calculate the difference between the price of a new device and the price of a certified refurbished device, on the date of replacement. ECF No. 103-25 at 6–7, 9.

In response, Apple argued (among other things) that the class was overly broad because it included devices that were never returned or experienced an issue with their replacement, remanufactured devices were equivalent because they undergo the same performance and reliability testing as new devices, and Plaintiffs improperly relied on return data, which do not equate to failures. ECF No. 113 at 8–20. Apple also argued (among other things) that damages should measure the diminished value of AppleCare—the amount Plaintiffs overpaid for AppleCare. *Id.* at 20–21. Apple identified three experts to rebut Plaintiffs' experts. ECF Nos. 113-18, 113-20, 113-22. All six experts were deposed during the course of class certification briefing. Berman Decl. ¶ 7.

At the same time, Apple moved for summary judgment on Plaintiffs' individual claims. ECF No. 111. Apple argued (among other things) that "equivalent to new" did not mean new and Plaintiffs could not show that their reported issues were caused by used parts. *Id.* at 8, 11. Apple also argued Plaintiffs' devices met the same quality standards as new devices and return rates could not be used as a substitute for Plaintiffs' own device failures. *Id.* at 12–13. Plaintiffs opposed summary judgment, citing much of the same evidence and arguments on liability in their Motion for Class Certification. ECF No. 130.

On September 16, 2019, this Court denied Apple's summary judgment motion and granted class certification. ECF No. 155. The Court found both commonality and predominance because "plaintiffs' injury occurred when they filed a claim under AC/AC+ and received a device that was

HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   not 'equivalent to new in performance and reliability' because of load conditions or shorter

2   lifespan. This injury occurred regardless of whether an individual experienced a problem with the

3   device." *Id.* at 19 (citing *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019)). The

4   Court found a jury could credit the testimony of Drs. Pecht and Bardwell and determine Plaintiffs

5   and the class's devices were not equivalent to new in performance and reliability. *Id.* at 10–11, 16–

6   17. The Court held: "If a fact finder credits plaintiffs' theory, then all individuals who received a

7   remanufactured replacement device were injured." *Id.* The Court also found the class was

8   sufficiently numerous, Plaintiffs were typical, having purchased AppleCare and received

9   remanufactured replacements, Plaintiffs were adequate class representatives, and Hagens Berman

10  had extensive experience litigating consumer class actions. Last, the Court found that Plaintiffs'

11  proposed damages met the requirements of *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013),

12  because it was tethered to their theory of liability. *Id.* at 23.

13          The Court certified the following Class: "All individuals who purchased AppleCare or

14  AppleCare+, either directly or through the iPhone Upgrade Program, on or after July 20, 2012, and

15  received a remanufactured replacement Device." *Id.* at 27. It also appointed Plaintiffs Maldonado

16  and Carter as Class Representatives and appointed Hagens Berman as Class Counsel. ECF No. 155

17  at 27.

18  **B.      Fact and Expert Discovery**

19          After certification, the parties completed fact discovery. In total, Plaintiffs issued and Apple

20  answered 25 interrogatories, 92 requests for production, and 159 requests for admission. Berman

21  Decl. ¶ 6. Apple issued and Plaintiff Carter responded to 12 interrogatories, 19 requests for

22  production, and 8 requests for admission. *Id.* Apple issued and Plaintiff Maldonado responded to

23  13 interrogatories and 20 requests for production. *Id.* Apple produced and Plaintiffs reviewed over

24  30,000 documents, consisting of approximately 230,000 pages. *Id.* ¶ 8. Plaintiffs deposed two

25  additional Rule 30(b)(6) designees and three fact witnesses.  *Id.* ¶ 5. Apple deposed one additional

26  fact witness. *Id.*

27          The parties engaged in complete expert discovery. Plaintiffs identified five experts on the

28  merits and an additional rebuttal expert. *Id.* ¶ 9. Plaintiffs again identified Drs. Pecht, Bardwell,

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and Kaufman. *Id.* Dr. Pecht's opinions remained unchanged. *Id.* ¶ 10. Dr. Bardwell, with Apple's full return data, opined that he was able to determine that remanufactured replacement iPhones are 3.2 times more likely to fail than new replacement iPhones and remanufactured replacement iPads are 7 times more likely to fail than new iPad replacements, and these higher failure rates are statistically significant at an extreme level. *Id.* ¶ 11. He also opined that he determined that over four years, remanufactured iPhones have 23.4 fewer weeks of life than new iPhones and remanufactured iPads have 18.5 fewer weeks than a new iPad. *Id.*

Dr. Kaufman opined that he measured the retail price difference between new and remanufactured devices, calculating damages of $754,893,730. *Id.* ¶ 12. Plaintiffs also retained damage experts Stephen Gaskin and Colin Weir. *Id.* ¶ 13. Mr. Gaskin, with the input of Mr. Weir, conducted a conjoint survey to assess the differences in value between new and remanufactured devices. *Id.* Mr. Gaskin opined that his survey showed a 15.7% difference in value for iPhones and 14.1% difference in value for iPads. Using these numbers, Mr. Weir calculated damages of $386,106,741. *Id.* Drs. Pecht and Bardwell also issued rebuttal reports and Plaintiffs identified Dr. Abhijit Dasgupta, a reliability engineer, as a rebuttal expert to the testing performed by one of Apple's experts. *Id.* ¶ 14.

Apple identified three merits experts and seven rebuttal experts. *Id.* ¶ 15. Apple did not use any of the three experts it identified for class certification, but instead identified ten new experts in total. *Id.* Apple's merits experts included a reliability engineer, a survey expert, and an environmental expert. *Id.* Apple identified seven rebuttal experts to rebut each of Plaintiffs' experts, including two engineers, a statistician, two survey experts, and two damages experts. *Id.* Apple's experts opined that damages were inappropriate. *Id.* Plaintiffs deposed nine of Apple's ten experts and Apple deposed all six of Plaintiffs' experts. *Id.* ¶ 16.

### C.   ***Daubert* Motions and Confirmation of Certification**

After expert discovery was complete, Apple filed *Daubert* motions to exclude all five of Plaintiffs' merits experts, and Plaintiffs filed *Daubert* motions to exclude two of Apple's rebuttal experts in full and two in part. ECF Nos. 240–243, 247–250. Apple also filed a Motion to Decertify the Class. ECF No. 239. In that motion to decertify, Apple argued that Plaintiffs failed to prove all

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   Class members were injured, because (among other things) they failed to conduct empirical testing

2   showing "whether load conditions caused any actual specific effects on class devices," Plaintiffs

3   could not distinguish between benign and harmful effect of load without testing, and return rates

4   did not show that all remanufactured devices were inferior. *Id.* at 17–21. Apple also argued that a

5   significant portion of the Class was not harmed because 87% of Class members did not return their

6   remanufactured devices, 6.1% of Class members had a used part combination with statistically

7   significantly lower return rates, survey evidence proved that Class members prefer remanufactured

8   devices, and some Class members eventually received a new device when they returned a defective

9   remanufactured device. *Id.* at 22–24. Last, Apple argued that the Class could not pursue UCL and

10  Song-Beverly Claims on a nationwide basis. *Id.* at 24–25.

11      In response, Plaintiffs argued there was no change in circumstances requiring

12  decertification. ECF No. 273 at 2–10. Plaintiffs countered that their evidence on the effect of load

13  conditions on remanufactured devices remained unchanged, that any load conditions reduce the

14  reliability of the device as a matter of physics, and testing was not required to prove the load

15  theory. *Id.* at 12–14. Plaintiffs argued that Apple had presented no evidence that there were

16  remanufactured devices within the Class with benign loads that would defeat certification. *Id.* at

17  15. Plaintiffs also argued that their reliance on return data remained the same, but a jury could still

18  rely on load theory for those devices and there was no evidence that Class members preferred used

19  parts. *Id.* at 18–23. Last, Plaintiffs argued that the California law claims were encompassed in the

20  choice-of-law clause in the AppleCare contracts. *Id.* at 25.

21      This Court denied Apple's decertification motion, denied all of Apple's *Daubert* motions,

22  granted two of Plaintiffs' *Daubert* motions, denied two of Plaintiffs' *Daubert* motions, and found

23  all the remaining expert testimony for both parties were "fit for trial." ECF No. 304 at 1–2, 5.

24  Following the Court's rulings on the *Daubert* motions, Apple still had rebuttal experts to counter

25  each of Plaintiffs' experts. Berman Decl. ¶ 17. The Court determined that many of the issues raised

26  by Apple were "for the merits," that Plaintiffs' theory of liability had an "important weakness," and

27  that it would "be left to a jury to determine whether the plaintiffs or Apple are correct about what

28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the evidence actually proves." ECF No. 304 at 1, 7–8. After the Court issued its order, the parties

began preparing for trial, which was set to begin on August 16, 2021. Berman Decl. ¶ 18.

**D.      Mediation**

The parties engaged in two mediations before the Class was certified with retired Justice

Edward A. Panelli, one on October 29, 2018, and one on March 13, 2019. *Id.* ¶ 19. Both mediations

were unsuccessful. *Id.* On April 22, 2020, after the Class was certified, the parties engaged in a

third mediation with Chief Magistrate Judge Joseph C. Spero. *Id.* ¶ 20. That mediation was also

unsuccessful. *Id.* After the Court issued its order denying Apple's decertification motion, Judge

Spero ordered the parties to engage in another settlement session. *Id.* ¶ 21. On June 30, 2021, the

parties held a mediation with retired Judge Rebecca Westerfield. *Id.* After a full day of mediation,

the parties agreed to the settle the case for an all-in common fund of $95 million. *Id.* The parties

executed a Memorandum of Understanding that same day. *Id.*

## III.     SUMMARY OF SETTLEMENT TERMS

**A.      The Certified Class**

The settlement encompasses the Certified Class, which the court defined as:

> All individuals who purchased AppleCare or AppleCare+, either directly or
> through the iPhone Upgrade Program, on or after July 20, 2012, and
> received a remanufactured replacement Device.

"Class Member" means any person or entity that falls within the definition of the "Certified Class"

and who did not previously elect to be excluded, or any Class Member receiving notice for the first

time, who does not timely and validly elect to be excluded from the Certified Class. The Class

period cutoff date is September 30, 2021, the execution date of the Settlement Agreement. Berman

Decl. Ex. A ¶¶ 6, 14.



1

2

**B.      The Settlement Consideration and Release of Claims, Anticipated Class Recovery, and Potential Class Recovery**

The settlement releases all Defendants from all claims based on the facts alleged in the complaint, as previously certified by this Court in exchange for a common fund of $95,000,000.[3] Those claims include breach of contract and violations of the Song-Beverly Act, the Magnusson-Moss Act, and the UCL. In making this settlement, Class Counsel considered the risks of going to trial, including the possibility that a trial could result in a smaller or zero recovery for the Class, the time and resources that would be expended by both parties and the Court, and the possibility of delay caused by any appeal if Plaintiffs did prevail.

If Plaintiffs had prevailed on their breach of contract claim, the total settlement fund amount represents approximately 13% to 25% of estimated damages according to Plaintiffs' experts.[4] Plaintiffs are not entitled to additional damages under their other claims, but Plaintiff argued that they could have sought a civil penalty under the Song-Beverly Act of up to two times the amount of damages subject to a showing of willfulness on Apple's part. Plaintiffs assert that the award of such a penalty would have been at the discretion of the jury.

It is anticipated that the Certified Class will recover a total amount of between $63,434,000 and $68,184,000, once administrative costs, incentive awards, and attorneys' fees[5] and costs have been deducted, as shown below. While recovery at trial could have been higher, it also could have been much lower or zero. Also, Class Counsel would have sought administrative costs, incentive awards, and attorneys' fees and costs out of any trial recovery. And those incentive awards and attorneys' fees and costs would have increased significantly because of the additional time, effort, and costs that would be expended at trial.

---

[3] Attached as Exhibit B to the Berman Declaration is a chart showing past comparable settlements of Class Counsel, as required by Northern District's Procedural Guidance for Class Action Settlements.

[4] Plaintiffs' experts measured damages ranging from $386,106,741 to $754,893,730. Apple claimed that Plaintiffs were not injured and were not entitled to any damages.

[5] These estimates are based on an attorneys' fees request of between 25–30% of the Settlement Fund.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**C.      Attorneys' Fees and Costs, Incentive Awards, and Administration Costs**

Class Counsel will request that the costs of notice and distribution, attorneys' fees and costs, and service awards for the two Class Representatives be taken out of the settlement fund.

The estimated costs of notice and distribution are $1,663,688. Declaration of Cameron Azari ("Azari Decl.") ¶ 17. The costs of administration will be taken out of the settlement fund.

Through September 24, 2021, Plaintiffs have advanced costs of $1,374,835.64, which includes $1,128,798.78 in expert fees. Berman Decl. ¶ 22. Plaintiffs have also expended approximately $6,823,841.80 in attorneys' fees in this litigation, which is based on 11,775.9 hours expended. *Id.* Plaintiffs will assuredly expend significant additional attorney resources between now and the final approval hearing (and likely thereafter for class member support).

While the benchmark for fees in the Ninth Circuit is 25%, when awarding fees under a common fund, courts generally start with the 25% benchmark and adjust upward or downward depending on:

> (1)      The extent to which class counsel achieved exceptional results for the class;
>
> (2)      Whether the case was risky for class counsel;
>
> (3)      Whether counsel's performance generated benefits beyond the cash fund;
>
> (4)      The market rate for the particular field of law (in some circumstances);
>
> (5)      The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and
>
> (6)      Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015)). Class Counsel's work and success in this case merits an upward adjustment of up to 30% and Class Counsel believe that any lodestar cross-check will support Plaintiffs' requested adjustment. Despite taking over the case in a precarious posture, Class Counsel's skill and effort produced an extraordinary result against an aggressive, top-tier defense. Accordingly, Plaintiffs intend to request attorneys' fees between 25-30% of the total settlement fund of $95 million, as well as their costs. Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for

**HB  HAGENS BERMAN**

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

attorneys' fees. Apple reserves its rights to oppose any request for attorneys' fees and costs that exceeds 25% of the settlement fund.

For service awards, Class Counsel will also seek an award of $15,000 for the Class Representative Vicky Maldonado, and $12,500 for Class Representative Justin Carter, totaling $27,500, out of the settlement fund.[6] In determining whether a service award is fair, courts look at "(1) the amount of time and effort spent by the class representatives on the litigation; (2) the degree to which the class representatives' efforts benefitted the class; (3) the personal difficulties encountered by the class representatives; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representatives as a result of the litigation; and (6) the risk to the class representative in commencing suit, both financial and otherwise." *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7785852, at *1 (N.D. Cal. Dec. 9, 2016) (approving a service award of $15,000). Both Class Representatives have been actively involved in this litigation and without their willingness to come forward and prosecute the action, the Class Members would have received nothing for their injuries. Class Representatives assisted Class Counsel in investigating and prosecuting this action, responded to detailed interrogatories, searched for and produced documents responsive to document requests on multiple occasions, answered requests for admission, and traveled to San Francisco and sat for depositions. Berman Decl. ¶ 23. Class Representatives also persisted with this litigation for almost five years, with Ms. Maldonado acting longer, since the inception of the lawsuit, justifying a slightly higher award. Given their efforts, awards of $15,000 and $12,500, respectively, are reasonable.

**D.      Notice and Implementation of Settlement**

Plaintiffs have attached hereto proposed Settlement Class Notices and propose the following plan for the dissemination of those Notices. Azari Decl. ¶ 4. Plaintiffs propose using the same notice method after the Class was certified and propose using the same notice administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") along with Epiq's Notice business unit,

---

[6] Apple reserves its rights to oppose any incentive awards that exceed $7,500 per class representative.



Hilsoft Notifications ("Hilsoft"). When the Court certified the Class, Class Counsel sent a request for proposal to five reputable notice and claims administrators requesting proposed notice plans and costs estimates. Each of the five potential notice administrators proposed a notice program relying on direct email notice to reach the Class Members. After this competitive bidding process, Class Counsel—following discussion with Defendants and the approval of the Court—selected Epiq and worked with them to prepare the notice and dissemination plan. Because Class Counsel already went through the bidding process and Epiq has already proven capable of disseminating notice to the Class, a second bidding process is not necessary. Other than the Class Notice in this case, Class Counsel has worked with Epiq nine times over the last two years.

Apple will provide to Epiq the names, addresses, and email addresses for all members of the Certified Class, in substantially the same form and using substantially the same methods as it did as part of the Class Notice program. Using that data, Epiq will again direct notice by email. The proposed form of Email Notice is Attachment 1 to the Azari Declaration. For all Certified Class members for whom a facially valid email address does not exist, but a physical address does, a standard 4" by 6" Postcard Notice will be mailed. The proposed form of Postcard Notice is Attachment 3 to the Azari Declaration. Based on the prior Class Notice, Epiq anticipates that 90% of the Certified Class can be noticed by email or by US mail. Azari Decl. ¶ 19. Additional details on the notice plan are set forth in Section IV(D) below.

The settlement website shall also include an Application for Inclusion in the Class that may be submitted by individuals who believe themselves to be members of the Certified Class, but who have not received email or mail notice. Epic will work with Apple to attempt to determine whether those individuals are members of the Certified Class, and Apple will coordinate with Epic in those verification efforts in accordance with its obligations as set out in the Settlement Agreement. Berman Decl. Ex. A ¶ 56.

Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* Apple will provide the required notice under that statute no later than ten days after the filing of this Motion. The cost of notice will be paid out of the settlement fund, which Epiq estimates will cost $3,515, which amount is included in the estimated costs of administration above.

MOTION FOR PRELIM. APPROVAL OF SETTLEMENT
No. 3:16-cv-04067-WHO
010637-11/1665955 V1
- 11 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**E.      Plan of Distribution**

Plaintiffs propose using direct payments to distribute funds to the Certified Class, with the Settlement fund being divided equally among the Class members based on the number of remanufactured replacement devices they received. Each Class member will receive an equal amount per remanufactured replacement device that is within the scope of the Certified Class. Along with the Class contact data, Apple will provide data sufficient to identify the number of remanufactured replacement devices within the scope of the Certified Class it issued to each Class member.

The parties engaged in private dispute resolution on how to allocate the Settlement funds with retired Judge Daniel Weinstein. The proposed distribution reflects that the most equitable way of diving the fund is to treat the claims equally, and that such a distribution "corresponds to the liability theory and the predominate class claims asserted." This proposed allocation takes into account both parties' proposed arguments and theories regarding damages, accepts that all Class members were alleging the same harm, and recognizes that the recovery for each Class member will be relatively low regardless of how damages are allocated. Given these considerations, Plaintiffs adopt Judge Weinstein's recommendations as fair, adequate, and reasonable.

After the Settlement receives Final Approval, an email will be sent to Class members. The email will provide Class members with the option to select to receive their payment as a Digital Visa/MasterCard or as an ACH deposit into their bank account, as described in the Settlement Agreement. Berman Decl. Ex. A ¶ 49. Class Members can also elect to receive checks, as described in the Settlement Agreement. *Id.*

If there are unclaimed funds, the parties agree to meet and confer on whether to do a second distribution to the Class or to distribute those funds to a *cy pres* recipient. The parties also agree to meet and confer on the identity of the *cy pres* recipient. If the parties cannot agree on either or both issues, they have agreed to submit their dispute to private dispute resolution. Any proposed subsequent distribution, either to the Class or to a *cy pres* recipient, will then be submitted to the Court for approval. The Parties agreed in the Settlement Agreement that there will be no reversion of unclaimed funds to Apple. *Id.* ¶ 51.

**HB  HAGENS BERMAN**
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## IV.    ARGUMENT

2

### A.    The Standards and Procedure for Preliminary Approval of Class Settlement

3

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

4

settlement of class action claims. "Preliminary approval is not a dispositive assessment of the

5

fairness of the proposed settlement, but rather determines whether it falls within the 'range of

6

reasonableness.'" *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 11293766,

7

at *2 (N.D. Cal. May 3, 2018) (citation omitted). Preliminary approval "establishes an 'initial

8

presumption' of fairness, such that notice may be given to the class and the class may have a 'full

9

and fair opportunity to consider the proposed [settlement] and develop a response.'" *Id.* (quoting *In*

10

*re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* Manual for

11

Complex Litigation (Fourth) § 21.631 (2015).

12

Preliminary approval of a settlement and notice to the proposed class is appropriate if: "(1)

13

the proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

14

(2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class

15

representatives or segments of the class, and (4) falls with[in] the range of possible approval."[7] *The*

16

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at

17

*11 (N.D. Cal. Jan. 25, 2016); *see also Tableware*, 484 F. Supp. 2d at 1079 (same). "[T]he decision

18

to approve or reject a settlement is committed to the sound discretion of the trial judge because he

19

is exposed to the litigants and their strategies, positions, and proof." *In re LinkedIn User Priv.*

20

*Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

21

1026 (9th Cir.1998)). This settlement meets all of the requirements for preliminary approval.

22

### 1.    The settlement with Apple was the result of arm's-length negotiations.

23

Weighing in favor of preliminary approval, the settlement arises out of informed, arm's-

24

length negotiations among counsel for the parties. The parties reached agreement on the eve of

25

trial, after conducting all fact and expert discovery, after the Court heard and decided all

26

27

[7] Certain changes to Rule 23 went into effect on December 1, 2018. These changes codify what
is already the standard in the Ninth Circuit, and as shown in the text, that standard is met.

28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   dispositive and expert motions, after the Class had been certified, and after multiple mediations.

2   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock

3   in the product of an arms-length, non-collusive, negotiated resolution."). It is also significant that

4   the settlements were negotiated by experienced counsel with extensive experience and success in

5   large consumer class actions. Berman Decl. ¶ 24; *see In re Heritage Bond Litig.*, No. 02-ML-1475

6   DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced

7   counsel carries significant weight in the court's determination of the reasonableness of the

8   settlement." (citation omitted)); *Noll v. eBay*, Inc., 309 F.R.D. 593, 608 (N.D. Cal. 2015) (counsel's

9   belief that settlement "is in the best interests of the class," given the substantial expense and

10  uncertainty of a trial on the merits, weighs in favor of approval). Class Counsel has worked on this

11  case for more than four years and understands the risks and upside to this type of litigation

12  generally, as well as in this case specifically. Class Counsel is aware of the risks and additional

13  expense of a lengthy trial. Similarly during this litigation, Apple has engaged experienced law

14  firms and understands the risks and expense of such a trial. Counsel's judgment that this settlement

15  is fair and reasonable is entitled to significant weight. *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

16  *Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of

17  counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation

18  omitted); *accord Bellows v. NCO Fin. Sys. Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at

19  *6-7 (S.D. Cal. Dec. 10, 2008). The settlement was also reached after the Class had been certified

20  and withstood decertification, which ameliorates concerns that the settlement was collusive. *In re*

21  *Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014). This settlement is entitled to a presumption

22  of fairness.

### 2.   The settlement has no obvious deficiencies.

24      There are no obvious deficiencies in the proposed settlement. In its opinion in *In re*

25  *Bluetooth Headset Prods. Liability Litig.*, the Ninth Circuit pointed to three factors as troubling

26  signs of a potential disregard for the class's interests during the course of negotiation: (1) when

27  class "counsel receive a disproportionate distribution of the settlement, or when the class receives

28  no monetary distribution but class counsel are amply rewarded;" (2) "when the parties negotiate a

MOTION FOR PRELIM. APPROVAL OF SETTLEMENT
No. 3:16-cv-04067-WHO
010637-11/1665955 V1

- 14 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   'clear sailing' arrangement that provides for the payment of attorneys' fees separate and apart from

2   class funds;" and (3) when the parties arrange for fees not awarded to class counsel to revert to the

3   defendants rather than the class. 654 F.3d 935, 947 (9th Cir. 2011). The court in *In re Bluetooth*

4   offered these more strict criteria when a settlement occurs *before* certification. *Id.* at 946–47; *see*

5   *also Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) ("That [*In re Bluetooth*] procedural

6   burden is more strict when a settlement is negotiated absent class certification.").

7       While Plaintiffs do not have to meet this stricter standard because the settlement occurred

8   post certification, none of these potential deficiencies exist here. The proposed settlement creates a

9   common fund, with no possibility of reversion. The funds will be used to cover costs and fees and

10  compensate the Class based on a *pro rata* formula as outlined above. There is no "clear sailing"

11  arrangement that provides payment of fees separate and apart from the common fund and no

12  "kicker" provision like the one in *Bluetooth*, which would allow money to revert back to Apple.

13  *See In re Bluetooth*, 654 F.3d at 947. The proposed Class Notices inform Class Members that Class

14  Counsel will request attorneys' fees up to 30% of the total settlement fund and reimbursement of

15  certain costs Class Counsel has advanced to date.[8] The absence of the *In re Bluetooth* warning

16  signs here is further indication of the settlement's fairness. *See In re Zynga Sec. Litig.*, No. 12-cv-

17  04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015).

18      **3.    The settlement does not provide preferential treatment for segments of the Class or the Class Representatives.**

19      The third factor in granting preliminarily approval is whether the settlement gives

20  preferential treatment to class representatives or segments of the class. *Rollins v. Dignity Health*,

21  336 F.R.D. 456, 461 (N.D. Cal. 2020) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). This

22  factor also favors approving this settlement.

---

[8] While the requested attorneys' fees may exceed the Ninth Circuit benchmark of 25% (using the "percentage-of-recovery" method accepted in this circuit), there is good reason to exceed that benchmark here as shown above. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 519.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     **a.**     **All Class Members will recover a *pro rata* share of the settlement.**

     The settlement will be distributed equally to each Class Member based on the number of remanufactured replacement devices they received. Specifically, Class Members will recover their *pro rata* share of Settlement Fund, based on the number of remanufactured devices within the scope of the Certified Class they received. As explained above, because the proposed plan of distribution compensates Class Members based on a *pro rata* share of the Settlement Fund, it satisfies the "fair, reasonable and adequate" standard that applies to approval of class settlements. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601, 607 (N.D. Cal. 2015) (approving pro-rata distribution as fair and reasonable).

     **b.**     **The requested service awards for the Class Representatives reflects their efforts on behalf of the Class.**

     Class Counsel will request service awards for the Class Representatives, Vicky Maldonado and Justin Carter, in the amount of $15,000 and $12,500 respectively, for their roles in representing the Class. The Ninth Circuit recognizes service awards "that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Class Counsel will submit this request simultaneously with their motion for attorneys' fees—and in advance of the deadline for objections—so members of the Certified Class that wish to understand the basis for this request will have an opportunity to review Class Counsel's motion and supporting materials. Their efforts, outlined above, make such an award reasonable.

     **4.**     **The settlement with Apple easily falls within the range of possible approval.**

     The Court must also decide whether the settlement falls within the range of possible approval. *Zepeda v. Paypal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Tableware*, 484 F. Supp. 2d at 1079. In making this determination, courts evaluate settlements to ensure they are "fair, reasonable, and adequate" and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re NVIDIA Corp. Derivative*



1   *Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting

2   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982)).

3          As shown above, the settlement provides the Certified Class with $95 million, which

4   represents 13–25% of the possible recovery, accepting Plaintiffs' measure of damages. "The fact

5   that a proposed settlement may only amount to a fraction of the potential recovery does not, in and

6   of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re*

7   *Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018) (quoting *Linney v. Cellular*

8   *Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998)); *Garner v. State Farm Mut. Auto. Ins. Co.*, No.

9   CV 08 1365 CW EMC, 2010 WL 1687832, at *11 (N.D. Cal. Apr. 22, 2010) ("[C]ourts have

10  recognized that even where—unlike here—the total settlement fund is small, it may not be

11  unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their

12  claims.") (cleaned up)). "Estimates of what constitutes a fair settlement figure are tempered by

13  factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay

14  in recovery (often measured in years)." *In re Anthem, Inc. Data Breach*, 327 F.R.D. at 322

15  (citations omitted). Even applying Plaintiffs' measure of damages, 13–25% of the total damages

16  easily fall within the range of possible approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

17  459 (9th Cir. 2000), as amended (June 19, 2000) (approving settlement that was one-sixth, or 16%,

18  of the potential recovery); *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD,

19  2021 WL 1022867, at *14 (N.D. Cal. Mar. 17, 2021) (approving settlement that represented 7% of

20  the possible recovery).

21         Given the very real risks of continued litigation, $95 million represents a fair, reasonable,

22  and adequate settlement. Defendants have vigorously denied that remanufactured devices are

23  inferior, and proving liability here would require a lengthy trial, with competing and conflicting

24  expert testimony. Apple intended on arguing at trial that even if Plaintiffs prevailed, they were not

25  entitled to any damages, meaning Plaintiffs could have prevailed on liability and not recovered any

26  damages. And even if Plaintiffs prevailed and were awarded damages, recovery could be delayed

27  by years if there was an appeal.

28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**B.      The Class Was Previously Certified Under Rule 23**

This Court already certified the Class under Rule 23 and Plaintiffs are not seeking to change or alter the Certified Class. As part of that certification, Hagens Berman was appointed as Class counsel and Plaintiffs Vicky Maldonado and Justin Carter were appointed as Class Representatives.

**C.      The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)**

Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed notice plan is supported by an experienced notice and claims administrator— Epiq—that has worked cooperatively with counsel to develop the proposed plan of notice. Azari Decl. ¶¶ 2–3, 18–21. The proposed Notice forms provide all of the information required by Rule 23(c)(2)(B) to the Certified Class, in language that is plain and easy to understand. Plaintiffs have followed, as closely as possible, the language for settlements recommended by this District's Procedural Guidance for Class Action Settlements. *See* Procedural Guidance for Class Action Settlements, U.S. District Court for the Northern District of California, http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018). With this motion Plaintiffs provide proposed forms for the Email Notice, Postcard Notice, and Long Form Notice. Azari Decl. Attachments 1–3.

Settlement Notice will include an Email Notice to be sent to all potential Certified Class members for whom a facially valid email address is available. The Email Notice will be created using an embedded html text format. This format will provide text that is easy to read without graphics,

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   tables, images and other elements that would increase the likelihood that the message could be

2   blocked by Internet Service Providers (ISPs) and/or SPAM filters. The emails will be sent using a

3   server known to the major email providers as one not used to send bulk "SPAM" or "junk" email

4   blasts. Also, the emails will be sent in small groups so as to not be erroneously flagged as a bulk junk

5   email blast. Each Email Notice will be transmitted with a unique message identifier. If the receiving

6   email server cannot deliver the message, a "bounce code" should be returned along with the unique

7   message identifier. For any Email Notice for which a bounce code is received indicating that the

8   message is undeliverable, at least two additional attempts will be made to deliver the Notice by email.

9   *Id.* ¶ 7.

10        The Email Notice will include the website address of the case website. By accessing the

11   website, recipients will be able to easily access a Long Form Notice, the Amended Complaint and

12   important court documents, the Settlement Agreement, and answers to frequently asked questions.

13   *Id.* ¶ 8.

14        For all Class members for whom a facially valid email address does not exist, but a physical

15   address does, a standard 4" by 6" Postcard Notice will be mailed. *Id.* ¶ 9. The Postcard Notice will

16   be sent via USPS first class mail. *Id.* Before mailing, all mailing addresses will be checked against

17   the National Change of Address ("NCOA") database maintained by the USPS. *Id.* Any addresses

18   returned by the NCOA database as invalid will be updated through a third-party address search

19   service. *Id.* In addition, the addresses will be certified via the Coding Accuracy Support System

20   ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation

21   ("DPV") to verify the accuracy of the addresses. *Id.* This address updating process is standard for

22   the industry and for most promotional mailings that occur today. *Id.*

23        Postcard Notices returned as undeliverable will be re-mailed to any new address available

24   through USPS information, for example, to the address provided by USPS on returned pieces for

25   which the automatic forwarding order has expired, or to other addresses that may be found using a

26   third-party lookup service that uses public lookup information. *Id.* ¶ 10. Upon successfully locating

27   such addresses, Postcard Notices will be promptly re-mailed. *Id.*

28



1    The proposed Email and Postcard Notices both feature a prominent headline and are

2 identified as a Notice from the District Court. Important information about the lawsuit and settlement,

3 including Plaintiffs' claims, the definition of the Certified Class, the amount of the Settlement, and

4 the right to request exclusion is summarized. *Id.* ¶ 11. The Email Notice includes embedded links

5 directly to the Long Form Notice at the case website. *Id.* These design elements alert recipients and

6 readers that the Notice is an important document authorized by a court and that the content may

7 affect them, thereby supplying reasons to read the Notice and visit the Case Website for additional

8 information. *Id.* Finally, a full Long Form Notice will be mailed via USPS first class mail to all

9 persons who requested one via the toll-free telephone number. *Id.*

10    To assist potential Class members in understanding the information concerning the lawsuit

11 and their rights, Epiq will use a dedicated and case-specific website with the URL

12 www.replacementdevicelawsuit.com, the same website that was used to disseminate information in

13 connection with Class Notice. *Id.* ¶ 12. Class Members will be able to obtain detailed information

14 about the case and review key documents, including the Complaint, the Long Form Notice (available

15 in both English and Spanish), important court documents, the Settlement Agreement, and answers to

16 frequently asked questions. *Id.* The case website will also include information on how Certified Class

17 members who did not previously receive notice can request exclusion from the Certified Class.[9] *Id.*

18 The case website address will be displayed prominently on all notice documents. *Id.* A toll-free

19 telephone number will also be established to allow Certified Class members to call for additional

20 information, listen to answers to FAQs, and request that a Notice be mailed to them. *Id.* ¶ 13. The

21 toll-free telephone number will be prominently displayed in the Notice documents as well. *Id.*

22 Finally, a post office box for correspondence about the case will also be established and maintained,

23 allowing Certified Class members to contact the Notice Administrator by mail with any specific

24 requests or questions, including requests for exclusion. *Id.* ¶ 14.

25

26    ---

[9] Notice was previously sent to the Certified Class, giving the opportunity to opt out. Certified

27 Class members who were not within the scope of the previous notice program—because they
received their remanufactured replacement device after Class contact data was provided to Epiq—

28 will now be given an opportunity to opt out.



1    Based on the prior notice to the certified class, Epiq estimates that individual, direct notice is

2    expected to reach over 90% of the identified Certified Class. *Id.* ¶ 19. This follows the reach and

3    frequency recommended by the Federal Judicial Center's Judges' Class Action Notice and Claims

4    Process Checklist and Plain Language Guide, which considers a 70-95% reach among class members

5    to be reasonable. *Id.* Epiq also opines the Notice Plan described above provides for the best notice

6    practicable under the circumstances, conforms to all aspects of the Rule 23, and comports with the

7    guidance for effective notice set out in the Manual for Complex Litigation, Fourth edition. *Id.* ¶ 20.

8    Finally, Class Counsel proposes that the deadline for Certified Class Members who were

9    not previously within the scope of the Court-approved notice program to request exclusion from

10   the Class be set at 60 days following the start of the direct Notice Campaign ("Notice Start Date"),

11   which Epiq opines affords sufficient time to provide full and proper notice to Class Members

12   before the opt-out deadline (*id.* ¶ 21), and which also follows the recommendations of the Federal

13   Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language

14   Guide.

15   These notice provisions meet the requirements of Rule 23. They will allow the Certified

16   Class a full and fair opportunity to review and respond to the proposed settlement.

17   **D.    Proposed Schedule for Dissemination of Notice and Final Approval**

18   Plaintiffs propose the following schedule for the dissemination of class notice and final

19   approval:

| Event | Proposed Deadline |
|---|---|
| Notice campaign to begin, including website, mailing, and digital notice | (30 days following Epiq's receipt of final and approved Class member contact data) |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | (35 days before objection deadline) |
| Last day for objections | (60 days from notice) |
| Last day for requests for exclusion from the Class (for Class members who were not within the scope of the prior Class Notice program) | (60 days from Notice Start Date) |

28

MOTION FOR PRELIM. APPROVAL OF SETTLEMENT
No. 3:16-cv-04067-WHO
010637-11/1665955 V1

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| Last day for motion in support of final approval of settlements | (14 days after objection deadline) |
|---|---|
| Fairness Hearing | (38 days from motion for final approval), unless otherwise ordered by the Court. |

## V.   CONCLUSION

The Settlement provides $95 million for the Certified Class. This Settlement was reached after intense negotiations that followed several years of hard-fought litigation and easily falls within the range of possible approval. Respectfully, Plaintiffs request that this Court enter an order: (1) preliminarily approving the proposed class action settlement with Apple; and (2) approving the manner and form of notice and proposed plan of allocation to Class members.

DATED:  October 1, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (*pro hac vice*)
Robert B. Carey (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
Renee F. Kennedy (*pro hac vice*)

By:   */s/ Steve W. Berman*
Steve W. Berman (*Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Plaintiffs*

