1  Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2  1301 Second Avenue, Suite 2000
Seattle, WA 98101
3  Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
4  Email: steve@hbsslaw.com

5  Robert B. Carey (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
6  HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
7  Phoenix, AZ  85003
Telephone: (602) 840-5900
8  Facsimile:  (602) 840-3012
Email: rob@hbsslaw.com
9  Email: michellak@hbsslaw.com

10  *Attorneys for Plaintiffs*

11  [Additional Counsel on Signature Page]

12  
UNITED STATES DISTRICT COURT
13  
NORTHERN DISTRICT OF CALIFORNIA
14  
SAN FRANCISCO DIVISION
15  

16  VICKY MALDONADO AND JUSTIN CARTER, individually and on behalf of themselves and all others similarly situated,

No. 3:16-cv-04067-WHO

Related Case:
*English v. Apple Inc. et al.*
Case No. 3:14-cc-01619-WHO

Plaintiffs,

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

v.

APPLE INC., APPLECARE SERVICE COMPANY, INC., AND APPLE CSC, INC.,

Defendants.

Judge: Hon. William H. Orrick
Courtroom: 2, 17th Floor
Complaint Filed: July 20, 2016



1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that on April 27, 2022, at 2:00 p.m. or as soon thereafter as the

3   matter may be heard by the Honorable Judge William H. Orrick of the United States District Court

4   for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue,

5   San Francisco, CA 94102, Plaintiffs will and hereby do move the Court for an award of attorneys'

6   fees, expenses, and service awards for the Class Representatives.

7   This Motion is based on this Notice of Motion and Motion, the accompanying memorandum

8   of points and authorities, the declarations in support of the motion, argument by counsel at the

9   hearing before this Court, and all papers and records on file in this matter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  THE WORK UNDERTAKEN BY PLAINTIFFS .............................................2

    A.  Class Counsel took this case when its success was uncertain. ...............2

    B.  Class Counsel revamped and filed an Amended Complaint, and successfully litigated the full gambit of dispositive motions. ..................3

    C.  Class Counsel engaged in substantial discovery efforts on behalf of the Class that were both necessary and unavoidable. ...............................5

        1.  Class Counsel issued and responded to substantial written discovery ..........................................................................................5

        2.  Class Counsel engaged in extensive expert discovery. .................5

        3.  Class Counsel took and defended multiple fact depositions. ........8

        4.  Class Counsel engaged in significant trial preparation. ...............9

        5.  Class Counsel engaged in significant mediation and settlement negotiations. ..........................................................9

III.  ARGUMENT .....................................................................................................9

    A.  Class Counsel's fee request is reasonable. ..........................................10

        1.  A 29% award is reasonable under a percentage-of-the-fund analysis. ......................................................................................12

            a.  Class Counsel achieved excellent results for the Class. ................12

            b.  Class Counsel's performance generated benefits beyond the Settlement fund. ..........................................13

            c.  This case posed significant risks and challenges. ..........................14

            d.  Class Counsel's litigation on a contingency basis supports the fee request. ..............................................16

            e.  The market rate for class action lawyers with the experience of Class Counsel supports the 29% fee request. ..........................................................................17

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- i -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

f.    The burdens Class Counsel faced support the fee
request........................................................................................... 18

2.    The lodestar cross-check confirms the reasonableness of the
requested fees. ......................................................................................... 18

B.    Class Counsel request reimbursement of reasonable out-of-pocket
expenses incidental and necessary to the effective representation of
the Class............................................................................................................. 20

C.    Plaintiffs request that the Class Representative be awarded
reasonable service awards to compensate them for the time and
dedication to this case................................................................................... 22

D.    The Class received adequate notice of Class Counsel's fee
application. ..................................................................................................... 25

IV.    CONCLUSION ........................................................................................................... 25



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*In re Activision Sec. Litig.*,
5
   723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................ 11

6

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ..................................................................... 17
7

*In re Anthem, Inc. Data Breach Litig.*,
8
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............... 11

9

*In re Apple Inc. Device Performance Litig.*,
10
   No. 5:18-MD-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ............... 11, 14, 15

11

*In re Apple iPhone/iPod Warranty Litig.*,
   40 F. Supp. 3d 1176 (N.D. Cal. 2014) ..................................................................... 16
12

*Bellinghausen v. Tractor Supply Co.*,
13
   306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................. 22

14

*Boeing Co. v. Van Gemert*,
15
   444 U.S. 472 (1980) ................................................................................................. 10

16

*In re Capacitors Antitrust Litig.*,
   No. 3:14-CV-03264-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ................. 20
17

*de Mira v. Heartland Emp. Serv., LLC*,
18
   No. 12-CV-04092 LHK, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ................. 12

19

*Garner v. State Farm Mut. Auto. Ins. Co.*,
20
   No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ....................... 11

21

*Grace v. Apple, Inc.*,
   No. 17-CV-00551-LHK, 2021 WL 1222193 (N.D. Cal. Mar. 31, 2021) ................. 15, 17
22

*Gutierrez v. Wells Fargo Bank, N.A.*,
23
   No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................... 19

24

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......................... 22
25

*In re High-Tech Emp. Antitrust Litig.*,
26
   No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................. 20

27

*In re HPL Techs., Inc. Sec. Litig.*,
28
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ..................................................................... 10



*Ko v. Natura Pet Prod., Inc.*,
   No. C 09-02619 ........................................................................................... 17

*Larsen v. Trader Joe's Co.*,
   No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................ 11, 13

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ........................................................................... 25

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017 .................................. 20

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 10, 17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................ 10, 11, 12, 16

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................ 11

*Perez v. Rash Curtis & Assocs.*,
   No. 4:16-CV-03396-YGR, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) .......................... 19

*Perkins v. LinkedIn Corp.*,
   No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................ 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................... 22

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................... 10

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118 JSW, 2014 WL 1309692 (N.D. Cal. Mar. 31, 2014) ............................ 19

*Van Skike v. Dir., Off. of Workers' Comp. Programs*,
   557 F.3d 1041 (9th Cir. 2009) .......................................................................... 19

*Van Vraken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 22

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................... *passim*

## STATUTES

Beverly Act and Magnusson Moss Warranty Act ........................................................ 3



1

<strong>OTHER AUTHORITIES</strong>

2

Fed. R. Civ. P. 30(b)(6) ........................................................................................... 4, 8

3

Procedural Guidance for Class Action Settlements, U.S. District Court for the
      Northern District of California ......................................................................... 20, 25

4

Theodore Eisenberg et. al., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U.
      L. Rev. 937 (2017) ........................................................................................... 11, 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## I.     INTRODUCTION

After four years of hard-fought litigation, Class Counsel have settled this case for $95 million for the Certified Class. Because of the substantial risks and complex issues surmounted in achieving the $95 million recovery, Plaintiffs respectfully request from the recovery funds: (1) an award of $27,550,000 in attorneys' fees, a percentage recovery four points above the benchmark; (2) reimbursement of expenses fronted by Class Counsel in litigating this matter ($1,397,165.53); and (3) service awards for each of the class representatives based on their contributions and efforts.

The $95 million settlement fund represents an excellent result for the Class. Opposing one of the world's largest corporations and two sets of the country's most sophisticated defense counsel (with the support and resources of three of the nation's leading firms), Plaintiffs faced the challenge of proving Apple's remanufactured iPhones and iPads were not equivalent to new in performance and reliability, as promised in its AppleCare/AppleCare+ ("AppleCare") contracts. Class Counsel, on behalf of Plaintiffs, had to hire multiple experts, including engineers, a statistician, and economists, to prove their case and measure damages, and adjust to and fend off strategies that changed over the course of the litigation. Plaintiffs certified the Class, survived a motion to dismiss, a motion for summary judgment, a motion to decertify the class, and *Daubert* motions on all their case-in-chief experts. Class Counsel conducted significant fact and expert discovery—reviewing over 30,000 documents, issuing and responding to hundreds of discovery requests, and taking and defending over thirty depositions. Plaintiffs were just weeks away from trial when this case settled. Class Counsel's work resulted in a substantial recovery for the Class.

The $95 million common fund represents between 13 to 25% of estimated damages according to Plaintiffs' experts. Given the risks that persisted right up to the end, the difficulty and unique nature of the harm, and the work required to achieve this settlement, this is a strong result for the Class. The requested fee award is reasonable compared to awards in similar class actions, where class counsel undertook comparable risks and litigation efforts. The reasonableness of the requested award is further confirmed by a "lodestar cross-check." Class Counsel's total lodestar for the case is $7,678,865.00. An award of 29% results in a current multiplier of 3.58, well within the

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 1 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    range for a class action of this size and complexity. All the work done was critical to the result. The

2    requested expenses were all critical to the representation of the Class. The expenses are also

3    consistent with the expenses reimbursed in comparable cases. The service awards are reasonable

4    given Plaintiffs' substantial investment of time and commitment to the Class. Plaintiffs respectfully

5    request that their motion be granted.

6                    **II.      THE WORK UNDERTAKEN BY PLAINTIFFS**

7    **A.      Class Counsel took this case when its success was uncertain.**

8            Given the posture of the case, the necessary co-counsel arrangement, and related case

9    history, Class Counsel took an enormous risk in taking this case. Class Counsel agreed to pursue

10   this case after the first iteration of the case had not succeeded and while a motion to dismiss was

11   pending. Despite this, Class Counsel agreed not just to take over a case litigated by other counsel

12   but to include them in the litigation going forward. The related case, *English v. Apple, Inc.*, 3:14-

13   cv-01619-WHO, was not certified and was later dismissed. *English* was based on the same facts as

14   this case—but pleaded different causes of action that ultimately were not viable—namely that

15   Apple's remanufactured replacement devices were not new or equivalent to new in reliability as

16   promised in the AppleCare contracts. The Court denied certification in *English*, finding, in part,

17   that the plaintiff had alleged no viable theories of liability and had not received a remanufactured

18   device.[1] *English*, 3:14-cv-01619-WHO, ECF No. 225-1. Noting that several attorneys had appeared

19   and withdrawn from the case, the Court declared that prior counsel was inadequate. *Id.* The *English*

20   case was later dismissed on summary judgment.

21           After the Court denied certification in *English*, Ms. Kennedy filed this case, alleging similar

22   causes of action with new plaintiffs. ECF No. 1. Apple moved to dismiss, based in part on the

23   rulings against the plaintiff in *English* and Ms. Kennedy's representation. ECF No. 23. Apple

24

25           [1] Class Counsel credits Ms. Kennedy with recognizing Apple's failures to live up to its
contractual promises to consumers. This motion is not meant to be a criticism of Ms. Kennedy's
26   work, and Class Counsel utilized her in this case where possible, but she had very limited
experience in large consumer class actions and lacked the resources to litigate against a
27   sophisticated company like Apple. Ms. Kennedy did have the foresight to bring in co-counsel with
extensive experience and success in litigating consumer class actions—and in agreeing to let Class
28   Counsel litigate the case—making the case an ultimate success.



argued that the Maldonado complaint repeated "the same allegations made by" English and filed by the same counsel, who the Court already found to be inadequate. *Id.* Before she responded to Apple's motion, Ms. Kennedy approached Class Counsel to litigate the case because of their reputation in litigating successful consumer class actions. Declaration of Steve Berman in Support of Motion for Costs and Fees ("Berman Decl.") ¶ 4. Class Counsel met with Ms. Kennedy and then thoroughly investigated the facts underlying this case, spoke to experts in the industry, and reviewed what had gone wrong in the *English* litigation. *Id.* ¶¶ 4-5. In deciding to undertake this litigation, Class Counsel researched all possible causes of action arising from Apple's actions and filed an Amended Complaint. *Id.* ¶ 6. From there forward, the case was a success for Plaintiffs. Class Counsel took a risk that many firms would not have taken given the history of the case, co-counsel with very limited complex litigation and class action experience, and the losses in *English*.

**B.     Class Counsel revamped and filed an Amended Complaint, and successfully litigated the full gambit of dispositive motions.**

Class Counsel's first challenge was responding to the pending motion to dismiss. ECF No. 23. After reviewing the Complaint and Motion to Dismiss, and researching all possible legal theories, Class Counsel determined the Complaint was insufficient. Berman Decl. ¶ 7. In drafting the Amended Complaint, Class Counsel removed all unsustainable causes of action (including fraud and violation of the secondhand merchandise labeling law), properly alleged the breach of contract claim, properly alleged the UCL claim, and added Song Beverly Act and Magnusson Moss Warranty Act claims. *Id.*; ECF No. 45. Class Counsel also brought in a new class representative, Justin Carter, to represent iPhone purchasers. Berman Decl. ¶ 8; ECF No. 45.

After Class Counsel filed the First Amended Complaint, Apple filed a second motion to dismiss. ECF No. 50. That 24-page motion moved to dismiss all of Plaintiffs' claims. *Id.* Apple argued Plaintiffs lacked standing, prematurely argued spoliation of evidence, and argued that the Court should strike the class action allegations simply because of Ms. Kennedy's association with the case. *Id.* While the Court dismissed two of Plaintiffs' counts—claims Plaintiffs spent de minimis time on and were based on the same underlying facts—their other four counts survived, including breach of contract, breach of warranty, and violation of the UCL. ECF No. 64. The Court



1   also refused to find that Plaintiffs did not have standing, there was spoliation of evidence, or the

2   class allegations should be stricken. *Id.* Plaintiffs then proceeded on the four surviving claims.

3        Class Counsel succeeded in both certifying the class and in defeating a motion for summary

4   judgment. On February 28, 2019, Plaintiffs moved for Class Certification. ECF Nos. 102–103.

5   Plaintiffs' briefing was extensive, including the declarations of three experts, Rule 30(b)(6)

6   testimony from Apple, and Apple's own internal documents. *See id.* Apple opposed that motion

7   with equally extensive briefing, citing its own three rebuttal experts and additional testimony from

8   Apple. ECF Nos. 112–113. The total submission to the Court was over 1,200 pages. Berman Decl.

9   ¶ 39.

10        While the motion for class certification was pending, Apple also moved for summary

11   judgment on Plaintiffs' individual claims. ECF Nos. 110–111. That briefing consisted of almost

12   800 pages of argument and evidence. Berman Decl. ¶ 40. The Court granted the class certification

13   motion and denied Apple's motion for summary judgment. ECF No. 160. Shortly after Apple lost

14   these motions, it brought in entirely new counsel. ECF Nos. 179–182.

15        After the close of discovery, Apple—through their new counsel—moved to decertify the

16   class and to exclude all five of Plaintiffs' experts for their case-in-chief. ECF Nos. 234–243.

17   Apple's motions consisted of over 2,500 pages of briefing and exhibits. Berman Decl. ¶ 41. Class

18   Counsel had to respond to all five motions simultaneously (merely asking for an additional week to

19   respond to the decertification motion). ECF Nos. 255, 265–268, 272–73. The total submission to

20   the Court from both parties—including supplemental briefing the Court requested—consisted of

21   over 6,000 pages. Berman Decl. ¶ 41. Class Counsel had to address all new attacks, brought by

22   new attorneys, on their class allegations, despite relying on the same theories and supporting

23   evidence throughout the case. Class Counsel also dealt with an entirely new set of experts, with

24   new opinions. Despite Apple's extensive briefing and new arguments, Plaintiffs prevailed on each

25   motion and none of Apple's requested relief was granted. ECF No. 304. At the same time,

26   Plaintiffs moved to exclude two of Apple's ten experts in full, and two in part. ECF Nos. 246–50.

27   Plaintiffs succeeded in excluding one of Apple's experts in full and one in part. ECF No. 304.

28

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 4 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Plaintiffs won all dispositive motions brought by Apple, leaving Apple but two choices: settle or go to trial. Plaintiffs' successes in certifying the Class, defeating all dispositive motions, and leaving Apple with one path to victory, contributed significantly to the ultimate settlement.

**C.      Class Counsel engaged in substantial discovery efforts on behalf of the Class that were both necessary and unavoidable.**

**1.      Class Counsel issued and responded to substantial written discovery.**

Class Counsel engaged in substantial discovery—before and after the Class was certified— which was necessary and contributed to the success of the case. Class Counsel issued 26 nonuniform interrogatories, 92 requests for production, and 159 requests for admission, which were necessary to prove Plaintiffs' claims. Berman Decl. ¶ 9. Because Apple objected to every single request, Class Counsel engaged in countless meet and confers. *Id.* ¶ 10. While Class Counsel did draft several discovery dispute letters for the Court, most disputes were resolved without Court intervention, after substantial efforts by Class Counsel. *Id.* Through the meet and confer process, Apple agreed to and updated 14 of its interrogatory responses, 24 of its requests for admission, and ultimately produced over 30,000 documents, consisting of approximately 230,000 pages. *Id.* ¶ 12. Class Counsel reviewed all those documents—a challenging task because the documents were extremely technical and full of Apple's acronyms and lingo. *Id.* ¶ 13. Adding to the time spent on discovery, Apple refused to produce certain discovery until after the Class was certified. *Id.* ¶ 11.

Apple issued 12 interrogatories, 19 requests for production, and 8 requests for admission to Carter, and 13 interrogatories and 20 requests for production to Maldonado. *Id.* ¶ 14. Many requests asked for information that was tenuously relevant or in Apple's possession, such as all Apple devices Plaintiffs ever owned or what other warranties they had. *Id.* ¶ 15. Class Counsel worked with Plaintiffs to respond to these requests, produce documents, and supplement their answers. *Id.* ¶ 16.

**2.      Class Counsel engaged in extensive expert discovery.**

Class Counsel worked extensively with their own experts—which were targeted to the needs of the case. In moving for class certification, Plaintiffs hired three experts. Dr. Michael Pecht, testified that used electronic parts could never equal new in reliability. ECF No. 103-20. Dr.



Robert Bardwell analyzed Apple's limited return data and determined that remanufactured devices are more likely to fail than new devices. ECF No. 103-23. Dr. Lance Kaufman presented a method to measure damages—the retail price difference between a new and remanufactured device. ECF No. 103-25.

Apple hired three rebuttal experts to oppose class certification. Dr. Alexander Glew issued a lengthy report claiming no evidence supported Dr. Pecht's opinions. ECF No. 112-21. In response, Plaintiffs showed the weaknesses in Dr. Glew's opinions: he conceded that used parts were further along in their lifecycle than new parts, he did not review the industry publications supporting Dr. Pecht, and he waived off evidence supporting Dr. Pecht's opinions as "insignificant." ECF No. 122 at 11–12. Dr. Hayter claimed Apple's limited return data showed the opposite of what Dr. Bardwell showed and was improperly censored. ECF No. 112-23. In response, Plaintiffs showed that for the first 13 weeks of service, Dr. Hayter agreed with Dr. Bardwell's results. ECF No. 122 at 9. Dr. Hayter also admitted that the censoring issues could be fixed with full return data. *Id.* at 8. Last, Dr. Cox opined that Plaintiffs' damages measure was wrong—that they had to measure what Plaintiffs overpaid for AC+, because that was their only theory of liability. ECF 113-22. In response, Plaintiffs showed that Dr. Cox was relying on Plaintiffs' dismissed causes of action, ignoring their claims they were entitled to an equivalent to new device. ECF No. 122 at 13. All six experts were deposed. Berman Decl. ¶¶ 37–38.

After the Class was certified—and the Court rejected Apple's arguments about Plaintiffs' experts—Class Counsel again used Drs. Pecht, Bardwell, and Kaufman for their case-in-chief, and two additional experts. *Id.* ¶¶ 22–25. Dr. Pecht's opinions did not change, and Class Counsel chose not to update his report for the sake of efficiency. *Id.* ¶ 22. Dr. Bardwell updated his report to analyze Apple's full return data, which Apple only agreed to produce after the Class was certified. *Id.* ¶ 23. Dr. Bardwell's ultimate opinions did not change: remanufactured replacement devices were more likely to fail than new replacement devices. *Id.* Dr. Kaufman also updated his report, providing actual damages calculations with the data Apple produced after the Class was certified. *Id.* ¶ 24. Dr. Kaufman's methodology remained the same: he measured the difference in retail price between new and remanufactured devices. *Id.* Class Counsel also hired Steven Gaskin and Colin

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 6 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Weir. Mr. Gaskin performed a conjoint to determine the difference in market value between new

2    and remanufactured devices, consistent with Plaintiffs' theory of liability. *Id.* ¶ 25. Using that

3    conjoint analysis, Mr. Weir calculated damages. *Id.*

4        For merits, Apple's new counsel abandoned Drs. Glew, Hayter, and Cox, instead

5    identifying three new case-in-chief experts and seven new rebuttal experts. *Id.* ¶ 27. Apple's case-

6    in-chief experts revealed new defense tactics. Hal Perot ran a survey and opined that consumers

7    understood the language "equivalent to new" to mean they would receive devices with used parts.

8    *Id.* ¶ 28. Lisa Jackson, an Apple executive, was going to testify that Apple recycled parts because

9    of their commitment to the environment. *Id.* ¶ 29. Dr. Craig Hillman opined that Apple's testing

10   was sufficient to show equivalence, other companies used similar language to the AppleCare

11   warranties, and recycling components followed industry best practices and Apple's commitment to

12   the environment. *Id.* ¶ 30. In response, Class Counsel had Dr. Pecht issue a rebuttal to Dr. Hillman.

13   *Id.* ¶ 31.

14       Apple's seven rebuttal experts (to Plaintiffs' five experts) provided new and differing

15   opinions from Apple's initial rebuttal experts, also revealing new defense tactics. *Id.* ¶ 37. Those

16   rebuttal experts testified in part: (1) Dr. Pecht's "load theory" required empirical testing or a

17   designed experiment; (2) testing on the iPhone SE disproved the load theory; (3) Dr. Bardwell's

18   report shows correlation, not causation; (4) Dr. Bardwell improperly treated returns as failures; (5)

19   Dr. Bardwell ignored confounding variables such as consumer behavior; (6) the proper measure of

20   damages is a comparison of prices at which replacement devices could have resold in the market,

21   resulting in no damages; (7) if damages are measured by market value, Plaintiffs must measure the

22   loss due to a shorter economic life; (8) customers who sold, traded-in, or gave away their

23   replacement device were not injured; (9) there were numerous errors in Mr. Gaskin's conjoint

24   analysis; and (10) a conjoint on willingness to pay cannot be used to estimate market prices. *Id.* ¶

25   32. While oversimplified, this summary of Apple's rebuttal experts demonstrates that Class

26   Counsel faced entirely new opinions and arguments.

27       And several of Apple's rebuttal experts went beyond mere rebuttal, necessitating multiple

28   meet-and-confers between the parties. *Id.* ¶ 33; ECF No. 207 at 2–3. Ultimately—after Class

1    Counsel began drafting motions to rebut or exclude Apple's rebuttal experts—the parties came to a

2    compromise where Apple agree to allow Plaintiffs to issue sur-rebuttals to three of their experts.

3    Berman Decl. ¶ 33. Dr. Bardwell and Mr. Gaskin issued sur-rebuttal reports. *Id.* ¶ 34. Class

4    Counsel also hired Dr. Abhijit Dasgupta to issue a sur-rebuttal report to the testing done on the

5    iPhone SEs. *Id.* In addition, Dr. Bardwell, Dr. Kaufman, and Mr. Weir provided updates to their

6    original reports, based on misinterpretations of and errors in Apple's data.[2] *Id.* ¶ 35. In response to

7    Plaintiffs' updates, Apple provided updates for three of its rebuttal experts. *Id.* ¶ 36.

8         Class Counsel prepped their experts for and defended nine depositions, with Drs. Bardwell,

9    Pecht, and Kaufman all being deposed twice. *Id.* ¶ 38. Class Counsel also took twelve depositions

10   of Apple experts (choosing not to depose Perot). *Id.* ¶ 37. These depositions required extensive

11   preparation given the claims and the areas of testimony, which included electrical and reliability

12   engineering, statistics, conjoint analysis, and economics. *Id.*

13        **3.**     **Class Counsel took and defended multiple fact depositions.**

14        Class Counsel took eight and defended three non-expert depositions. Class Counsel issued

15   two Rule 30(b)(6) deposition notices—one before class certification and one after, given Apple's

16   position that it would not provide certain information until after the Class was certified. Berman

17   Decl. ¶ 17. After multiple meet-and-confers with Apple regarding those notices, Class Counsel

18   deposed five Rule 30(b)(6) designees. *Id.* Class Counsel also took the depositions of three

19   additional fact witnesses identified in Apple's disclosures. *Id.* ¶ 18. These eight depositions

20   required significant preparation and time given the subject matter, which included Apple's

21   manufacturing and testing procedures and data capabilities and storage. *Id.* ¶ 19. Class Counsel

22   also defended both Plaintiffs' depositions and a third fact witness (who examined Carter's

23   iPhones). *Id.* ¶ 20. None of these witnesses had been deposed before, requiring Class Counsel to

24   adequately prepare them. *Id.*

25

26           [2] Because Apple's data was produced a week before fact discovery closed, Class Counsel did

27   not have the opportunity to depose Apple about that data or how to interpret it. Berman Decl. ¶ 35.
     Plaintiffs' experts did their best to interpret and understand Apple's data but needed to make

28   corrections to their reports after Apple identified a few errors. *Id.*

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

**4.     Class Counsel engaged in significant trial preparation.**

2      Class Counsel was preparing for trial when this case settled. While Class Counsel was

3   always open to settlement—engaging in four mediations—they could not do so at the expense of

4   the Class. Class Counsel was prepared to try this case and engaged in significant trial preparation

5   before the parties settled. Among other tasks, Class Counsel: (1) drafted jury instructions and

6   verdict forms; (2) drafted Plaintiffs' portions of the joint pretrial statement; (3) identified Plaintiffs'

7   exhibits and objections to Apple's exhibits; (4) designated, counter-designated, and objected to

8   deposition testimony; and (5) identified the subjects of and drafted Plaintiffs' motions in limine.

9   Berman Decl. ¶ 46. The parties settled on June 30, 2021—less than a week before all pretrial

10  motions and disclosures were due to the Court and just six weeks before the start of trial. Class

11  Counsel took this case up to the eve of trial and ultimately reached a settlement that provides the

12  Class with significant relief.

13

**5.     Class Counsel engaged in significant mediation and settlement negotiations.**

14      The parties engaged in four total mediations, with the last being successful. Class Counsel

15  prepared mediation statements for all four mediations—but for the sake of efficiency used earlier

16  iterations of the mediation statement as a starting point when preparing for each new mediation.

17  Berman Decl. ¶ 42. Even after the case settled at the fourth mediation, the parties litigated

18  extensively the terms of the full-length agreement. It took two months of meet and confers, two

19  round of arbitrations, and negotiations with Apple to finalize the Settlement Agreement. *Id.* ¶ 43.

20  The parties hired a private arbitrator to resolve two disputes related to the settlement. *Id.* ¶ 44.

21  Class Counsel spent significant time and effort in drafting and revising the Settlement Agreement,

22  drafting the notices and preliminary approval motion, and briefing the arbitrator. *Id.* ¶ 45.

23

**III.     ARGUMENT**

24      Plaintiffs respectfully request an award of $27,550,000 in attorney's fees—equal to 29% of

25  the $95 million common fund. Applying a lodestar cross-check, this would result in a 3.58

26  multiplier of Class Counsel's current lodestar of $7,678,865.00, which will increase through final

27

28



1    approval.[3] Plaintiffs anticipate a total lodestar of approximately $8 million to $8.5 million—

2    depending on post-distribution litigation or an appeal—which results in a multiplier of 3.24 to 3.44.

3    Plaintiffs also request additional reimbursement of expenses incurred in connection with this

4    litigation of $1,397,165.53. Finally, Plaintiffs request that this Court grant service awards of

5    $15,000 to Vicky Maldonado and $12,500 to Justin Carter.

6    **A.      Class Counsel's fee request is reasonable.**

7            Class Counsel have produced a shared benefit for the Class in the form of the $95 million

8    common fund. And, as described in Section III.A.1.b, *infra*¸ this litigation provided additional

9    benefits to Apple consumers, which must be considered when awarding fees. Those added benefits

10   could reasonably be valued at approximately $800,000 per month. The Supreme Court has

11   explained that "a litigant or a lawyer who recovers a common fund for the benefit of persons other

12   than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

13   *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Staton v. Boeing Co.*, 327 F.3d 938,

14   967 (9th Cir. 2003) (same). Here, an award of reasonable attorneys' fees from the common fund

15   compensates Class Counsel for vigorously litigating this action on behalf of millions of consumers

16   across the country who did not receive their promised contractual benefits.

17           Courts in the Ninth Circuit award attorney's fees in common fund cases under either the

18   "percentage-of-recovery" method or the "lodestar" method. *In re Online DVD-Rental Antitrust*

19   *Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). And while the lodestar method is not prohibited, the use

20   of the percentage method in common fund cases is "dominant." *In re Omnivision Techs., Inc.*, 559

21   F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing cases); *see also* Theodore Eisenberg et. al.,

22

23           [3] Class Counsel's lodestar is calculated using their currently hourly rates to fairly compensate
     them for the time value of money. *See In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919
24   (N.D. Cal. 2005) (using current hourly rates in lodestar cross-check because it "simplifies the
     calculation and accounts for the time value of money in that lead counsel has not been paid
25   contemporaneously"). The lodestar goes through January 21, 2022. Class Counsel anticipate
     additional fees that include: the drafting of this motion, drafting a reply to this motion, responding
26   to class member inquires, preparing the motion for final approval, attending the final approval
     hearing, and distribution of the Settlement. Class Counsel may have to engage in additional
27   briefing (and expend additional expenses) with a private mediator if the parties cannot agree on
     whether to redistribute any unclaimed funds or distribute them to a *cy pres* recipient. Class Counsel
28   also may have to deal with an appeal, which would further increase their lodestar.



1    Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 963 (2017) ("EMG Study")

2    (finding in an empirical study of attorneys' fees in class action settlements that from 2009–2013,

3    the lodestar method was rarely used, but courts frequently used the percentage method with a

4    lodestar check). The percentage-of-the-fund method reduces "the burden on the courts that a

5    complex lodestar calculation requires," and instead allows courts "to focus on showing that a fund

6    conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple*

7    *Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal.

8    Mar. 17, 2021) (citations omitted); *see also In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-

9    02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) ("By tying the award to the

10   recovery of the Class, Class Counsel's interests are aligned with the Class, and Class Counsel are

11   incentivized to achieve the best possible result.")

12        In contrast, applying the lodestar method "to common fund cases does not achieve the

13   stated purposes of proportionality, predictability and protection of the class. It encourages abuses

14   such as unjustified work and protracting the litigation." *In re Activision Sec. Litig.*, 723 F. Supp.

15   1373, 1378 (N.D. Cal. 1989); *see also In re Anthem*, 2018 WL 3960068, at *5 ("the lodestar

16   method has sometimes been criticized because it encourages counsel to bill time and create

17   opportunities to bill time"). The lodestar method also "adds to the workload of already overworked

18   district courts [and] adds inefficiency to the process." *In re Activision*, 723 F. Supp. at 1378.

19   Regardless of which method is chosen, the Ninth Circuit encourages "a cross-check using the other

20   method." *Online DVD*, 779 F.3d at 949. Here, both methods support Class Counsel's fee request.

21        Courts in this District and in the Ninth Circuit routinely award class counsel fees ranging

22   between 28–33%. *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at

23   *9 (N.D. Cal. July 11, 2014) (citing cases and approving award of 28%); *see also Vizcaino v.

24   Microsoft Corp.*, 290 F.3d 1043, 1046, 1050 (9th Cir. 2002) (approving award of 28% of $96

25   million common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

26   (awarding 33% of the common fund); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365

27   CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (awarding 30% of the $15 million

28



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

common fund). Plaintiffs' request of 29% of the common fund is well within the approved range of fees, particularly given the history of this case.

**1.    A 29% award is reasonable under a percentage-of-the-fund analysis.**

When applying the percentage-of-the fund method, the Ninth Circuit has established a benchmark of 25% as the "starting point" for analysis. *Online DVD*, 779 F.3d at 949, 955. "That percentage amount can then be adjusted upward or downward depending on the circumstances of the case." *de Mira v. Heartland Emp. Serv., LLC*, No. 12-CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014). Courts in this District have recognized that "in most common fund cases, the award *exceeds* the benchmark." *Id.* (*quoting In re Omnivision*, 559 F. Supp. 2d at 1047). The Ninth Circuit asks district courts to consider all the circumstances of the case and reach a reasonable percentage. *Online DVD*, 779 F.3d at 949, 954–55. Here, the circumstances dictate an upward adjustment.

This conclusion is supported by the factors the Ninth Circuit instructs courts to consider: (1) whether counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether the case was handled on a contingency basis; (4) the market rate for the particular field of law; and (5) the burdens class counsel experienced while litigating the case. *Id.* at 954–55. Each factor supports Class Counsel's request for a total fee award of 29% of the common fund.

**a.    Class Counsel achieved excellent results for the Class.**

Recovery of $95 million is an exceptional result for the Settlement Class, given the tremendous risks and challenges they faced. Class Counsel's use of quality merits and expert evidence enabled Plaintiffs to certify the Class, defeat all dispositive motions, and obtain a substantial settlement for the Class.

Comparing Plaintiffs' recovery against the estimated Class damages also indicates the settlement is an excellent result. Plaintiffs' expert, Dr. Kaufman, estimated damages of $754,893,730, and Mr. Weir calculated damages $386,106,741. Berman Decl. ¶¶ 24–25. Plaintiffs' $95 million Settlement is approximately 13 to 25% percent of those damages. Apple's position remained unchanged throughout the litigation: Plaintiffs were not entitled to any damages. Had

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 12 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Plaintiffs chosen to go to trial, there is the possibility the jury could have agreed with Apple that

2  there was no liability, or that if there was liability, there were no damages. Given Apple's position

3  and the risks of trial for any consumer class action, the result for the Class is excellent.

4                **b.**     **Class Counsel's performance generated benefits beyond the Settlement
                            fund.**

5

6            Apple also changed its AppleCare terms and conditions because of this lawsuit. While not

7  part of the Settlement, Apple changed its AppleCare language on November 15, 2021. This change

8  occurred six weeks after the parties finalized the Settlement Agreement, and two weeks after

9  preliminary approval hearing, where the Court asked Apple about its intentions and Class Counsel

10  indicated consumers could file additional lawsuits. ECF No. 330. AppleCare contracts no longer

11  promise that replacement devices will be "new or equivalent to new in performance and

12  reliability," and instead promise the customer will be provided "a replacement product that is new

13  or comprised of new and/or reclaimed Apple genuine parts and has been tested and passed Apple

14  functional requirements." *Id.* Apple changed its promises and are now more upfront with its

15  consumers about their replacement devices because of this lawsuit. While Plaintiffs are not

16  required to estimate this added value, one possible measure is to take the total settlement, divide it

17  over the 110-month class period, which results in a monthly benefit of $863,636 going forward.[4]

18  This increases the settlement value approximately $20.7 million in just the warranty period of an

19  AppleCare Contract (two years), raising the settlement value to $115.7 million. Plaintiffs are not

20  arguing that this added benefit changes the common fund calculation, but it is an additional benefit

21  to consumers that must be considered when awarding fees. *See, e.g., Vizcaino*, 290 F. 3d at 1049

22  (litigation caused defendant to change its employee benefit practices); *Larsen*, 2014 WL 3404531,

23  at *9 (Trader Joe's stopped using the label at issue because of the litigation).

24

25

26

27  ⁴ This measurement is for illustrative purposes only and assumes monthly replacements over
   the next two years are, on average, consistent with the average monthly replacements over the last
28  nine years.



1          **c.      This case posed significant risks and challenges.**

2          That this recovery was obtained, despite enormous risks, also support the reasonableness of

3    the 29% fee request. This case is unique, justifying a higher percentage recovery. These claims all

4    targeted a somewhat unique form of harm, in that the promise was one of *reliability*, which

5    revolves around probabilities of failure of devices over their useful lives. The unique nature of the

6    suit, the posture of this case at the beginning, and the necessary co-counsel arrangement, added to

7    the challenges. Class Counsel faced increased risks. To achieve success, they had to change the

8    entire trajectory of the case, do most of the substantive work, and take responsibility for their co-

9    counsel. Class Counsel accepted these risks knowing they would have to compensate co-counsel

10   for the efforts and initiative taken, even if some of it was for naught, by sharing any fee award,

11   meaning their opportunity for reward was diminished from the start without an upward adjustment

12   upon success.

13         Class Counsel took this case when it was in an extremely precarious posture. The first

14   iteration of this case had failed. The Court denied class certification with prejudice and granted

15   summary judgment for Apple. Other attorneys appeared in that case and withdrew, suggesting that

16   few attorneys would both take on and continue with this case given its history. Class Counsel came

17   into the case while a motion to dismiss was pending, with unfamiliar co-counsel, and while Apple

18   was represented by a national, and highly respected law firm. In the best of circumstances, it is

19   challenging to join with or take a case over from other attorneys. This was particularly challenging

20   here given their co-counsel's limited experience in class actions and the obligation to assume

21   responsibility for her role. ECF No. 65 at 3:12–18. Class Counsel also had to integrate co-counsel

22   into their team, which necessarily increases hours and thus fees (by virtue of the Class's initial

23   counsel, together with joint representations, which was led by Hagens Berman).

24         Apple is a formidable defendant with the resources to hire experienced and well-respected

25   attorneys, which posed additional challenges. As this District has recognized: Apple has

26   "significant financial and legal resources, . . . has the largest market cap of any corporation in the

27   world, [and its] attorneys are highly qualified, litigation savvy, and aggressive." *In re Apple Inc.*

28   *Device Performance*, 2021 WL 1022866, at *6. This is true here, where Apple engaged two



1   different sets of highly qualified lawyers, at three nationally recognized law firms, to defend

2   against Plaintiffs' claims. *See id.* (noting that Apple's retention of two highly respected law firms

3   weighed in favor of the fee award). Apple started this litigation with Morrison & Foerster

4   defending against Plaintiffs' claims. While litigating against that firm, the motions and discovery

5   were hard fought. After Apple lost its motion for summary judgment and Plaintiffs prevailed on

6   their class certification motion, Apple brought in new counsel. While never officially withdrawing

7   Morrison Foerster, Apple brought in attorneys from Boies Schiller Flexner LLP (they all eventually

8   moved to Paul, Weiss, Rifkind, Wharton & Garrison LLP). Those attorneys, for all intents and

9   purposes, took over Apple's defense. The litigation continued to be hard fought. Apple's new

10  attorneys undertook new litigation strategies and arguments, brought in all new experts, and moved

11  to decertify the class and exclude Plaintiffs' experts. Class Counsel essentially had to litigate their

12  claims against two different sets of highly respected attorneys and defend against two different

13  litigation strategies. Despite these challenges, Class Counsel efficiently litigated this matter.

14          This was an intrinsically difficult case because of the factual nature of the claims. While a

15  breach of contract claim is not necessarily complex, this case involves the internal workings of

16  iPhones and iPads and Apple's confidential manufacturing and testing procedures. Plaintiffs were

17  tasked with proving that Apple's replacement devices were not equivalent to new in performance

18  and reliability. Plaintiffs prepared and presented world-class experts to help with this task. Class

19  Counsel identified and retained one of the leading experts on reliability engineering, Dr. Michael

20  Pecht, to explain why used parts can never be equivalent to new. Class Counsel also employed a

21  highly qualified statistician and economist to analyze and draw conclusions from Apple's

22  voluminous return data, as well as experienced experts in conjoint analysis and damages to

23  supplement their proof of harm. Additionally, Class Counsel obtained significant fact discovery,

24  despite Apple's numerous objections and tactics to avoid discovery. Class Counsel issued hundreds

25  of written discovery requests, reviewed over 30,000 Apple documents (consisting of approximately

26  230,000 pages), and deposed seven Apple employees and designees on highly technical topics. The

27  discovery needed to prove this case was technical and complicated, justifying a higher fee. *See*

28  *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2021 WL 1222193, at *2 (N.D. Cal. Mar. 31, 2021)

1    (awarding 28% fee where "subject matter was technical" and required analyzing source code for

2    Apple products).

3         Taking this case up to the eve of trial presented additional risks. Apple had every

4    opportunity to dismiss or chip away at Plaintiffs' claims. By going through all dispositive and

5    *Daubert* motions, Class Counsel risked a total or partial dismissal, or losing critical evidence. That

6    they defeated all of Apple's motions, without losing any evidence, is a testament to their

7    commitment to the case and quality of their work.

8         Considering these significant risks and complex issues, the large common settlement fund

9    demonstrates Class Counsel's high level of skill and of work. This supports finding that the

10   requested fee award is reasonable.

11              **d.    Class Counsel's litigation on a contingency basis supports the fee
                       request.**

12

13        The Ninth Circuit has held that a fair fee award must include consideration of the contingent

14   nature of the fee. *Online DVD*, 779 F.3d at 954-55 & n. 14; *Vizcaino*, 290 F.3d at 1050. And it is

15   well-established that attorneys who take on the risk of a contingency case should be compensated

16   for the risk they assume. *E.g.*, *id.* at 1051.

17        Here, the contingent nature of Class Counsel's engagement—in a case that was extremely

18   risky given its history, and even thereafter given all the opportunities Apple presented to eliminate

19   this case—incentivized counsel to achieve excellent results for the Class. Class Counsel did

20   absolutely everything it could to maximize the Class's recovery and settled only when Apple's

21   options were settle or go to trial. That Plaintiffs had to take the case up to the eve of trial,

22   performing all discovery and motion practice, supports awarding a higher fee. Because Apple filed

23   a dispositive decertification motion and *Daubert* motions at the close of the case—after all the fact

24   and expert discovery was complete—Class Counsel risked losing substantial fees and fronted costs

25   up until the very end.

26        While 25% is the benchmark, 25% is often awarded when counsel settles before the class is

27   certified or when the plaintiffs did not have to engage in "substantial motion practice or other

28   litigation going to the merits." *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1178

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1                                           - 16 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    (N.D. Cal. 2014) (awarding class counsel 25% of the $53 million common fund for fees and costs

2    when settled early in the case); *see also Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016

3    WL 613255, at *14–15 (N.D. Cal. Feb. 16, 2016) (awarding 25% benchmark where plaintiffs

4    opposed two motions to dismiss, engaged in written discovery only, and defendant had not yet

5    moved for summary judgment); *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL

6    3945541, at *10 (N.D. Cal. Sept. 10, 2012) (awarding 25% benchmark in pre-certification

7    settlement "[g]iven the lack of motion practice, substantive work performed on this case prior to

8    settlement and Class Counsel's failure to show that complex factual or legal issues were litigated or

9    mediated"). Class Counsel fully litigated this case—completing all fact and expert discovery,

10   engaging in substantial motion practice, and preparing for trial—which justifies a higher

11   percentage award than the benchmark. *See Grace*, 2021 WL 1222193, at *2–3 (N.D. Cal. Mar. 31,

12   2021) (awarding 28% where class counsel engaged in significant motion practice and trial

13   preparation); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982–83 (E.D. Cal. 2012)

14   (awarding 29% of the common fund where the case was complex, "heavily litigated," and

15   "plaintiffs prevailed in nearly every motion"). A 29% fee award reasonably compensates Class

16   Counsel for the four-year financial burden of this risky case, with no guarantee of recovery.

17                   **e.      The market rate for class action lawyers with the experience of Class
                             Counsel supports the 29% fee request.**

18
             The market rate for class action lawyers with Class Counsel's experience also supports the
19
     29% fee request. The "prosecution and management of a complex national class action requires
20
     unique legal skills and abilities." *In re Omnivision*, 559 F. Supp. 2d at 1047 (citations omitted).
21
     "The importance of assuring adequate representation for plaintiffs who could not otherwise afford
22
     competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee
23
     basis a larger fee than if they were billing by the hour or on a flat fee." *Id.* And as Plaintiffs explain
24
     in Section III.A, *supra*, courts in class actions have routinely awarded class counsel fees of 28–
25
     33% of the common fund. *See also Vizcaino*, 290 F.3d at 1049 (approving a fee award where the
26
     district court found "28% rate to be at or below the market rate" for contingency cases); *In re*
27

28



1   *Omnivision*, 559 F. Supp. 2d at 1047 (finding in most common fund cases, the award exceeds the

2   25% benchmark). A 29% award is also below the 33% market rate for contingent representation.

                    **f.      The burdens Class Counsel faced support the fee request.**

4           The Ninth Circuit instructs district courts to consider the burdens class counsel experienced

5   while litigating the case (e.g., cost, duration, and foregoing other work). This litigation has been

6   pending for 4 years. As explained in Section III.B, *infra*, Class Counsel has advanced substantial

7   sums out-of-pocket with no reimbursement to date. Class Counsel has also devoted substantial time

8   to this litigation—almost 12,000 hours, for a lodestar of over $7.6 million—and foregoing other

9   work while litigating this case. Berman Decl. ¶¶ 49, 53. In addition, Class Counsel had to work

10  with co-counsel who had limited experience in class action litigation and integrate her into their

11  team. *Id.* Class Counsel also must compensate Ms. Kennedy out of their recovery for work that is

12  not reflected or even fully compensable in this case. *Id.* While *English* was unsuccessful, some of

13  the evidence and theories presented in that case shaped the current case. The Court even ordered

14  Plaintiffs to start with the discovery that had been done in *English* because "[a] lot of work has

15  been done." ECF No. 65 at 14:4–10. The work Ms. Kennedy did in that case—most of which is not

16  reflected in the lodestar tabulation—assisted in preparing this case and should be at least

17  considered as a factor supporting a percentage above the benchmark.

18          **2.      The lodestar cross-check confirms the reasonableness of the requested fees.**

19          "[W]hile the primary basis of the fee award remains the percentage method," the lodestar

20  cross-check "may provide a useful perspective on the reasonableness of a given percentage award."

21  *Vizcaino*, 290 F.3d at 1050. Over the course of this hard-fought case, Class Counsel incurred a total

22  lodestar of $7,678,865.00, based on 11,997 hours of work through January 21, 2022. Berman Decl.

23  ¶ 53; Declaration of Renee Kennedy ("Kennedy Decl.") ¶ 3. The requested fee award of 29% of the

24  common fund, or $27,550,000, represents a multiplier of 3.58. Class Counsel anticipates spending

25  an additional $300,000 to finish the briefing in this case, respond to Class member inquiries,

26  preparing for and attending the final approval hearing, and assist with final distribution. Class

27  Counsel also anticipates spending up to an additional $500,000 if they have to litigate what to do

28  with any unclaimed funds, who the *cy pres* recipient will be, or defend the Settlement on appeal.

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 18 -

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

HAGENS BERMAN

1   Class Counsel's total fees will likely range between $8 and $8.5 million, which would be a

2   multiplier of 3.24 to 3.44. These multipliers are within the range of similar settlements. *E.g.*,

3   *Vizcaino*, 2901 F.3d at 1051 (approving fee request that resulted in a 3.65 multiplier); *Steinfeld v.*

4   *Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692, at *2 (N.D. Cal. Mar. 31, 2014)

5   (approving fee that resulted in a 3.5 multiplier). And the requested multiplier is much lower than

6   the high end of multipliers awarded in this District. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-

7   CV-03396-YGR, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving of 37% fee award

8   and 4.8 multiplier); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL

9   2438274, at *7 (N.D. Cal. May 21, 2015) (awarding 5.5 multiplier to firm that "entered as class

10   counsel and pulled victory from the jaws of defeat").

11       In *Vizcaino*, the Ninth Circuit surveyed the multipliers applied in common fund settlements

12   between $50 and $200 million. The court found that 20 of the 24 cases it surveyed had a multiplier

13   between 1.0 and 4.0. *Vizcaino*, 290 F.3d at 1051 n.6. A recent empirical study of attorneys' fees in

14   class action settlements found *multipliers increase as the size of the recovery increases*. EMG

15   Study, 92 N.Y.U. L. Rev. at 967. That study also found that the mean lodestar multiplier for

16   recoveries above $75 million was 2.72. *Id.* at 966.

17       And the lodestar in this case reflects exceptional efficiency by Class Counsel. Throughout

18   the litigation, Class Counsel took meaningful steps to ensure that their work was efficient and

19   limited to reasonable and necessary work, having co-counsel assist where feasible. Berman Decl.

20   ¶¶ 48–50, 60–69; Kennedy Decl. ¶ 9. Counsel applied their experience litigating other consumer

21   class actions, resulting in additional efficiencies. Most of the work was performed by of counsel

22   and staff attorneys, not senior partners. *Id.* Class Counsel used staff attorneys, who are billed at a

23   much lower rate, to assist with the litigation where appropriate, particularly in conducting

24   document review. *Id.* Class Counsel strategically assigned additional attorneys to tasks where they

25   had significant experience, making their work efficient. *Id.* And significant work was done in

26   *English*, but not submitted here. *Id.*

27       Class Counsel's rates are also within "the prevailing market rates in the relevant

28   community." *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir.



2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Class Counsel's rates mostly range from $375 to $900 an hour, with the sole exception of Steve Berman being billed out at $1,200 an hour. Berman Decl. ¶ 53. Hagens Berman's paralegal rates range from $250 to $375 an hour. *Id.* Courts in this District have found Hagens Berman's rates to be within the prevailing market rates and have approved similar rates in other class cases. *E.g.*, *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *8–9 (N.D. Cal. Dec. 6, 2017), aff'd, 768 F. App'x 651 (9th Cir. 2019) (finding Hagens Berman's "rates are well within the range of $200 to $1,080 charged by attorneys in California in 2015"); *see also In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding attorney rates of $310 to $975 and paralegal rates of $190 to $430 were market in 2015).

Last, this fee request is supported by Steve Berman's declaration summarizing the "number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information." *See* Procedural Guidance for Class Action Settlements, U.S. District Court for the Northern District of California, Final Approval ¶ 2.

**B.     Class Counsel request reimbursement of reasonable out-of-pocket expenses incidental and necessary to the effective representation of the Class.**

Plaintiffs request reimbursement of out-of-pocket expenses of $1,397,165.53. Berman Decl. ¶ 55; Kennedy Decl. ¶ 5. Courts reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters, i.e., costs incidental and necessary to the effective representation of the Class." *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (citations omitted, cleaned up). "Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement." *Id.* (citing cases and listing expenses).

The total expenses for which Plaintiffs seek reimbursement are broken down by category in the supporting declarations and exhibits. Berman Decl. ¶ 55; Kennedy Decl. ¶ 5. Class Counsel funded all litigation expenses, and reimbursed Ms. Kennedy for certain expenses and fees she



incurred in litigating *English*—totaling $60,000—as Class Counsel deemed some of that work helpful at the start of this case. Berman Decl. ¶ 55 n.1. That the Court here ordered the parties to start with the discovery that was done in the *English* case demonstrates it was helpful. ECF No. 65 at 14:4–10. Class Counsel does not seek reimbursement of those expenses or the work product produced by such work, but notes it was an additional risk and expense Class Counsel undertook with no promise of reimbursement and reflects work that contributed to pushing the case forward.

Plaintiffs provide further detail below regarding the three largest cost categories, which account for approximately 93% of their total costs—experts and consultants, deposition services and transcripts, and mediation and arbitration fees.

Experts and Consultants. Plaintiffs invested $1,151,575.78 in experts and consultants. Berman Decl. ¶ 55. Plaintiffs hired three experts to support their class certification motion, who all issued detailed reports and analyses. Each of these experts were deposed at length. After the Class was certified, Plaintiffs used the same three experts for merits, choosing not to have Dr. Pecht issue a new report. Drs. Bardwell and Kaufman preformed a second analysis of Apple's extensive return and pricing data to issue their lengthy and detailed merits reports. Plaintiffs only hired two additional merits experts, Gaskin and Weir. In addition, Gaskin, Bardwell, and Pecht issued rebuttal reports to Apple's experts (of which there were ten total), and Plaintiffs hired Dr. Abhijit Dasgupta to issue a fourth rebuttal report. In addition, Bardwell, Kaufman, and Weir all updated their reports once they received additional clarification about Apple's data. All six experts were again deposed at length by Apple.

Plaintiffs also hired two consulting firms to assist with trial preparation and jury consulting. Those consulting firms were critical in Class Counsel's development of their trial strategy. *Id.*

All expert costs were paid by Class Counsel regardless of the case's outcome. Plaintiffs hired half the number of experts that Apple did (six experts to Apple's thirteen), further demonstrating that the experts they hired were necessary and reasonable. The cost of expert work here is reasonable given the issues and size of this case.

Deposition Services and Transcripts. Plaintiffs invested $85,416.13 into deposition services and transcripts. Berman Decl. ¶ 54. In total there were 31 depositions in this case, with over half of

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    those depositions being taken remotely because of the pandemic. The rates for video depositions

2    are higher than in-person depositions, but Class Counsel also saved money by not billing any

3    travel.

4             Mediation and Arbitration Fees. Plaintiffs invested $60,055 into mediation and arbitration

5    fees. Berman Decl. ¶ 55. The parties engaged two private mediators and a private arbiter. The

6    parties held four mediations sessions (three private) between 2018 and 2021, with the last

7    mediation succeeding. The parties also engaged a private arbiter to decide settlement issues that the

8    parties could not resolve on their own.

9    **C.    Plaintiffs request that the Class Representative be awarded reasonable service awards
            to compensate them for the time and dedication to this case.**

10

11            Plaintiffs request service awards for the class representatives in the amount of $15,000 to

12   Vicky Maldonado and $12,500 for Justin Carter. Service "*awards* are fairly typical in class action

13   cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In the Ninth Circuit,

14   service awards "compensate class representatives for work done on behalf of the class, to make up

15   for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

16   their willingness to act as a private attorney general." *Id.* at 958-59. Courts may approve service

17   awards based on the risk to the class representative, the time and effort spent, the duration, and the

18   personal benefit (or lack thereof) as a result of the litigation. *E.g.*, *Van Vraken v. Atl. Richfield Co.*,

19   901 F. Supp. 294, 299 (N.D. Cal. 1995). The requested service awards are reasonable and

20   commensurate with awards given for similar efforts. *Bellinghausen v. Tractor Supply Co.*, 306

21   F.R.D. 245, 267 (N.D. Cal. 2015) (granting service award of $15,000 for two years of work

22   totaling 73 hours); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7

23   (N.D. Cal. Feb. 6, 2012) (awarding $12,500 to class representative who spent over 100 hours on

24   the case and was deposed twice).

25            This litigation required a substantial investment of time by the class representatives. Vicky

26   Maldonado—who is requesting a slightly larger award—has been in the case longer and worked

27   with two sets of counsel on two different complaints. She first worked with Ms. Kennedy in

28   drafting the Complaint and then worked with Class Counsel to draft the facts of the Amended

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   Complaint. Berman Decl. ¶ 8; Declaration of Vicky Maldonado ("Maldonado Decl.") ¶¶ 3–4. She

2   was active in the litigation, helping with and responding to multiple discovery requests. Berman

3   Decl. ¶ 16; Maldonado Decl. ¶ 5. Despite the limited amount of information Maldonado had and

4   her individual facts being straight-forward—she purchased AC+ and was given two

5   remanufactured iPads by Apple—Apple issued her 13 interrogatories and 20 requests for

6   production. Berman Decl. ¶ 14.  Much of Apple's discovery focused on information that was

7   tenuously relevant at best: other Apple devices she owned and unrelated warranties. *Id.* ¶ 15. Much

8   of this information was also in Apple's possession, as Apple maintains a record of its customers

9   purchases and warranty events. *Id.* Maldonado responded to all of Apple's requests, working with

10  Class Counsel on multiple occasions, searching through her physical and digital files to try and

11  comply with Apple's document requests, and supplementing her responses when required. Berman

12  Decl. ¶ 16; Maldonado Decl. ¶¶ 5–6. Maldonado also took three days off work to sit for a

13  deposition. Maldonado Decl. ¶ 7. She traveled travel from Houston to San Francisco for that

14  deposition, where she met with Class Counsel the day before the deposition for preparation.

15  Berman Decl. ¶ 20; Maldonado Decl. ¶ 7. Ms. Maldonado had never been deposed before but

16  agreed willingly to recover for the Class. Maldonado Decl. ¶ 7. She also reviewed her deposition

17  and provided corrections to Class Counsel. *Id.* ¶ 8.

18         Justin Carter also worked diligently on this case and assisted Class Counsel at every turn.

19  While he was not a class representative for as long as Maldonado, he worked with Class Counsel

20  on the facts for the Amended Complaint, he allowed Class Counsel to inspect his replacement

21  iPhones, and he responded to significant discovery. Berman Decl. ¶¶ 8, 16; Declaration of Justin

22  Carter ("Carter Decl.")  ¶¶ 3–4. Like Maldonado, Carter had limited information given the straight-

23  forward facts, but he responded to 12 interrogatories, 19 requests for production, and 8 requests for

24  admission, supplementing his answers where appropriate. Berman Decl. ¶ 14; Carter Decl. ¶ 5. He

25  worked closely with Class Counsel to accurately answer and respond to those requests, and spent

26  time searching his records for documents. Berman Decl. ¶ 16; Carter Decl. ¶ 6. Much of the

27  requested information was already in Apple's possession, yet he responded to those requests.

28  Berman Decl. ¶ 15. Carter also sat for a deposition. He had to take five days off work, traveling

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   from Moultrie, Georgia, to San Francisco, while recovering from back surgery. Carter Decl. ¶ 7.

2   Like Maldonado, Carter had never been deposed and spent time with Class Counsel preparing for

3   his deposition. Berman Decl. ¶ 20; Carter Decl. ¶ 8. Carter also reviewed his deposition transcript

4   to correct for any mistakes or errors. Carter Decl. ¶ 9.

5       Plaintiffs' reputations were also challenged by Apple in multiple public filings. Apple

6   argued in its first motion to dismiss that Maldonado's allegations were "implausible." ECF No. 23

7   at 8–10. Apple argued in its second motion to dismiss that neither Plaintiff alleged injury, which

8   the Court disagreed with: "Apple's argument depends on ignoring plaintiffs' factual allegations as

9   well as the nature of plaintiffs' asserted injury." ECF No. 50 at 9–10; ECF No. 64 at 6.

10      Apple was particularly harsh in its attacks on Carter. In its Motion to Dismiss the Amended

11  Complaint, Apple accused Carter of spoliating evidence (for returning his first replacement device

12  to Apple), breaching his AppleCare contract by opening his phones, and obtaining replacements for

13  the purpose of litigation—all with no evidence or discovery on the issue. ECF No. 50 at 11. The

14  Court dismissed these arguments, finding "Carter's acts do not amount to willful spoliation

15  warranting dismissal," "dismissal due to spoliation would be premature without an evidentiary

16  hearing," and Carter's opening of his iPhones "have no bearing on AppleCare's obligations to

17  provide coverage."  ECF No. 64 at 7–8 nn.4–5.

18      Apple repeated its attacks on Plaintiffs in its Motion for Summary Judgment and opposition

19  to the class certification motion. Apple once again argued Plaintiffs did not allege any injury,

20  Carter requested replacements for the purpose of litigation, and Carter spoliated evidence. ECF No.

21  111; ECF No. 112-1. Apple asked the Court to dismiss both Plaintiffs' claims and find Carter an

22  inadequate class representative. *Id.* As before, the Court again disagreed with Apple. The Court

23  found both Plaintiffs properly alleged harm, and that Carter's conduct did not constitute spoliation,

24  nor did it prejudice Apple. ECF No. 160 at 10–11, 14–15. The Court also found that Carter alleged

25  issues with his replacements before he contacted Class Counsel and he had no reason to request an

26  additional replacement for the purpose of litigation. *Id.* at 15.

27      Finally, both Carter and Maldonado took their responsibilities seriously. In addition to

28  bringing the case, they continued to prosecute the case for four years with no guarantee of recovery

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 24 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   and were prepared to testify at trial. They expended significant time and effort, even though their

2   individual damages were not large (at best a few hundred dollars). In consultation with counsel,

3   both Plaintiffs reviewed and approved of the settlement presented to the Court. Berman Decl. ¶ 47.

4   Considering the total value of settlement proceeds and the class representatives' extraordinary

5   service and perseverance in this case, including their willingness to be deposed at length and

6   answer multiple discovery requests, their requested awards are reasonable.

7   **D.      The Class received adequate notice of Class Counsel's fee application.**

8           Class Counsel have provided the Class sufficient notice of the requested fees and the

9   opportunity to review and evaluate this fee request before the deadline for objections. *See In re*

10  *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010); Procedural Guidance for

11  Class Action Settlements, U.S. District Court for the Northern District of California, ¶¶ 6, 9. The

12  class notice advised Settlement Class Members that "Class Counsel will not seek more than 30% of

13  the Settlement Fund as attorney's fees, or $28.5 million [and] will request service awards of up to

14  $12,500 for one Class Representative and up to $15,000 for the other." ECF No. 331 at 2. As

15  required by the Court, this motion is provided on the settlement website thirty-five days before the

16  deadline for requests for exclusion or objections to the settlement. ECF No. 328 at 3.

17                              **IV.    CONCLUSION**

18          For the foregoing reasons, Plaintiffs respectfully request an award of $27,550,000 in

19  attorneys' fees, reimbursement of expenses incurred totaling $1,397,165.53, a service award to

20  class representative Vicky Maldonado of $15,000 and class representative Justin Carter of $12,500.

21

22  DATED:  January 28, 2022                      HAGENS BERMAN SOBOL SHAPIRO LLP

23                                               By: */s/ Steve W. Berman*
                                                     Steve W. Berman (*Pro Hac Vice*)
24                                                   1301 Second Avenue, Suite 2000
                                                     Seattle, WA 98101
25                                                   Telephone: (206) 623-7292
                                                     Facsimile:  (206) 623-0594
26                                                   Email: steve@hbsslaw.com

27

28



Robert B. Carey (*Pro Hac Vice*)
Michella A. Kras (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email: rob@hbsslaw.com
michellak@hbsslaw.com

Renee F. Kennedy *(Pro Hac Vice)*
P.O. Box 2222
Friendswood, TX 77549
Telephone: (832) 428-1552
Email: kennedyrk22@gmail.com

*Attorneys for Plaintiffs*

MOTION FOR ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARDS - 3:16-cv-04067-WHO
010637-11/1785514 V1

- 26 -

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594